CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 1 of 164

Illinois Casualty Company 07/05/2022

Illinois
Casualty
Company

PLEASE NOTE:

The attached policy is only effective upon receipt of the required initial premium payment.

If payment has already been submitted, please disregard this memo. Thank you.

EXHIBIT 2

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 2 of 164

Illinois Casualty Company 07/05/2022

Illinois Casualty Company

BUSINESSOWNERS POLICY

225 20th Street, Rock Island, IL 61201 • (309) 793-1700 • (800) 445-3726 • Fax: (309) 793-1707 • www.ilcasco.com

Illinois Casualty Company is pleased to provide your Businessowners Policy. Should you have any questions or concerns, please contact your agent.

## NOTICE CONSUMER INFORMATION AND COMPLAINTS

In the event of a question, problem, or complaint you are unable to resolve, you may contact either Illinois Casualty Company or the Minnesota Department of Commerce.

**Illinois Casualty Company**
225 20th Street
PO Box 5018
Rock Island, IL 61204-5018
1-800-445-3726

**Minnesota Department of Commerce**
85 7th Place East, Suite 500
St. Paul, MN 55101-2198
1-651-296-2488
In State – 1-800-657-3062

Illinois Casualty Company 07/05/2022

Illinois Casualty Company

# BUSINESSOWNERS POLICY DECLARATIONS

BP DEC IC 01 18

These Declarations, together with the Common Policy Conditions, the Coverage Forms and any applicable endorsements attached thereto, complete the below numbered policy:

**NO.** [redacted] .

| Name and Mailing Address of Named Insured: | Name and Mailing Address of Agent/Producer: |
|---|---|
| **Timeless Bar Incorporated dba The Press Bar and Parlor**<br>**10448 345th St**<br>**Saint Joseph, MN 56374** | **07841**<br>**Paulet/Slater Agency**<br>**711 Hale Avenue North, Suite 101**<br>**Oakdale, MN 55128**<br>**(651) 644-0311** |

| POLICY PERIOD | |
|---|---|
| From: **04/19/2019 12:01 AM**<br>Standard Time at your mailing address shown above | To: **04/19/2020 12:01 AM** |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**DESCRIPTION OF BUSINESS**

Form of Business of the Named Insured:
- [ ] Individual
- [ ] Partnership
- [ ] Joint Venture
- [ ] Limited Liability Company
- [ ] Trust
- [ ] Club
- [X] Organization (Any other)

**Business Description:** **Tavern**

**DESCRIBED PREMISES**

| Prem. No. | Physical Location |
|---|---|
| 1 | 502 W Saint Germain St<br>Saint Cloud, MN 56301 |

**PROPERTY**

| DEDUCTIBLES | Property Deductible: $1,000 | Optional Coverages/Exterior Building Glass Deductible: $500 |
|---|---|---|

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 4 of 164

Illinois Casualty Company 07/05/2022

**Prem. No. 1 Physical Location: 502 W Saint Germain St, Saint Cloud, MN 56301**

| | Prem. No. | Bldg./Other Structures No. | Property Coverage | Limits Of Insurance | Valuation Provision | Automatic Increase Bldg. Limit (Percent) |
|---|---|---|---|---|---|---|
| COVERED PROPERTY | 1 | 1 | Buildings | $1,350,000 | Replacement Cost | 4 |
| | 1 | 1 | Your Business Personal Property | $300,000 | Replacement Cost | |
| PROPERTY OPTIONS | 1 | All | Outdoor Property | $25,000 | | |
| | 1 | All | Spoilage | $10,000 | | |
| | 1 | All | Selling Price | Included | | |

**Property Options include Additional Coverages, Coverage Extensions And Optional Coverages**

- If a Limit Of Insurance is provided in the Coverage Form, the Limit Of Insurance is amended per above for the coverage(s) shown above.
- If a Limit Of Insurance is not provided in the Coverage Form, coverage is added for items for which a Limit Of Insurance is shown above.
- If the Limit Of Insurance is shown as per policy, the Limit Of Insurance applies for all premises on a policy basis and does not apply on a per premises basis.

Illinois Casualty Company 07/05/2022

## LIABILITY AND MEDICAL EXPENSES

**Please refer to Section D of the Businessowners Liability Coverage Form.**

| | Limit Of Insurance |
|---|---|
| General Aggregate | $2,000,000 |
| Products - Completed Operations Aggregate | $2,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Damage To Premises Rented To You | $250,000 |

## FORMS AND ENDORSEMENTS

**FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUANCE OF THESE DECLARATIONS:**

| Number | Edition | Name | PREMIUM |
|---|---|---|---|
| BOCC01 | 0914 | Businessowners Common Policy Conditions | Included |
| BOMN01 | 0914 | Minnesota Changes | Included |
| BPCF01 | 0118 | Businessowners Property Coverage Form | Included |
| BPAI01 | 0914 | Loss Payable Provisions | Included |
| BPAI01 | 0914 | Loss Payable Provisions | Included |
| BLAI17 | 0418 | Additional Insured - As Required In Written Agreement With You Or By Ordinance | Included |
| BPAI04 | 0914 | Additional Insured - Building Owner | Included |
| BPEC47 | 1018 | Restaurants and Taverns | Included |
| BPEC40 | 0118 | Ordinance or Law - Limited Coverage | Included |
| BPEX09 | 0115 | Exclusion Of "Certified Acts Of Terrorism"; Coverage For Certain Fire Losses | Included |
| BPLT01 | 0914 | Protective Safeguards | Included |
| BLCF01 | 0118 | Businessowners Liability Coverage Form | Included |
| BLER01 | 0118 | Employment-Related Practices Liability Insurance | Included |
| BLAI02 | 0914 | Additional Insured - Designated Person Or Organization Of Designated Premises | Included |
| BLAI02 | 0914 | Additional Insured - Designated Person Or Organization Of Designated Premises | Included |
| BLAI07 | 0914 | Additional Insured - Co-Owner Of Insured Premises | Included |
| BLEX02 | 0914 | Medical Expenses - Exclusion | Included |
| BLEX09 | 0115 | Exclusion Of "Certified Acts Of Terrorism" | Included |
| BLEC06 | 0618 | Cyber Protection | Included |

| | |
|---|---|
| **TOTAL ADVANCE PREMIUM** | **$17,920** |
| **MINNESOTA FIRE SAFETY SURCHARGE** | **$41** |
| **MINIMUM PREMIUM: $750** — **AMOUNT DUE** | **$17,961** |

Declarations Effective:
Friday, April 19, 2019

Countersigned at
this day of

(Authorized Signature)

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 6 of 164

Illinois Casualty Company 07/05/2022

Illinois Casualty Company

DIREC

225 20th Street, Rock Island, IL 61201 • (309) 793-1700 • (800) 445-3726 • Fax: (309) 793-1707

**USE THIS FORM TO MAKE ANY CHANGES TO YOUR RENEWAL BILLIN**
***No action*** **is necessary if you would like to keep the current payment optic**

**PAYMENT OPTIONS:** Fill out the information below

***1. SELECT BILLING PLAN (Changes will be effective at the renewal effectiv***

| All Policies | BP | LL | UL | WC | |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | 8.3% down and 11 monthly installments |
| ☐ | ☐ | ☐ | ☐ | ☐ | 16.7% down and 10 monthly installments; continu |
| ☐ | ☐ | ☐ | ☐ | ☐ | 25% down and 9 monthly installments |
| ☐ | ☐ | ☐ | ☐ | ☐ | 25% down, 25% at 2 months, 25% at 5 months, 2 |
| ☐ | ☐ | ☐ | ☐ | ☐ | 40% down, 30% at 3 months, 30% at 6 months |
| ☐ | ☐ | ☐ | ☐ | ☐ | One payment per policy term |

(BP, LL, UL, WC: By Policy)

***2. SELECT PAYMENT METHOD***

☐ **ACH** (Automatic Withdrawal) A Direct Bill ACH Enrollment form is required.
Fee Free Option – ACH required and have your statement faxed or emailed to receive

☐ **CHECK**

**STATEMENT OPTIONS:**

☐ **Email** Email address: ____________________

☐ **Fax** Fax Number: ____________________

☐ **Mail** c/o: ____________________

Address: ____________________

Address cont'd: ____________________

City/State/Zip: ____________________


Illinois Casualty Company 07/05/2022

# IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING
# NOTICE TO POLICYHOLDERS

Policyholder:

The policy does not cover damage to your property caused by flooding. Flood insurance is available to communities and property that participate in the National Flood Insurance Program (NFIP). Not all communities participate in the NFIP. Flood insurance may be available even if you do not live in a flood hazard area as defined by the NFIP. If your community does not participate in the NFIP, you may contact your insurance agent or broker to see if there is other flood insurance coverage available to you.

**We do appreciate your business!**

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 8 of 164

Illinois Casualty Company 07/05/2022

POLICY NUMBER: [redacted]

# BUSINESSOWNERS COMMON POLICY CONDITIONS

All Coverage Forms and endorsements of this Policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this Policy:

   **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to seasonal unoccupancy.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision;

   **(2)** After damage by a covered cause of loss, permanent repairs to the building:

   **(a)** Have not started; and

   **(b)** Have not been contracted for;

   within 30 days of initial payment of loss;

   **(3)** The building has:

   **(a)** An outstanding order to vacate;

   **(b)** An outstanding demolition order;

   **(c)** Been declared unsafe by governmental authority;

   **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling;

   **(5)** Failure to:

   **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes;

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation may be less than pro rata and will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**C. Concealment, Misrepresentation Or Fraud**

**1.** This Policy is void in any case of fraud by you or your "authorized representative" as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This policy;

**b.** The Covered Property;

**c.** Your interest in the Covered Property; or

**d.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this Policy at any time during the Policy Period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find;

**c.** Mandate or recommend changes; and

**d.** Offer goods and services at no additional charge that are intended to assist you in reducing your potential for loss.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** You are obligated to make changes we mandate that relate to insurability by us. Your failure to do so within 30 days of receipt can result in the cancellation of this Policy. If not hand-delivered, receipt will be three (3) days after we have mailed you notice.

**4.** Paragraphs **1.**, **2.**, and **3.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F. Insurance Under Two Or More Coverages**

If two or more of this Policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this Policy without additional premium within 45 days prior to or during the Policy Period, the broadened coverage will immediately apply to this Policy.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**H. Premiums**

1. The first Named Insured shown in the Declarations:
   a. Is responsible for the payment of all premiums; and
   b. Will be the payee for any return premiums we pay.
2. The premium shown in the Declarations was computed based on the rates in effect at the time the Policy was issued. On each renewal, continuation or anniversary of the effective date of this Policy, we will compute the premium in accordance with our rates and rules then in effect.
3. With our consent, you may continue this Policy in force by paying a continuation premium for each successive one-year period. The premium must be:
   a. Paid to us prior to the anniversary date; and
   b. Determined in accordance with Paragraph **2.** above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this Policy will expire on the first anniversary date that we have not received the premium.
4. Undeclared exposures or change(s) in your business operations, as well as acquisition or use of locations may occur during the Policy Period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules in effect at Policy inception.

**I. Premium Audit**

1. This Policy is subject to audit if a premium designated as an Advance Premium is shown in the Declarations. The Company may audit, but is not required to do so. We will compute the final premium due when we determine your actual exposures covered by this Policy.
2. Premium shown in this Policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is shown as the due date on the bill. If the sum of the advance and audit premiums paid for the Policy Period is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium. The minimum premium is the lowest premium for which this Insurance will be written for the Policy Period stated in the Declarations.
3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. Within the first 30 days of the Policy Period, if we receive copies of the state sales tax forms filed with the state for the most recent 12 months, or other verifiable income information, we may waive our right to audit this Policy.

**J. Transfer Of Your Rights And Duties Under This Policy**

1. Except as provided in Paragraph **2.** below, your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.
2. However, if you convey real property insured under this Policy to a person (known as a grantee beneficiary) designated under a beneficiary deed, which has been properly recorded prior to your death, that person will have your rights and duties with respect to the insured real property, but only for the period from the date of your death until the first of the following occurs:
   1. A period of 30 days from the date of your death;
   2. The date that alternative coverage is obtained on your property; or
3. The end of the Policy Period as shown in the Declarations.

**K. Mutual Members Participation**

By acceptance of this Policy, the Named Insured becomes a member of the Company and shall be entitled to vote at all meetings of the members and, upon termination of this Policy, shall participate in the distribution of dividends as fixed and determined by the Directors in accordance with the law.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

This Policy is not assessable. Your liability as a policyholder and member of the Company under this Policy is limited to payment of premium. You will be notified of the day, time and place of the regular annual meeting, unless you waive your right to receive a meeting notice.

**L. Provisions Relating to Pollution**

In this Policy, any exclusion, limitation or other provision relating to "pollutants", or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the irritant or contaminant has any function in your business, operations, "premises", site or location.

**M. Office of Foreign Assets Control**

Payments of loss under this Coverage Form will only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

**IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 12 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

POLICY NUMBER:  EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINNESOTA CHANGES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS POLICY**

**A.** The Businessowners Common Policy Conditions is amended as follows:

**1.** Paragraph **A. Cancellation** is replaced by the following:

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this Policy, subject to the provisions of **3**. below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

**3.** If this Policy has been in effect for:

**a.** Fewer than 90 days and is a new Policy, we may cancel for any reason by giving notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**b.** 90 days or more, or if it is a renewal of a Policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Misrepresentation or fraud made by you or with your knowledge in obtaining the Policy or in pursuing a claim under the Policy;

**(3)** An act or omission by you that substantially increases or changes the risk insured;

**(4)** Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(6)** Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

**(7)** A determination by the commissioner that the continuation of the Policy could place us in violation of the Minnesota insurance laws; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

Under above Paragraph **A.3.b.**, we will give notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

**(2)** 60 days before the effective date, if we cancel for a reason described in **3.b.(2)** through **(8)** above. The notice of cancellation will state the reason for cancellation.

**4.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**5.** Unless otherwise specifically required, proof of mailing of any notice shall be sufficient proof of notice.

**2.** The following is added:

**N. Nonrenewal**

If we decide not to renew this Policy, we may do so by giving the first Named Insured and any agent written notice of our intent not to renew at least 60 days before the expiration date of this Policy. Such notice will be delivered or mailed by first class mail to their last mailing addresses known to us.

We need not mail or deliver this notice if you have:

**1.** Insured elsewhere;

**2.** Accepted replacement coverage; or

**3.** Agreed not to renew this Policy.

Unless otherwise specifically required, proof of mailing of any notice shall be sufficient proof of notice.

**3.** Paragraph **C. Concealment, Misrepresentation Or Fraud** is replaced by the following with respect to loss or damage caused by fire:

**C. Concealment, Misrepresentation Or Fraud**

We do not provide coverage to you if you or any "authorized representative" has:

**1.** Before a loss, willfully; or

**2.** After a loss, willfully and with intent to defraud;

concealed or misrepresented any material fact or circumstances concerning:

**a.** This Policy;

**b.** The Covered Property;

**c.** Your interest in the Covered Property; or

**d.** A claim under this Policy.

**4.** Paragraph **C. Concealment, Misrepresentation Or Fraud** is replaced by the following with respect to loss or damage caused by a Covered Cause Of Loss other than fire:

**C. Concealment, Misrepresentation Or Fraud**

We will not pay for any loss or damage if you or any "authorized representative" has:

**1.** Before a loss, willfully; or

**2.** After a loss, willfully and with intent to defraud;

concealed or misrepresented any material fact or circumstances concerning:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

    **a.** This Policy;

    **b.** The Covered Property;

    **c.** Your interest in the Covered Property; or

    **d.** A claim under this Policy.

**5.** Paragraph **D. Examination Of Your Books And Records** is replaced by the following:

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this Policy at any time during the Policy Period and up to one year afterward.

**B.** The Businessowners Property Coverage Form is amended as follows:

**1.** The following is added to Paragraph **B. Covered Causes Of Loss:**

We insure for all loss or damage caused by fire or any damage caused by lightning.

**2.** Paragraph **C.3.a.(1) Ordinance Or Law** Exclusion is replaced by the following:

**(1) Ordinance Or Law**

    **(a)** The enforcement of any ordinance or law:

        **(i)** Regulating the construction, use or repair of any property; or

        **(ii)** Requiring the tearing down of any property, including the cost of removing its debris.

    **(b)** This exclusion, Ordinance Or Law, applies whether the loss results from:

        **(i)** An ordinance or law that is enforced even if the property has not been damaged; or

        **(ii)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

    **(c)** But if loss or damage is solely a result of one or more Covered Causes Of Loss, we will pay for your compliance with such ordinance or law, subject to all other provisions of this Policy, including those listed below, as follows:

        **(i)** In the event of a partial loss, if the building is insured on a replacement cost basis, we will pay for your compliance but only with respect to the damaged portion of the building.

        **(ii)** In the event of a total or constructive total loss, we will pay for your compliance with respect to the entire building.

        **(iii)** We will not pay under this provision for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

    **(d)** Any valuation provision (including Replacement Cost) or loss payment condition which excludes the increased cost attributable to an ordinance or law is hereby revised to include such cost to the extent that coverage is provided above in Paragraph (c). But in no event will we pay more than the applicable Limit Of Insurance.

**3.** The following is added to Paragraph **E. Deductibles** and applies with respect to any deductible applicable to the Businessowners Property Coverage Form, including a deductible provided by endorsement for a particular cause of loss or coverage.

The Deductible will not apply to total loss of a building.

**4.** Paragraph **F.3. Duties In The Event Of Loss Or Damage** Property Loss Condition is amended as follows:

    **a.** Paragraph **a.(3)** is deleted.

    **b.** Paragraphs **a.(6)** and **a.(7)** are replaced by the following:

        **(6)** As often as we reasonably require:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(a)** Permit us to inspect the property. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis;

**(b)** Provide us with records and documents reasonably related to the loss, or certified copies if the originals are lost, and permit us to make copies.

**(7)** Send us, within 60 days after our request, a signed, sworn proof of loss containing the following information we require to investigate the claim:

**(a)** A description of how and when the loss or damage occurred;

**(b)** The value of the property, except in the case of a total loss of an insured building;

**(c)** Your interest and the interest of all others in the property; and

**(d)** Other insurance which may cover the loss or damage.

We will supply you with the necessary forms.

**c.** The following is added to Paragraph **3.a.:**

**(10)** Send to us, within a reasonable time after our request, the following:

**(a)** Changes in title or occupancy of the property during the term of the Policy; and

**(b)** Specifications of damaged buildings and detailed repair estimates.

**d.** Paragraph **b.** is replaced by the following:

**b.** After we inform you or an "authorized representative":

**(1)** Of the right to counsel; and

**(2)** That an "authorized representative's" answers may be used against you in later civil or criminal proceedings;

We may examine an "authorized representative" under oath, while not in the presence of any other "authorized representative" and at such times as may be reasonably required, about any matter relating to this insurance or the claim. In the event of an examination, an "authorized representative's" answers must be signed.

**5.** Paragraph **F.5. Loss Payment** Property Loss Condition is amended as follows:

**a.** Paragraph **g.** is replaced by the following:

**g.** Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage within 5 business days after:

**(1)** We have received the proof of loss and all supplemental documentation we request to investigate the loss or damage; and

**(2)** We have reached an agreement with you; or, in the event we use an independent claims adjuster, we have received the agreement and you have satisfied the conditions of the agreement, if any; or an appraisal award has been made.

**b.** The following is added to Paragraph **F.5. Loss Payment** Property Loss Condition and supersedes any provision to the contrary:

**i. Replacement Cost - Business Personal Property**

**(1)** We will not pay more for loss or damage on a replacement cost basis than the least of:

**(a)** The Limit Of Insurance applicable to the lost or damaged property;

**(b)** The applicable Special Limit Of Insurance shown in **i.(2)(a), i.(2)(b), i.(2)(c),** and **i.(2)(d)** below;

**(c)** The cost to replace, on the same "premises", the lost or damaged property with other property of comparable material and quality and used for the same purpose; or

**(d)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(2)** The following Special Limits Of Insurance apply to any category of property listed below, unless higher Special Limits Of Insurance are shown in the Declarations. These Special Limits are part of, not in addition to, any Limit Of Insurance shown in the Declarations, and apply in excess of any applicable deductible. The Special Limit Of Insurance shown for any category listed below is the most we will pay for loss or damage to all property in that category in any one "occurrence".

**(a)** $1,000 on used or second-hand merchandise held in storage or for sale;

**(b)** $1,000 on property of others;

**(c)** $1,000 on household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** $5,000 on manuscripts, works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

With respect to the articles described in **(a), (b), (c),** and **(d)** above, in no event will we pay you less than we would have paid you if this endorsement were not attached to the Policy.

**c.** The following is added to Paragraph **F.5.:**

**j.** We agree that, in the event of a total loss, the Limit Of Insurance (or the limit shown in the total loss schedule of values) for a building which is Covered Property represents its value.

**6.** Paragraphs **G.2.a.** and **G.2.d. Mortgageholders** Property General Condition are replaced by the following:

**a.** The term mortgageholder includes trustees and contract for deed vendors.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, your mortgageholder will still have the right to receive loss payment if your mortgageholder:

**(1)** Pays premium due under the Policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this Policy will then apply directly to your mortgageholder.

**7.** The following paragraph is added to Paragraph **G.2. Mortgageholders** Property General Condition:

**h.** We will notify your mortgageholder of changes to this Policy that result in a substantial reduction of coverage to your mortgaged property.

**C.** The Businessowners Liability Coverage Form is amended as follows:

**1.** Paragraph **A.2.c. Coverage Extension - Supplementary Payments** is replaced by the following:

**c.** So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us, and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit Of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of agreement described in Paragraph **A.2.b.** above are no longer met.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 17 of 164

Illinois Casualty Company 07/05/2022

3. Paragraph **B.1.b. Exclusions - Applicable To Bodily Injury And/Or Property Damage** is replaced by the following:

This insurance does not apply to:

**(2) Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(a)** That the insured would have in the absence of the contract or agreement; or

**(b)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.


Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

# BUSINESSOWNERS PROPERTY TABLE OF CONTENTS

This table of contents is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the table of contents, or noted elsewhere in it. For instance, an Exclusion feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

**A. Coverage** ... **1**

1. Covered Property ... 1
2. Additional Coverages ... 2
3. Coverage Extensions ... 15
4. Optional Coverages ... 17

**B. Covered Causes Of Loss** ... **26**

**C. Property Not Covered, Limitations, And Exclusions** ... **26**

1. Property Not Covered ... 26
2. Limitations ... 28
3. Exclusions ... 29

**D. Limits Of Insurance** ... **35**

1. The Most We Will Pay ... 35
2. Stated Amounts For Coverage Extensions And Additional Coverages ... 35
3. Building Limit – Automatic Increase ... 36
4. Your Business Personal Property Limit – Seasonal Increase ... 36

**E. Deductibles** ... **36**

1. General Deductible ... 36
2. Additional Coverages, Coverage Extensions And Optional Coverages Deductible ... 37

**F. Property Loss Conditions** ... **38**

1. Abandonment ... 38
2. Appraisal ... 38
3. Duties In The Event Of Loss Or Damage ... 38
4. Legal Action Against Us ... 39
5. Loss Payment ... 39
6. Other Insurance ... 42
7. Recovered Property ... 43
8. Resumption Of Operations ... 43
9. Transfer Of Rights Of Recovery Against Others To Us ... 43
10. Vacancy ... 43

**G. Property General Conditions** ... **44**

1. Control Of Property ... 44
2. Mortgageholders ... 44
3. No Benefit To Bailee ... 45
4. Policy Period, Coverage Territory ... 45

**H. Property Definitions** ... **45**

1. Words With Special Meaning ... 45

Illinois Casualty Company 07/05/2022

Policy Number: [redacted]

# BUSINESSOWNERS PROPERTY COVERAGE FORM

Various provisions in this Coverage Form and/or endorsements attached hereto restrict coverage. Read the entire Coverage Form and all endorsements attached hereto carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form and/or endorsements attached hereto, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. Property Definitions**.

## A. Coverage

We will pay you for direct physical loss of or damage to your Covered Property at the "premises" described in the Declarations caused by or resulting from any Covered Cause Of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Form, means the type of property as described in this Paragraph, **A.1.**, (but does not include the types of Property described in **C.1. Property Not Covered**), if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Buildings, meaning the buildings and structures at the "premises" described in the Declarations, including:**

**(1)** Completed building additions;

**(2)** Permanently installed:

**(a)** Building fixtures;

**(b)** Building machinery; and

**(c)** Building equipment;

**(3)** Attached outdoor television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b. Tenant's Improvements And Betterments, meaning the fixtures, machinery, equipment, alterations, installations or additions:**

**(1)** Made a part of the building or structure you occupy but are not the legal titleholder nor have entered into a contract with the legal titleholder for the purchase; and

**(2)** You specifically acquired at your expense or made at your expense but cannot legally remove.

**c. Your Business Personal Property located in or on the buildings or structures at the "premises" described in the Declarations or in a vehicle or temporary storage unit or in the open within 1000 feet of the described "premises", meaning only:**

**(1)** Personal property, including trade fixtures, you own that is regularly used in your "operations" on an ongoing basis;

**(2)** Unless a specific amount of insurance is shown in the Declarations for Covered Property as described in **A.1.b**. above, tenant's improvements and betterments. Tenant's improvements and betterments are fixtures, machinery, equipment, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but are not the legal titleholder nor have entered into a contract with the legal titleholder for the purchase; and

**(b)** You specifically acquired at your expense or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** Tangible personal property of others for which you have a contractual responsibility for direct physical loss of or damage to such personal property;

**(4)** If you are a tenant and no limit of insurance is shown for Buildings – Contractual Responsibility To Insure or Buildings – Contractual Responsibility For Repairs, glass, including lettering or ornamentation that is part of the exterior of the building you occupy at the described "premises" for which you have a contractual responsibility for direct physical loss of or damage to such glass. Paragraphs **I.(1)(a)**, **(b)**, **(c)**; **I.(2)** and **I.(3)** of the Additional Coverage – Exterior Building Glass apply to this coverage.

**2. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)**, and **(4)** that follow, we will pay your expense to remove debris of Covered Property and other debris that is on the described "premises", when such debris is caused by or results from a Covered Cause Of Loss that occurs during the Policy Period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

If you fail to report the expenses to us within the 180-day timeframe, such failure will not invalidate a claim under this Additional Coverage – Debris Removal unless such failure operates to prejudice our rights.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this policy;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)** that follow, the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit Of Insurance applicable to the Covered Property that has sustained loss or damage;

**(b)** Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, unless a higher Limit Of Insurance is shown in the Declarations for each location, for loss of or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit Of Insurance on the Covered Property that has sustained loss or damage;

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 21 of 164

Illinois Casualty Company 07/05/2022

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit Of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)** Examples:

**Example #1**

| | |
|---|---|
| Limit Of Insurance | $90,000 |
| Amount Of Deductible | $ 500 |
| Amount Of Loss | $50,000 |
| Amount Of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Payable | $10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit Of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit Of Insurance | $90,000 |
| Amount Of Deductible | $ 500 |
| Amount Of Loss | $80,000 |
| Amount Of Loss Payable | $79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense | $40,000 |
| Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) X .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit Of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit Of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus the total payment for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described "premises" to preserve it from loss or damage by a Covered Cause Of Loss, we will pay for any direct physical loss of or damage to that property:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 90 days after the property is first moved.

This Additional Coverage does not increase the applicable Limit Of Insurance on any Covered Property.

**c. Fire Department Service Charge**

When a fire department is called to save or protect Covered Property from a Covered Cause Of Loss, we will pay up to $10,000 for your liability for fire department service charges:

**(1)** Assumed by you by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

This Additional Coverage is not subject to the Limit Of Insurance on any Covered Property.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in **d.(1)** through **d.(7).**

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is Covered Property under this Coverage Form or that contains Covered Property under this Coverage Form, if such abrupt collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to any "authorized representative" prior to abrupt collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to any "authorized representative" prior to abrupt collapse;

**(c)** Use of defective material or methods in construction, "remodeling" or "renovation" if the abrupt collapse occurs during the course of the construction, "remodeling" or "renovation".

**(3)** In addition to the Limitations and Exclusions applicable to this Coverage Form, this Additional Coverage - Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** If business personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of business personal property only if:

**(a)** The collapse of business personal property is caused by a cause of loss listed in **(2)(a)** through **(2)(c)** above;

**(b)** The business personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in **(3)** above, regardless of whether that kind of property is considered to be business personal property or real property.

The coverage stated in this Paragraph **(4)** does not apply to business personal property that is Covered Property if marring and/or scratching is the only damage to that business personal property caused by the collapse.

**(5)** This Additional Coverage – Collapse does not apply to business personal property that has not abruptly fallen down or caved in, even if the business personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 23 of 164

Illinois Casualty Company 07/05/2022

(6) This Additional Coverage – Collapse does not increase the Limits Of Insurance provided in this Coverage Form.

(7) The term Covered Cause Of Loss includes the Additional Coverage - Collapse as described and limited in **d.(1)** through **d.(7)** of this Additional Coverage – Collapse.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

Except for the coverage provided by "Sewer" Back Up as specifically described in Paragraph **A.2.**, if loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the Covered Property to repair damage to the system or appliance from which water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

This Additional Coverage will not increase the applicable Limit Of Insurance on any Covered Property.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described "premises". The loss or damage must be caused by or result from a Covered Cause Of Loss. With respect to loss of or damage to business personal property in the open or business personal property in a vehicle, the described "premises" includes the area within 1000 feet of the described "premises".

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 consecutive days following the date of direct physical loss or damage unless a different number of consecutive days is shown in the Declarations.

**(c)** For the purposes of this Additional Coverage – Business Income, Business Income means the:

**(i)** Net Income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage has occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause Of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses you actually incur, including payroll.

**(d)** For the purposes of this Additional Coverage – Business Income, ordinary payroll expenses:

**(i)** Means payroll expenses for all your "employees" except:

**(aa)** You;

**(bb)** Your partners;

**(cc)** Your executive officers;

**(dd)** Your "managers"; and

**(ee)** "Employees" under contract.

**(ii)** Includes:

**(aa)** Payroll;

**(bb)** Tips to the extent the tips are verifiable;

**(cc)** Employee benefits, if directly related to payroll;

**(dd)** FICA payments you are required to pay;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(ee)** Union dues you are required to pay; and

**(ff)** Workers compensation insurance premiums you are required to pay.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this Coverage Form, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**(aa)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**(bb)** 60 consecutive days after the date determined in Paragraph **(a)(i)** above unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause Of Loss in the area where the described "premises" is located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described "premises" caused by or resulting from any Covered Cause Of Loss.

**(3)** For the purposes of this Additional Coverage – Business Income, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described "premises" is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits Of Insurance.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described "premises". The loss or damage must be caused by or result from a Covered Cause Of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle or in a temporary storage unit, the described "premises" includes the area within 1000 feet of the described "premises".

**(2)** For the purposes of this Additional Coverage – Extra Expense, Extra Expense means expense incurred:

**(a)** To avoid or to minimize the suspension of business and to continue "operations":

**(i)** At the described "premises"; or

**(ii)** At replacement "premises" or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations;

**(b)** To minimize the suspension of business if you cannot continue "operations";

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage – Extra Expense or Additional Coverage – Business Income.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**BUSINESSOWNERS PROPERTY**
**BP CF 01 01 18**

**(3)** For the purposes of this Additional Coverage – Extra Expense, suspension means:

    **(a)** The partial slowdown or complete cessation of your business activities; or

    **(b)** That part or all of the described "premises" is rendered untenantable, if coverage for Business Income applies.

**(4)** We will pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage.

**(5)** This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**h.  Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described "premises" if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause Of Loss that occurs during the Policy Period. The expense will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause Of Loss occurs.

If you fail to report the expenses to us within the 180-day timeframe, such failure will not invalidate a claim under this Additional Coverage – Pollutant Clean Up and Removal unless such failure operates to prejudice our rights.

This Additional Coverage – Pollutant Clean Up and Removal does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants".  But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each "premises" described in the Declarations under this Additional Coverage – Pollutant Clean Up and Removal is $10,000 for the sum of all such expenses arising out of all Covered Causes Of Loss occurring during each separate 12 month period of this Policy.

This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**i.  Civil Authority**

When a Covered Cause Of Loss causes damage to property other than property at the described "premises", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described "premises", provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described "premises" are within that area but are not outside a one mile radius from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described "premises" and will end:

    **(a)** Four consecutive weeks after the date of that action; or

    **(b)** When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions contained in the Additional Coverages – Business Income and Extra Expense also apply to this Additional Coverage – Civil Authority.

This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**j.  Money Orders And "Counterfeit Money"**

**(1)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

    **(a)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

    **(b)** "Counterfeit money" that is acquired during the regular course of business.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

[redacted]

**(2)** For purposes of this Additional Coverage – Money Orders And "Counterfeit Money", the definition of "occurrence" found in Paragraph **H. 1.aa.** is deleted in its entirety and replaced with the following:

**(a)** All loss involving a single act or a series of acts caused by one or more persons acting in collusion is considered one "occurrence". The 72 hour limitation in the definition of "occurrence" does not apply.

**(3)** The most we will pay for any "occurrence" under this Additional Coverage – Money Orders And "Counterfeit Money" is $5,000.

**(4)** A per "occurrence" deductible of $100 will apply.

**(5)** This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**(4)** For purposes of this Additional Coverage – Forgery Or Alteration, the definition of "occurrence" found in Paragraph **H. 1.aa.** is deleted in its entirety and replaced with the following:

All loss involving a single act or a seonaries of acts caused by one or more persons acting in collusion is considered one "occurrence". The 72-hour limitation in the definition of "occurrence" does not apply.

**(5)** The most we will pay for any "occurrence", including legal expenses, under this Additional Coverage – Forgery Or Alteration is $5,000, unless a higher Limit Of Insurance is shown in the Declarations.

**(6)** This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**l. Exterior Building Glass**

**(1)** We will pay for direct physical loss of or damage to glass, including lettering or ornamentation that is part of the exterior of buildings that are Covered Property at the described "premises". The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

**(a)** Expenses incurred by you to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replacement of encasing frames; and

**(c)** Expenses incurred by you to remove or replace obstructions when repairing or replacing damaged glass. This does not include removing or replacing window displays.

**(2)** Section **B., Covered Causes Of Loss** and Paragraph **C.3., Exclusions** do not apply to this Additional Coverage – Exterior Building Glass, except for:

**(a)** Paragraph **C.3.a.(2)** Earth Movement;

**(b)** Paragraph **C.3.a.(3)** Governmental Action;

**(c)** Paragraph **C.3.a.(4)** Nuclear Hazard;

**(d)** Paragraph **C.3.a.(6)** War And Military Action; and

**(e)** Paragraph **C.3.a.(7)** Water.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage caused by or resulting from:

   **(a)** Wear and tear;

   **(b)** Hidden or latent defect;

   **(c)** Corrosion; or

   **(d)** Rust.

**(4)** The most we will pay for any "occurrence" under this Additional Coverage – Exterior Building Glass is the actual loss sustained.

**(5)** This Additional Coverage does not increase the applicable Limit Of Insurance on any Covered Property.

**m. Limited Coverage For Fungi, Wet Rot And Dry Rot**

**(1)** This Additional Coverage – Limited Coverage For Fungi, Wet Rot And Dry Rot only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" (other than fire or lightning) that occurs during the Policy Period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after the "occurrence".

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. For the purposes of this Additional Coverage – Limited Coverage For Fungi, Wet Rot And Dry Rot, the term loss or damage means:

   **(a)** Direct physical loss or damage by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

   **(b)** The cost to tear out and replace any part of the Covered Property as needed to gain access to the "fungi", wet rot or dry rot; and

   **(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged Covered Property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

**(3)** The most we will pay for each "premises" described in the Declarations under this Additional Coverage – Limited Coverage For Fungi, Wet Rot And Dry Rot is $15,000 for the sum of all such expenses for the total loss or damage arising out of all "occurrences" of all "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual Policy Period). With respect to a particular "occurrence" of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later Policy Period.

**(4)** The coverage provided under this Additional Coverage – Limited Coverage For Fungi, Wet Rot And Dry Rot does not increase the applicable Limit Of Insurance on any Covered Property. If a particular "occurrence" results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit Of Insurance on the affected Covered Property.

**(5)** If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage – Limited Coverage For Fungi, Wet Rot And Dry Rot.

**(6)** The terms of this Additional Coverage – Limited Coverage For Fungi, Wet Rot And Dry Rot do not increase or reduce the coverage provided under the Additional Coverages – Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse.

**(7)** The following applies only if Additional Coverages – Business Income and/or Extra Expense applies to the described "premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Additional Coverages – Business Income and/or Extra Expense.

   **(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is

BP CF 01 01 18                                                                                                      Page **9** of **52**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

limited to the amount of loss and/or expense sustained in a period of not more than 30 consecutive days.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 consecutive days.

**(8)** This Additional Coverage does not apply to lawns, trees, shrubs, or plants which are part of a vegetated roof.

**n. Equipment Breakdown Protection Coverage**

**(1)** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or power surge from artificially generated electric current to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or power surge from artificially generated electric current to pressure, mechanical or electrical machinery and equipment does not mean any:

**(a)** Malfunction, including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(b)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(c)** Damage to any vacuum tube, gas tube, or brush, or the functioning of any safety or protective device.

**(2)** Suspension

Whenever any covered pressure, mechanical or electric machinery and equipment is found to be in, or exposed to a dangerous condition, any of our company representatives may suspend coverage provided by this Additional Coverage – Equipment Breakdown Protection Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However coverage provided by this Additional Coverage – Equipment Breakdown Protection Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our company representatives to no longer exist.

We may suspend or reinstate this Additional Coverage – Equipment Breakdown Protection Coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(a)** Your last known address; or

**(b)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of suspension or reinstatement. Once suspended in this way, your insurance can be reinstated only by written notice from us.

**(3)** Jurisdictional Inspections

If any property that is covered equipment under Paragraph **A.2.o.** requires inspection to comply with state or municipal boiler and pressure vessel regulations, we will not perform such inspection on your behalf.

**(4)** Limit Of Insurance

This Additional Coverage does not increase the applicable Limit Of Insurance on any Covered Property.

**o. Fire Extinguisher Systems Recharge Expenses**

**(1)** We will pay:

**(a)** Expense you incur to recharge or replace,, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on the described "premises"; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 29 of 164

Illinois Casualty Company 07/05/2022

(b) For direct physical loss of or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay for any "occurrence" under this Additional Coverage – Fire Extinguisher Systems Recharge Expenses is $5,000.

(4) This Additional Coverage does not increase the applicable Limits Of Insurance on any Covered Property.

**p. Claim Data Expenses**

(1) We will pay for necessary and reasonable expenses you incur in preparing claim data when we require you to do so. This includes the costs of taking inventories, making appraisals, and preparing other documentation to show the amount of loss. However, we will not pay for any expense billed by or on behalf of insurance adjusters or attorneys or any costs as provided in Property Loss Conditions – Appraisal.

(2) The most we will pay for all expenses due to any "occurrence" under this Additional Coverage - Claim Data Expenses is $ 5,000.

(3) This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**q. "Sewer" Back Up**

(1) We will pay for direct physical loss of or damage to Covered Property at the "premises" described in the Declarations caused by or resulting from:

(a) Water or waterborne material which backs up or overflows or is otherwise discharged from a "sewer" or "drain" at the "premises" described in the Declarations; or

(b) Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment at the "premises" described in the Declarations, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **(b)** above, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown except as provided in the Additional Coverage – Equipment Breakdown Protection Coverage.

(2) In addition to the Limitations and Exclusions applicable to this Coverage Form, the coverage described in Paragraph **(1)** above does not apply to loss or damage resulting from any "Authorized Representative's" failure to:

(a) Keep a sump pump or its related equipment in proper working condition; or

(b) Perform the routine maintenance or repair necessary to keep a "sewer" or "drain" free from obstructions.

(3) In addition to the Limitations and Exclusions applicable to this Coverage Form, the coverage described in Paragraph **(1)** above does not apply to loss or damage caused directly or indirectly by the overflow of inland or tidal waters whether the "sewer" back up at the "premises" described in the Declarations occurs before, at the same time as, or after the overflow of inland or tidal waters.

(4) The most we will pay for loss of or damage to Covered Property, including actual loss of Business Income you sustain and necessary Extra Expense you incur under this Additional Coverage – "Sewer" Back Up, is $5,000 per "occurrence" for each described "premises", unless a higher Limit Of Insurance is shown in the Declarations for this Additional Coverage – "Sewer" Back Up.

With respect to an "occurrence" which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the "occurrence" began.

(5) The definitions contained in the Additional Coverages – Business Income and Extra Expense also apply to this Additional Coverage – "Sewer" Back Up.

(6) This Additional Coverage does not increase the applicable Limit of Insurance on any Covered Property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**r. Lock Replacement**

**(1)** We will pay for expenses you incur if keys are stolen or presumed to have been stolen. We will pay the lesser of the cost to:

**(a)** Re-key the locks; or

**(b)** Install new lock cylinders; or

**(c)** Repair the locks; or

**(d)** Replace locks at the described "premises".

**(2)** The most we will pay for any "occurrence" under this Additional Coverage – Lock Replacement for all loss or damage is $1,000.

**(3)** A per "occurrence" deductible of $100 will apply.

**(4)** This Additional Coverage does not increase the applicable Limit Of Insurance on any Covered Property.

**s. Computer Fraud And Funds Transfer Fraud**

**(1)** We will pay for loss of and damage to "money", "securities", and Your Business Personal Property following and directly related to the use of any "computer" to fraudulently cause a transfer of that property from inside the described "premises", bank or savings institution:

**(a)** To a person (other than a messenger) outside those "premises"; or

**(b)** To a place outside those "premises".

**(2)** We will pay for loss of "money" and "securities" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" and "securities" from your "transfer account"

**(3)** With respect to the Additional Coverage – Computer Fraud And Funds Transfer Fraud, Paragraph **C.3. Exclusions** is amended as follows:

**(a)** Paragraph **C.3.b.(5)** does not apply.

**(b)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damages caused by or resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**(4)** For purposes of this Additional Coverage – Computer Fraud And Funds Transfer Fraud, messenger means you, any of your partners, "members" or any "employee" while having proper care and custody of the property outside the "premises".

**(5)** For purposes of this Additional Coverage – Computer Fraud and Funds Transfer Fraud, the definition of "occurrence" found in Paragraph **H.1.aa.**. is deleted in its entirety and replaced with the following:

All loss caused by any person or in which that person is involved, whether the loss involves one or more instruments, is considered one "occurrence".

**(6)** The most we will pay under this Additional Coverage – Computer Fraud And Funds Transfer Fraud is $10,000.

**(7)** This Additional Coverage does not increase the applicable Limit Of Insurance on any Covered Property.

**t. Credit Card Forgery**

**(1)** We will pay for loss involving written instruments required in conjunction with your customers' credit, debit or charge card resulting directly from forgery or alteration of such written instruments by your customers.

**(2)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage arising from any credit, debit or charge card transaction if you have not complied fully with the provisions, conditions or other terms of the card issuer.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

(3) Paragraph **C.1. Property Not Covered**, **b.** does not apply to this Additional Coverage – Credit Card Forgery.

(4) For purposes of this Additional Coverage – Credit Card Forgery, the definition of "occurrence" found in Paragraph **H.1.aa.** is deleted in its entirety and replaced with the following:

All loss caused by any person or in which that person is involved, whether the loss involves one or more instruments, is considered one "occurrence".

(5) The most we will pay for any "occurrence" under this Additional Coverage – Credit Card Forgery is $5,000.

(6) This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**u. Credit Card Slip Theft, Disappearance Or Destruction**

(1) We will pay for loss of written instruments required in conjunction with any credit, debit, or charge card at the described "premises" resulting directly from theft meaning any act of stealing, disappearance or destruction.

(2) In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage:

**(a)** Resulting from accounting or arithmetical errors or omission; or

**(b)** Due to giving or surrendering of property in any exchange or purchase.

(3) Paragraph **C.1. Property Not Covered**, **b.** does not apply to this Additional Coverage – Credit Card Slip Theft, Disappearance Or Destruction.

(4) You must keep records of all written instruments so we can verify the amount of any loss or damage.

(5) For purposes of this Additional Coverage – Credit Card Slip Theft, Disappearance Or Destruction, the definition of "occurrence" found in Paragraph **H.1.aa.** is deleted in its entirety and replaced with the following:

All loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one "occurrence".

(6) The most we will pay for any "occurrence" under this Additional Coverage – Credit Card Slip Theft, Disappearance Or Destruction is $5,000.

(7) This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**v. Your Business Personal Property Off Premises**

(1) We will pay for direct physical loss of or damage to Your Business Personal Property while it is:

**(a)** In the course of transit; or

**(b)** At a "premises" you do not own or lease, or

**(c)** At any fair, trade show, or exhibition.

(2) The most we will pay for any "occurrence" under this Additional Coverage – Your Business Personal Property Off Premises is $15,000 unless a higher Limit Of Insurance is shown in the Declarations.

(3) This Additional Coverage does not increase the applicable Limit Of Insurance on any Covered Property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**w. Customer Expense Reimbursement**

**(1)** We will pay necessary costs to reimburse additional expenses incurred by your customers because your products or services, which were ordered in advance, were not available due to direct physical loss of or damage to Covered Property at the described "premises" caused by a Covered Cause of Loss.

**(2)** For purposes of this Additional Coverage, customer expenses means the additional cost incurred by persons for whom prearranged products or services cannot be honored. These expenses include costs to secure alternative products or services which are comparable to yours.

**(3)** We will pay for expenses incurred for the period of time:

**(a)** Beginning on the date of the customer's prearranged services or products are:

**(i)** Scheduled to be delivered but cannot; or

**(ii)** Interrupted by direct physical loss of or damage to Covered Property, whichever is later; and

**(b)** Ending on the earliest of the following dates:

**(i)** The date prearranged services or products are scheduled to end; or

**(ii)** The date damaged property at the described "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(iii)** 14 days after the date determined in **(1)** above.

**(4)** The most we will pay for any "occurrence" under this Additional Coverage – Customer Expense Reimbursement is $25,000.

**(5)** This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**x. Personal Effects Of Customers**

**(1)** We will pay for direct physical loss of or damage to personal effects of your customers resulting from a Covered Cause Of Loss.

**(2)** The most we will pay for any "occurrence" under this Additional Coverage – Personal Effects Of Customers is $5,000 at each described "premises" unless a higher Limit Of Insurance is shown in the Declarations.

**(3)** This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**y. Unscheduled Outbuildings**

**(1)** We will pay for direct physical loss of or damage to any building and Your Business Personal Property located in that building.

**(2)** The building must be at the "premises" described in the Declarations.

**(3)** The most we will pay for any "occurrence" under this Additional Coverage – Unscheduled Outbuildings is $5,000.

**(4)** This Additional Coverage is not subject to the Limits Of Insurance on any Covered Property.

**z. Additional Expenses As Required By Local And/Or State Requirements**

**(1)** In the event of a covered claim, we will pay:

**(a)** Actual expense(s) you incur in order to comply with local and/or state requirements to board up, erect fencing, or otherwise secure your property after a covered loss.

**(i)** There must be a written order from local and/or state authorities requiring the action that resulted in the expense(s) incurred.

**(ii)** The most we will pay under the additional coverage is $2,500.

**(iii)** These payments will not reduce the limit of insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**3. Coverage Extensions**

In addition to the Limits Of Insurance, you may extend the insurance provided by this Coverage Form as provided below.

Except as otherwise provided, the following Coverage Extensions apply to property located in or on the building described in the Declarations or in a vehicle or temporary storage or in the open within 1000 feet of the described "premises".

**a. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause Of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as sample or for delivery after sale;

**(b)** Property in storage away from the "premises" described in the Declarations.

**(3)** The most we will pay for any "occurrence" under this Coverage Extension – Valuable Papers And Records for loss or damage to "valuable papers and records" at the described "premises" is $25,000, unless a higher Limit Of Insurance is shown in the Declarations.

For "valuable papers and records" not at the described "premises", the most we will pay for any "occurrence" is $5,000.

**(4)** Paragraph **C.3. Exclusions** of this Coverage Form does not apply to this Coverage Extension – Valuable Papers and Records except for:

**(a)** Paragraph **C.3.a.(3)** Governmental Action;

**(b)** Paragraph **C.3.a.(4)** Nuclear Hazard;

**(c)** Paragraph **C.3.a.(6)** War And Military Action;

**(d)** Paragraph **C.3.b.(4)** Dishonesty;

**(e)** Paragraph **C.3.b.(5)** False Pretense; and

**(f)** Paragraph **C.3.c**.

**b. Accounts Receivable**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause Of Loss to your records of accounts receivable.

**(2)** The most we will pay for any "occurrence" under this Coverage Extension – Accounts Receivable for loss or damage at the described "premises" is $25,000, unless a higher Limit Of Insurance is shown in the Declarations.

For accounts receivable not at the described "premises", the most we will pay for any "occurrence" is $5,000.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(3) Paragraph **C.3. Exclusions** of this Coverage Form does not apply to this Coverage Extension – Accounts Receivable, except for:

(a) Paragraph **C.3.a.(3)** Governmental Action;

(b) Paragraph **C.3.a.(4)** Nuclear Hazard;

(c) Paragraph **C.3.a.(6)** War And Military Action;

(d) Paragraph **C.3.b.(4)** Dishonesty;

(e) Paragraph **C.3.b.(5)** False Pretense;

(f) Paragraph **C.3.c.**; and

(g) Paragraph **C.3.e.** Accounts Receivable Exclusion.

**c. Arson, Theft And Vandalism Loss Reduction Incentive**

(1) You may extend the insurance provided by this Coverage Form to Covered Property to apply to rewards given to any person or persons, other than you, your "authorized representatives", your agents, or public police officials, for information leading to an arrest and conviction in connection with:

(a) A fire loss to the described "premises" caused by arson;

(b) An actual or attempted theft of "money" or other Covered Property; or

(c) A vandalism loss to the described "premises".

(2) The most we will pay for any "occurrence" under this Coverage Extension – Arson, Theft and Vandalism Loss Reduction Incentive is $5,000 or the amount of the covered loss involved, whichever is less. This is the most we will pay regardless of the number of persons who provided information.

**d. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody, or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension – Non-owned Detached Trailer is $5,000, unless a higher Limit Of Insurance is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**e. Newly Acquired Or Constructed Property**

(1) If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

(2) With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(b)** Thirty (30) days after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

**(3)** We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**f. Outdoor Property**

**(1)** You may extend the insurance provided by this policy to apply to your outdoor:

**(a)** Fences;

**(b)** Radio and television antennas (including satellite dishes) except as provided by **A.1.a.**, **A.1.b.**, or **A.1.c.**;

**(c)** Lighting and light poles;

**(d)** Yard fixtures;

**(e)** Decks;

**(f)** Patios, bridges, roadways, parking areas, walks or other concrete or paved surfaces;

**(g)** Signs (other than signs structurally attached to covered buildings);

**(h)** Trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense;

**(i)** Retaining walls;

**(j)** Canopies;

**(k)** Bulkheads, pilings, piers, wharves, or docks, including permanently attached coverings.

**(2)** Loss or damage must be caused by or result from any Covered Cause of Loss.

**(3)** The most we will pay for loss or damage under this Extension is the amount shown in the declarations, but not more than $1,000 for any one tree, shrub, or plant.

Subject to all the aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs, and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**g. Personal Effects**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your "employees", including temporary or leased "employees". This extension does not apply to:

**(a)** Tools or equipment used in your business; or

**(b)** Loss or damage by theft.

**(2)** The most we will pay for loss or damage under this Extension is $2,500 at each described "premises".

**4. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These Optional Coverages are subject to the terms and conditions applicable to property coverage in this Coverage Form, except as specifically stated in the provisions below applicable to the Optional Coverage.

**a. Outdoor Signs/Awnings/Tents**

**(1)** We will pay for direct physical loss of or damage to all outdoor signs and/or all outdoor awnings and/or all outdoor tents at the described "premises":

**(a)** Owned by you; or

**(b)** Owned by others but in your care, custody, or control.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 36 of 164

Illinois Casualty Company 07/05/2022

**(2)** Section **B. Covered Causes Of Loss**, and Paragraph **C.3. Exclusions** do not apply to this Optional Coverage – Outdoor Signs/Awnings/Tents, except for:

**(a)** Paragraph **C.3.a.(3)** Governmental Action;

**(b)** Paragraph **C.3.a.(4)** Nuclear Hazard; and

**(c)** Paragraph **C.3.a.(6)** War And Military Action.

**(3)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Rust; or

**(d)** Corrosion.

**(4)** The most we will pay for any "occurrence" is the Limit Of Insurance for Outdoor Signs/Awnings/Tents shown in the Declarations.

**(5)** The provisions of this Optional Coverage – Outdoor Signs/Awnings/Tents supersede all other references to outdoor signs/awnings/tents in this Coverage Form.

**b. Money And Securities**

**(1)** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners, your "members", or an "employee" having proper care and custody of the property, at the described "premises", or in direct transit between any of these places, resulting directly from:

**(a)** Theft, meaning any act of stealing;

**(b)** Disappearance; or

**(c)** Destruction.

**(2)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss:

**(a)** Resulting from accounting or arithmetical errors or omissions;

**(b)** Due to the giving or surrendering of property in any exchange or purchase; or

**(c)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

**(d)** Of or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described "premises", bank or savings institution:

**(i)** To a person (other than a messenger) outside those "premises"; or

**(ii)** To a place outside those "premises"; or

**(e)** Resulting from an act of an "employee".

**(3)** The most we will pay for any "occurrence" is:

**(a)** The Limit Of Insurance shown in the Declarations for Money And Securities Inside the Premises for "money" and "securities" while:

**(i)** In or on the described "premises"; or

**(ii)** Within a bank or savings institution; and

**(b)** The Limit Of Insurance shown in the Declarations for Money and Securities Outside the Premises for "money" and "securities" while anywhere else within the coverage territory.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(4)** For purposes of this Optional Coverage – Money and Securities, the definition of "occurrence" found in Paragraph **H.1.aa.** is deleted in its entirety and replaced with the following:

All loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one "occurrence".

**(5)** You must keep records of all "money" and "securities" sufficient to allow verification of any loss or damage.

We will not pay for theft, disappearance or destruction of "money" or "securities" for which we cannot verify the amount of any loss or damage.

**(6)** For purposes of this Optional Coverage – Money And Securities, messenger means you, any of your partners, "members", or any "employee" while having proper care and custody of the property outside the "premises".

**c. Employee Dishonesty**

**(1)** We will pay for direct loss of or damage to "money", "securities", Your Business Personal Property, or personal effects of customers in your care, custody, or control resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you, your "spouse", your partner, or your "member") with the manifest intent to:

**(a)** Cause you to sustain loss or damage; and also

**(b)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(i)** Any "employee"; or

**(ii)** Any other person or organization.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this coverage must be presented by you.

**(2)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage:

**(a)** Resulting from any dishonest or criminal act that you, your "spouse", or any of your partners or your "members", officers, or your directors, or trustees commit whether acting alone or in collusion with other persons;

**(b)** Resulting from any dishonest act committed by any of your "employees" (except as provided in Paragraph **(a)**), "managers" or directors:

**(i)** Whether acting alone or in collusion with other persons; or

**(ii)** While performing services for you or otherwise;

**(c)** The only proof of which as to its existence or amount is:

**(i)** An inventory computation; or

**(ii)** A profit and loss computation.

**(d)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you, your "spouse", or any of your partners, "members", "managers", officers, directors, or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the Policy Period shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** The most we will pay for any "occurrence" is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**(4)** For purposes of this Optional Coverage – Employee Dishonesty, the definition of "occurrence" found in Paragraph **H.1.aa.** is deleted in its entirety and replaced with the following:

All loss or damage:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or a series of acts;

is considered one "occurrence".

**(5)** If any loss is covered:

**(a)** Partly by this insurance; and

**(b)** Partly by any prior cancelled or terminated insurance that we or any affiliate has issued to you or any predecessor in interest;

the most we will pay is the amount recoverable under this insurance as of its effective date.

**(6)** We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this Policy remains in force or the number of premiums paid, no Limit Of Insurance cumulates from year to year or period to period.

**(7)** This Optional Coverage – Employee Dishonesty is cancelled as to any "employee" immediately upon discovery by:

**(a)** You; or

**(b)** Any of your partners, "members" or "managers", executive officers or stockholders or directors not in collusion with the "employee";

of any dishonest act committed by that "employee" before or after being hired by you.

**(8)** We will pay only for covered loss or damage sustained during the Policy Period and discovered no later than one year from the end of the Policy Period.

**(9)** If you sustained loss or damage during the Policy Period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage – Employee Dishonesty, provided:

**(a)** This Optional Coverage – Employee Dishonesty became effective at the time of cancellation or termination of the prior insurance; and

**(b)** The loss or damage would have been covered by this Optional Coverage – Employee Dishonesty had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**(10)** The insurance under Paragraph **(8)** above is part of, not in addition to, the Limit Of Insurance applying to this Optional Coverage – Employee Dishonesty and is limited to the lesser of the amount recoverable under:

**(a)** The Optional Coverage – Employee Dishonesty as of its effective date; or

**(b)** The prior insurance had it remained in effect.

**d. Spoilage**

**(1)** We will pay for direct physical loss of or damage to "perishable stock" caused by the Covered Causes Of Loss as provided by this Optional Coverage.

**(2)** For the purposes of this Optional Coverage – Spoilage:

**(a)** Paragraph **A.1. Covered Property** is replaced by the following:

**Covered Property**

Covered Property means "perishable stock" at the described "premises", if the "perishable stock" is owned by you and used in your business.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(b)** The following is added to Paragraph **C.1. Property Not Covered**:

Property located:

**(i)** On buildings;

**(ii)** In the open; or

**(iii)** In vehicles.

**(c)** Section **B. Covered Causes Of Loss**, is replaced by the following:

**B. Covered Causes Of Loss**

**1.** Breakdown or Contamination, meaning:

Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such apparatus or equipment is at the described "premises" shown in the Declarations; or

Contamination by a refrigerant, only while the refrigerating apparatus or equipment is at the described "premises" shown in the Declarations.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial; or

**2.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described "premises", due to conditions beyond your control.

**(d)** Paragraph **A.3. Coverage Extensions**, does not apply.

**(e)** Paragraph **C.3. Exclusions**, do not apply, except for:

**(i)** Paragraph **C.3.a.(2)** Earth Movement;

**(ii)** Paragraph **C.3.a.(3)** Governmental Action;

**(iii)** Paragraph **C.3.a.(4)** Nuclear Hazard;

**(iv)** Paragraph **C.3.a.(6)** War And Military Action;

**(v)** Paragraph **C.3.a.(7)** Water.

**(3)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage caused by or resulting from:

**(a)** The disconnection by any means of any refrigerating, cooling or humidity control system from the source of power;

**(b)** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current;

**(c)** The inability of an electrical utility company or other power source to provide sufficient power due to:

**(i)** Lack of fuel; or

**(ii)** Governmental order;

**(d)** The inability of a power source at the described "premises" to provide sufficient power due to lack of generating capacity to meet demand; or

**(e)** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**(f)** The expiration of any use-by date.

**(g)** Breaking, opening, or failure of the seal of any container holding the "perishable stock".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

(4) The most we will pay for any "occurrence" is the Limit Of Insurance for Spoilage shown in the Declarations.

(5) **Selling Price**

(a) If Selling Price is shown as applicable in the Declarations, the following is added to Paragraph **F.5. Loss Payment**:

(i) If at the time of loss, the Limit Of Insurance for Spoilage is at least 100% of your average monthly values during the lesser of:

**(aa)** The 12 months immediately preceding the date the loss or damage occurs; or

**(bb)** The period of time you have been in business as of the date the loss or damage occurs.

then we will determine the value of finished "perishable stock" at:

**(aa)** The selling price, as if no loss or damage had occurred;

**(bb)** Less discounts and expenses you otherwise would have had.

(6) **Conditions**

(a) The following conditions apply in addition to the Businessowners Common Policy Conditions, Property Loss Conditions and Property General Conditions:

(i) **Additional Condition – Refrigeration Maintenance Agreement**

If a refrigeration maintenance agreement is shown as applicable in the Declarations, the following condition applies:

You must maintain a refrigeration maintenance or service agreement as described below. If you voluntarily terminate this agreement and do not notify us within 10 days, the insurance provided under the Breakdown or Contamination Covered Causes Of Loss will be automatically suspended at the location involved.

However, coverage provided is restored upon:

**(aa)** Reinstatement of the applicable refrigeration maintenance or service agreement; or

**(bb)** Procurement of a replacement refrigeration maintenance or service agreement.

A refrigeration maintenance agreement means a written service contract, between you and the refrigeration service organization, which provides for regular periodic inspection of the refrigeration equipment at the "premises" described in the Declarations and the servicing and repair of the equipment including emergency response to the "premises" described in the Declarations.

e. **Utility Services – Time Element**

(1) We will pay for loss of Business Income or Extra Expense at the "premises" described in the Declarations caused by the interruption of service to the "premises" described in the Declarations. The interruption must result from direct physical loss of or damage to Utility Services, as described in Paragraph **(2)** below caused by a Covered Cause Of Loss

(2) For purposes of this Optional Coverage – Utility Services – Time Element, utility services means services provided by one or more of the following:

(a) Water Supply Services, meaning the following types of property supplying water to the described "premises";

(i) Pumping stations; and

(ii) Water mains;

(b) Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described "premises", such as:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    Illinois Casualty Company 07/05/2022

**(i)** Communication transmission lines, including optic fiber transmission lines;

**(ii)** Coaxial cables; and

**(iii)** Microwave radio relays except satellites;

**(c)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described "premises":

**(i)** Utility generating plants;

**(ii)** Switching stations;

**(iii)** Substations;

**(iv)** Transformers; and

**(v)** Transmission lines.

**(3)** The coverage for Utility Services – Time Element will begin six (6) hours after the beginning of the interruption of service. In the event the interruption of service is for more than six (6) consecutive hours, the initial six (6) consecutive hours of interruption of service will then be covered.

**(4)** The most we will pay for any "occurrence" is the Limit Of Insurance for Utility Services – Time Element shown in the Declarations.

**f. Fine Arts**

**(1)** We will pay for direct physical loss of or damage to "fine arts" at the "premises" described in the Declarations caused by or resulting from any Covered Cause Of Loss.

**(2)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage caused by or resulting from processing of or work upon "fine arts" including repairs or restoration.

**(3)** The most we will pay for any "occurrence" is the Limit Of Insurance for Fine Arts shown in the Declarations.

**g. Food Contamination**

**(1)** If your business at the "premises" described in the Declarations is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of "food contamination", we will pay:

**(a)** Your expense to clean your equipment as required by the Board of Health or any other governmental authority;

**(b)** Your cost to replace the food which is, or is suspected to be, contaminated;

**(c)** Your expense to provide necessary medical tests or vaccinations for your infected "employees". However, we will not pay for any expense that is otherwise covered under a Workers Compensation and Employers Liability Insurance Policy;

**(d)** The loss of Business Income you sustain due to the necessary suspension of your "operations". The coverage for Business Income will begin after you receive notice of closing from the Board of Health or any other governmental authority; and

**(e)** Additional advertising expenses you incur to restore your reputation.

**(2)** For the purposes of this Optional Coverage – Food Contamination, business Income and suspension have the same meanings given in Additional Coverage – Business Income.

**(3)** The most we will pay for any "occurrence" under Paragraphs **(1)(a)** through **(1)(d)** including Business Income, is the Limit Of Insurance for Food Contamination shown in the Declarations.

The most we will pay for any "occurrence" under Paragraph **(1)(e)** is the Additional Advertising Expense Limit Of Insurance for Food Contamination shown in the Declarations.

**(4)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay any fines or penalties levied against you by the Board of Health or any other governmental authority as a

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

result of the discovery or suspicion of food contamination at the "premises" described in the Declarations.

**(5)** With respect to coverage provided under this Paragraph **g.**, Exclusion **C.3.a.(9) Loss Due To Virus Or Bacteria** does not apply.

**h. Fine Arts Owned By Others**

**(1)** We will pay for direct physical loss of or damage to "fine arts owned by others" at the "premises" described in the Declarations caused by or resulting from any Covered Cause Of Loss. The "fine arts owned by others" must be:

**(a)** In your care, custody or control; and

**(b)** Tangible personal property for which you have a contractual responsibility for direct physical loss of or damage to such personal property.

**(2)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage caused by or resulting from processing of or work upon "fine arts owned by others" including repairs or restoration.

**(3)** The most we will pay for any "occurrence" is the Limit Of Insurance for Fine Arts Owned By Others shown in the Declarations.

**i. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to direct physical loss of or damage to property at the premises of a "dependent property" or "secondary dependent property" caused by or resulting from any Covered Cause Of Loss.

We will only pay for loss of Business Income that you sustain within 30 consecutive days after the date of direct physical loss or damage at the "premises" of a dependent property unless a greater number of consecutive days is shown in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** The coverage period for Business Income under this Optional Coverage – Business Income From "Dependent Properties":

**(a)** Begins at the time of direct physical loss or damage to property at the "premises" of the "dependent property" or "secondary dependent property" caused by or resulting from any Covered Cause Of Loss; and

**(b)** Ends on the date when the property at the "premises" of the "dependent property" or "secondary dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(5)** The Business Income coverage period, as stated in Paragraph **(4)** above, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The definition of Business Income contained in the Additional Coverage – Business Income also applies to this Optional Coverage – Business Income From "Dependent Properties".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(7)** This Additional Coverage does not apply when the only loss at the premises of a "dependent property" or "secondary dependent property" is loss or damage to "electronic media and records" including destruction or corruption of "electronic media and records" If the "dependent property" or "secondary dependent property" sustains loss or damage to "electronic media and records" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt, or replaced.

**(8)** The "dependent property" or "secondary dependent property" must be located in the coverage territory of this policy.

**j. Brands And Labels**

**(1)** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause Of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

**(a)** Stamp the word salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(b)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

**(2)** We will pay reasonable costs you incur to perform the activity described in Paragraph **(a)** or **(b)** above. But the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit Of Insurance on such property.

**k. Extortion**

**(1)** We will pay for loss of Your Business Personal Property and "money" and "securities" resulting directly from "extortion."

**(2)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for:

**(a)** Loss or damage resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or "authorized representatives":

**(i)** Acting alone or in collusion with other persons; or

**(ii)** While performing services for you or otherwise.

**(b)** Loss or property surrendered before a reasonable effort has been made to report an extortionist's demand to all of the following:

**(i)** An associate;

**(ii)** Local law enforcement authorities; and

**(iii)** The Federal Bureau of Investigation.

**(3)** Loss is covered only if the threat to do bodily harm is first communicated to you during the Policy Period.

**(4)** Loss is covered only if the capture or alleged capture takes place within the United States of America, U.S. Virgin Islands, Puerto Rico or Canada. Paragraph **G.4.b.** does not apply.

**(5)** The most we will pay for loss in any one "occurrence" is the Limit Of Insurance for Extortion shown in the Declarations.

**l. Outdoor Signs Away From Premises**

**(1)** We will pay for direct loss of or damage to outdoor signs owned by you and away from the described "premises".

**(2)** Section **B. Covered Causes Of Loss**, and Paragraph **C.3. Exclusions** do not apply to this Optional Coverage – Outdoor Signs Away From Premises, except for:

**(a)** Paragraph **C.3.a.(3)** Governmental Action;

**(b)** Paragraph **C.3.a.(4)** Nuclear Hazard; and

**(c)** Paragraph **C.3.a.(6)** War And Military Action.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** In addition to the Limitations and Exclusions applicable to this Coverage Form, we will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Rust;

**(d)** Corrosion; or

**(e)** Mechanical breakdown.

**(4)** The most we will pay for loss or damage in any one "occurrence" is the Limit Of Insurance for Outdoor Signs Away From Premises shown in the Declarations.

**m. Transit**

**(1)** We pay for direct physical loss of or damage to Covered Property which has been purchased by you while it is in the course of transit on or in "any one carrier" if a written contract requires you to be responsible for the Covered Property while in transit for delivery to you.

**(2)** We pay for direct physical loss of or damage to Covered Property which has been sold by you and while it is in transit on or in "any one carrier" if a written contract requires you to be responsible for the Covered Property while in transit for delivery to the purchaser.

**(3)** We pay for loss caused by a covered peril to outgoing shipments of Covered Property that have been rejected by the purchaser, including shipments that are not deliverable. We cover rejected shipments while:

**(a)** In due course of transit back to you; or

**(b)** Awaiting return shipment to you.

This coverage will end ten days after delivery has been attempted or made to the purchaser unless the Covered Property is in due course of transit back to you.

**(4)** As respects this Optional Coverage, Paragraph **C.1.d.** is deleted.

**B. Covered Causes Of Loss**

Direct Physical Loss unless the loss is

**1.** Excluded in Paragraph **C.3. Exclusions**; or

**2.** Limited in Paragraph **C.2. Limitations**.

**C. Property Not Covered, Limitations, And Exclusions**

**1. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, "unmanned aircraft", automobiles, motortrucks and other vehicles subject to motor vehicle or Federal Aviation Administration (FAA) registration except:

**(1)** As provided in the Coverage Extension – Non-owned Detached Trailers; and

**(2)** "Unmanned aircraft" up to 55 pounds, and on the described "premises".

**b.** "Money" or "securities" except as provided in:

**(1)** Additional Coverages;

**(2)** Optional Coverage – Money And Securities;

**(3)** Optional Coverage – Employee Dishonesty; or

**(4)** Optional Coverage – Extortion.

**c.** Contraband or property in the course of illegal transportation or trade;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**d.** Your Business Personal Property while airborne or waterborne;

**e.** Numismatic or philatelic objects or collections;

**f.** Your Business Personal Property that is jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals;

**g.** Land (including land on which the property is located), water, growing crops, harvested crops (while located outside of buildings or other structures), or lawns (other than lawns which are part of a vegetated roof);

**h.** Animals or fish unless owned by you and then only as "perishable stock" while inside a building;

**i.** Watercraft (including motors, equipment and accessories);

**j.** Exterior building glass except as provided in the Additional Coverage - Exterior Building Glass;

**k.** The following property, except as provided under **A.3.f.** Coverage Extensions – Outdoor Property:

**(1)** Bulkheads, pilings, piers, wharves or docks including permanently attached coverings;

**(2)** Canopies;

**(3)** Decks that are not permanently attached to the building;

**(4)** Flag poles (including their attachments or accessories);

**(5)** Lighting and light poles that are not permanently attached to the building (including their attachments or accessories);

**(6)** Outdoor fences;

**(7)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers except as provided in Paragraphs **A.1.a.(3)**, **A.1.b.(3)**, or **A.1.c.(3)**;

**(8)** Patios, bridges, roadways, parking areas, walks, patios, or other concrete, asphalt or paved surfaces;

**(9)** Retaining walls;

**(10)** Trees, shrubs, or plants (other than trees, shrubs or plants, which are part of a vegetated roof).

**l.** Accounts, bills, food stamps, other evidence of debt, accounts receivable or "valuable papers and records", except as otherwise provided in this Coverage Form;

**m.** Your Business Personal Property in apartments or rooms or in common areas furnished by you as landlord unless a specific amount of insurance is shown for such items in the Declarations;

**n.** Your Business Personal Property that is not regularly used in your "operations" on an ongoing basis;

**o.** The value of improvements, alterations or repairs (including labor, materials and supplies) being performed by you or any contractor or subcontractor. This includes existing real property that will be demolished or permanently removed in the course of making the improvements, alterations, or repairs;

**p.** Property that is covered under this or any other insurance policy in which it is more specifically described (whether you can collect on it or not) except for the excess of the amount due (whether you can collect it or not) from that other insurance;

**q.** Fuel or lubricant pumps, attachments, and any connected hoses or piping above ground, unless a specific amount of insurance is shown for such item(s) in the Declarations;

**r.** Underground pipes, flues or "drains", unless a specific amount of insurance is shown for such item(s) in the Declarations;

**s.** "Fine arts" except as provided in the Optional Coverage – Fine Arts;

**t.** "Fine arts owned by others" except as provided in the Optional Coverage – Fine Arts Owned By Others;

**u.** Flag poles (including their attachments or accessories) unless a specific amount of insurance is shown for such item(s) in the Declarations;

**v.** Underground storage tanks;

**w.** Fuel or lubricants contained inside underground storage tanks.

**x.** "Brand Loss"

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**y.** "Cyber Extortion Expenses"

**z.** "Cyber Extortion Monies"

**aa.** "Digital Assets"

**bb.** "Special Expenses"

**2. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage – Money And Securities or Optional Coverage – Transit.

**(2)** Property that has been transferred to a person or to a place outside the described "premises" on the basis of unauthorized instructions. This limitation does not apply to the Additional Coverage – Computer Fraud And Funds Transfer Fraud.

**(3)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause Of Loss to its roof or walls through which the rain, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(4)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for any loss of Business Income caused by direct physical loss of or damage to "electronic media and records" after the longer of:

**(1)** 60 consecutive days from the date of direct physical loss or damage; or

**(2)** The period, beginning with the date of direct physical loss or damage necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described "premises" due to loss or damage caused by the same "occurrence".

**Example #1**

A Covered Cause Of Loss damages a "computer" on June 1. It takes until September 1 to replace the "computer" and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2- October 1 is not covered.

**Example #2**

A Covered Cause Of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

**c.** We will not pay for loss of or damage to Your Business Personal Property that is Covered Property consisting of animals or fish unless caused by the "specified causes of loss".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**3. Exclusions**

**a.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**(1) Ordinance Or Law**

**(a)** The enforcement of or compliance with any ordinance or law:

**(i)** Regulating the construction, use or repair of any property; or

**(ii)** Requiring the tearing down of any property, including the cost of removing its debris.

**(b)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(i)** An ordinance or law that is enforced even if the property has not been damaged; or

**(ii)** The increased costs incurred or the cost to reconstruct to comply with an ordinance or law in the course of construction, repair, "renovation", "remodeling" or demolition of property or removal of its debris following a physical loss to that property.

**(2) Earth Movement**

**(a) Earthquake**, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(b) Landslide**, including any earth sinking, rising or shifting related to such event;

**(c) Mine subsidence**, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(d) Earth sinking** (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of the foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(a)** through **(d)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(e) Volcanic eruption, explosion or effusion**. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(i)** Airborne volcanic blast or airborne shock waves;

**(ii)** Ash, dust or particulate matter; or

**(iii)** Lava flow.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

An earth movement, as described in Paragraphs **(a)** through **(e)** above that occurs within any 168-hour period will constitute a single "occurrence". The expiration of this Policy will not reduce the 168-hour period.

This exclusion applies regardless of whether any of the above, in paragraphs **(a)** through **(e)** is caused by an act of nature or is otherwise caused.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3) Governmental Action**

**(a)** Seizure or destruction of property by order of governmental authority.

**(b)** But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

**(4) Nuclear Hazard**

**(a)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**(b)** But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**(5) Utility Services**

**(a)** The failure of power, communication, water or other utility service supplied to the described "premises", however caused, if the failure:

**(i)** Originates away from the described "premises"; or

**(ii)** Originates at the described "premises", but only if such failure involves equipment used to supply the utility service to the described "premises" from a source away from the described "premises".

**(b)** Failure of any utility service includes lack of sufficient capacity and reduction in supply.

**(c)** But if the failure of the utility service results in a Covered Cause Of Loss, we will pay for the loss or damage caused by that Covered Cause Of Loss.

**(d)** This exclusion does not apply to the extent that coverage is provided under the Optional Coverage - Utility Services – Time Element.

**(6) War And Military Action**

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(7) Water**

**(a)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(b)** Mudslide or mudflow;

**(c)** Water that backs up or overflows or is otherwise discharged from a "sewer", "drain" or sump pump or related equipment except as provided in the Additional Coverage – "Sewer" Back Up;

**(d)** Water under the ground surface pressing on, or flowing or seeping through:

**(i)** Foundations, walls, floors or paved surfaces;

**(ii)** Basements, whether paved or not;

**(iii)** Doors, windows or other openings;

**(e)** Material carried or otherwise moved by any of the water, mudslide or mudflow referred to in Paragraph **(a)** through **(d)**; or

**(f)** Water includes continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

This exclusion applies whether any of the above, in Paragraphs **(a)** through **(f)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water. But if any of the above, in Paragraphs **(a)** through **(f)**, results in fire or sprinkler leakage, we will pay for the loss or damage caused by that fire or sprinkler leakage.

**(8) Fungi, Wet Rot And Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(a)** When "fungi", wet rot or dry rot result from fire or lightning; or

**(b)** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For Fungi, Wet Rot And Dry Rot, with respect to loss other than fire or lightning.

**(9) Loss Due To Virus Or Bacteria**

We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

**(a)** This exclusion does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage from "fungi", wet rot or dry rot is addressed in Paragraph **C.3.a.(8)**. Fungi, Wet Rot And Dry Rot.

**(b)** With respect to any loss or damage subject to this exclusion, this exclusion supersedes any exclusion relating to "pollutants".

**(c)** The terms of this exclusion, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under the Businessowners Property Coverage Form.

**(10) Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(a)** Electrical or electronic wire, device, appliance, system or network; or

**(b)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

This exclusion does not apply to the extent that coverage is provided under the Additional Coverage – Equipment Breakdown Protection Coverage.

**(11)** Cyber Protection

**(a)** We will not pay for loss due to any of the following, except to the extent that coverage may be provided under the Cyber Protection Form BL EC 06:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(i)** Loss of "Digital Assets"

**(ii)** Cyber Extortion

**(iii)** Cyber Terrorism

**(iv)** "Brand Loss"

**b.** We will not pay for loss or damage caused by or resulting from any of the following:

**(1) Consequential Losses**

Delay, loss of use or loss of market.

**(2) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial "operations".

**(3) Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except a sprinkler system) caused by or resulting from freezing, unless:

**(a)** You do your best to maintain heat in the entire building or structure; or

**(b)** You drain the equipment and shut off the supply if the heat is not maintained.

**(4) Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", executive officers, "managers", "employees", directors, trustees, an "authorized representative" of either you or anyone else with an interest in the property or anyone to whom you entrust the property for any purpose:

**(a)** Acting alone or in collusion with others;

**(b)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your "employees"; but theft by "employees" is not covered.

With respect to the Coverage Extensions – Valuable Papers And Records and Accounts Receivable, this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Optional Coverage – Employee Dishonesty.

**(5) False Pretense**

Voluntary parting with any property by you, your "authorized representative" or any other person or entity to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(6) Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**(7) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(a)** or **(b)** above.

But if collapse results in a Covered Cause Of Loss at the described "premises", we will pay for the loss or damage caused by that Covered Cause Of Loss.

This Exclusion, **(7)** does not apply:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 51 of 164

Illinois Casualty Company 07/05/2022

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**(8) Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, "premises", site or location.

**(9) Failure to Mitigate**

Failure by you or your "authorized representative" to use all reasonable means to save and preserve Covered Property from further damage at and after the time of loss or damage.

**(10) Failure To Maintain**

Failure by you or your "authorized representative" to adequately, correctly and completely maintain Covered Property.

**(11) Mechanical Breakdown**

Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply to the extent that coverage is provided under the Additional Coverage – Equipment Breakdown Protection Coverage.

**(12) Other Types Of Loss**

**(a)** Wear and tear;

**(b)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(c)** Smog;

**(d)** Settling, cracking, shrinkage or expansion;

**(e)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(f)** The following causes of loss to personal property, including "fine arts" and "fine arts owned by others":

**(i)** Dampness or dryness of atmosphere;

**(ii)** Changing in or extremes of temperature; or

**(iii)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(a)** through **(f)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**(13) Errors Or Omissions**

Errors or omissions in:

**(a)** Programming, processing or storing data, as described under "electronic media and records" or in any "computer" operations; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(b)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**(14) Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification, or repair of your "computer" system including "electronic media and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**(15) Magnetic Injury**

Magnetic injury, or erasure of "electronic media and records".

**(16) Computer Virus**

A virus, malicious code or similar instruction introduced into or enacted on a "computer" system (including "electronic media and records") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

**(17) Intentional Act**

**(a)** We will not pay for loss or damage arising out of any act committed:

**(i)** By or at the direction of any insured; and

**(ii)** With the intent to cause a loss.

**(b)** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**(i)** The loss arose out of a pattern of criminal domestic violence; and

**(ii)** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**(c)** If we pay a claim pursuant to Paragraph **(b)** above, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**c.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs (1) through (3). But if an excluded cause of loss that is listed in Paragraphs (1) through (3) results in a Covered Cause Of Loss, we will pay for the loss or damage caused by that Covered Cause Of Loss.

**(1) Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **C.3.a**. above to produce the loss or damage.

**(2) Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(3) Faulty, Inadequate Or Defective Work**

**(a)** Faulty, inadequate or defective:

**(b)** Planning, zoning, development, surveying, siting;

**(c)** Design, specification, workmanship, repair, construction, "renovation", "remodeling", grading, compaction; or

**(d)** Materials used in repair, construction, "renovation" or "remodeling";

of part or all of any property on or off the described "premises".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**d. Business Income And Extra Expense Exclusion**

   **(1)** We will not pay for:

      **(a)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

         **(i)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

         **(ii)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage;

      **(b)** Any other consequential loss.

   **(2)** With respect to this exclusion, suspension means:

      **(a)** The partial slowdown or complete cessation of your business activities; and

      **(b)** That a part or all of the described "premises" is rendered untenantable, if coverage for Business Income applies.

**e. Accounts Receivable Exclusion**

   **(1)** The following additional exclusion applies to the Accounts Receivable Coverage Extension:

      **(a)** We will not pay for:

         **(i)** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

         **(ii)** This exclusion applies only to the extent of the wrongful giving, taking or withholding;

         **(iii)** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions;

         **(iv)** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**f. Loss Or Damage To Products**

   **(1)** We will not pay for loss or damage to any merchandise, goods, or other product caused by or resulting from any error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance, or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause Of Loss, we will pay for the loss or damage caused by that Covered Cause Of Loss.

**D. Limits Of Insurance**

**1. The Most We Will Pay**

   **a.** The most we will pay for loss or damage in any one "occurrence" is the applicable Limit Of Insurance shown in the Declarations or in the schedule of an endorsement attached to this Coverage Form.

**2. Stated Amounts For Coverage Extensions And Additional Coverages**

   **a.** The amounts of insurance stated for Coverage Extensions and for the following Additional Coverages apply in accordance with the terms of such coverages and are in addition the Limit(s) Of Insurance shown in the Declarations for Covered Property:

      **(1)** Fire Department Service Charge

      **(2)** Business Income

      **(3)** Extra Expense

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 54 of 164
Illinois Casualty Company 07/05/2022

(4) Pollutant Clean Up And Removal

(5) Civil Authority

(6) Money Orders And "Counterfeit Money"

(7) Forgery or Alteration

(8) Cost To Reconstruct In Compliance With An Ordinance Or Law

(9) Claim Data Expenses

(10) Credit Card Forgery

(11) Credit Card Slip Theft, Disappearance Or Destruction

(12) Customer Expense Reimbursement

(13) Personal Effects Of Customers

(14) Unscheduled Outbuildings

**3. Building Limit – Automatic Increase**

**a.** The Limit Of Insurance for Buildings, shown in the Declarations as subject to replacement cost or "actual cash value" will automatically increase by the annual percentage shown in the Declarations.

**b. The amount of increase is calculated as follows:**

**(1)** Multiply the Building Limit Of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit Of Insurance by;

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example 8% is .08), times;

**(3)** Multiply the number calculated in accordance with **(b)(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Limit Of Insurance, divided by 365.

**Example**

If: The applicable Limit Of Insurance is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146/365 = $3,200

**4. Your Business Personal Property Limit – Seasonal Increase**

**a.** Subject to Paragraph 4.b., the Limit Of Insurance for Your Business Personal Property is automatically increased by:

**(1)** The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations.

to provide for seasonal variances.

**b.** The increase described in Paragraph 4.a. above will apply only if the Limit Of Insurance shown for Your Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**E. Deductibles**

**1. General Deductible**

**a.** We will not pay for loss or damage in any one "occurrence" until the amount of loss or damage exceeds the Deductible shown in the Declarations or in an endorsement attached to this Coverage Form. We will then pay the amount of the loss or damage in excess of the Deductible up to the applicable Limit Of Insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**2. Additional Coverages, Coverage Extensions And Optional Coverages Deductible**

**a.** Regarding Additional Coverages, Coverage Extensions, and Optional Coverages, the Deductible will be as shown in Paragraphs (1). and (2) below unless otherwise stated in the Declarations, this Coverage Form, or any endorsement attached hereto.

**(1)** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage for Exterior Building Glass and under all of the following Additional Coverages and Optional Coverages in any one "occurrence" is the Optional Coverage/Exterior Building Glass Deductible shown in the Declarations:

**(a)** Forgery Or Alteration;

**(b)** Computer Fraud And Funds Transfer Fraud;

**(c)** Credit Card Forgery;

**(d)** Credit Card Slip Theft, Disappearance, Or Destruction;

**(e)** Your Business Personal Property Off Premises;

**(f)** Customer Expense Reimbursement;

**(g)** Outdoor Signs/Awnings/Tents;

**(h)** Money And Securities;

**(i)** Employee Dishonesty;

**(j)** Spoilage;

**(k)** Fine Arts;

**(l)** Fine Arts Owned By Others;

**(m)** Brands And Labels;

**(n)** Extortion;

**(o)** Transit.

The Optional Coverage/Exterior Building Glass Deductible will not increase the Property Deductible shown in the Declarations. The Optional Coverage/Exterior Building Glass Deductible will be used to help satisfy the requirements of the Property Deductible shown in the Declarations.

**(2)** No deductible applies to the following:

**(a)** Optional Coverages:

**(i)** Food Contamination;

**(ii)** Business Income From Dependent Properties; or

**(iii)** Utility Services—Time Element.

**(b)** Additional Coverages:

**(i)** Fire Department Service Charge;

**(ii)** Business Income;

**(iii)** Extra Expense;

**(iv)** Civil Authority; or

**(v)** Fire Extinguisher Systems Recharge Expense.

**(c)** Coverage Extensions:

**(i)** Business Personal Property In The Open

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 56 of 164

Illinois Casualty Company 07/05/2022

**F. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

**a.** If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of the written demand for appraisal. The two appraisers will select an umpire. If they cannot agree upon an umpire within 15 days, we or you may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. The umpire shall make an award within 30 days after the umpire receives the appraisers' submissions of their differences. A decision agreed to by any two will be binding. Each party will:

**(1)** Pay its chosen appraiser; and

**(2)** Bear the other expenses of the appraisal and umpire equally.

**b.** If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

We have no duty to pay nor any duty to defend unless you have fully complied with the conditions outlined below.

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police immediately if a law may have been broken;

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved;

**(3)** As soon as possible, give us a description of how, when, and where the loss or damage occurred;

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase any Limit Of Insurance.

However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause Of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination; do not dispose of any such property until instructed by us that disposal is permitted.

**(5)** At our request, give us complete, detailed inventories of the damaged and undamaged property. Include quantities, dates of purchase, costs, values and amount of loss claimed;

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. You must produce records, including but not limited to, tax returns and bank microfilms (including endorsements) of all cancelled checks.

Also permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records;

**(7)** Send us a signed, sworn proof of loss containing the information and attached supplemental documentation we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms;

**(8)** Cooperate with us in the investigation or settlement of the claim;

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine you or your "authorized representative" under oath, while not in the presence of any other person and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. At our option and expense, any examination under oath may be visually or audibly recorded as well as being recorded by stenographic record. If a written transcript is prepared of the testimony, then, at our request, you or your "authorized representative's" answers under oath must be signed under penalty of perjury.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**c.** Notice given by or on behalf of the insured to any of our authorized agents, with particulars sufficient to identify the insured, shall be considered to be notice to us. Notice can be by any means of communication.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this Coverage Form:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below;

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss with attached supplemental documentation we request;

**c.** We will not pay you more than your financial interest in any Covered Property;

**d.** Except as provided in Paragraphs (2) through (8) below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If at the time of loss, the Limit Of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, as determined by us, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit Of Insurance that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same "premises", the lost or damaged property with other property;

**(aa)** Of comparable material and quality; and

**(bb)** Used for the same occupancy(ies) and purpose(s); and

**(cc)** Capable of performing the same functions; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property;

If a building is rebuilt at a new "premises", the cost is limited to the cost which would have been incurred had the building been built at the original "premises";

**(b)** If, at the time of loss, the Limit Of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, as determined by us, we will pay the greater of the following amounts, but not more than the Limit Of Insurance that applies to the property:

**(i)** The "actual cash value" of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit Of Insurance to 80% of the full replacement cost of the property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000/$80,000 = .875

.875 x $25,000 = $21,875.

**(c)** You may make a claim for loss or damage covered by this insurance on an "actual cash value" basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an "actual cash value" basis, you may still make a claim on replacement cost basis if you notify us in writing of your intent to do so within 180 days after the date of loss or damage;

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage; and

**(iii)** You reported the loss or damage as required in Paragraph **F.3.**

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the "Actual Cash Value" option applies, as shown in the Declarations, Paragraph **d.(1)** above does not apply to that Covered Property. Instead, we will determine the value of that Covered Property at "actual cash value";

**(3)** The following property is always valued at time of loss at "actual cash value":

**(a)** Your Business Personal Property as described in Paragraph **A.1.c.(3)** except as provided in **(7)** below;

However, if an item(s) of Your Business Personal Property is subject at time of loss to a contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the applicable Limit Of Insurance.

**(b)** Household contents, except personal property in apartments or rooms furnished by you as landlord, that qualify as Covered Property;

**(c)** Outdoor tents;

**(d)** Roof surfacing, if the loss or damage to roof surfacing is caused by windstorm or hail and at the time of loss the roof surfacing has reached or exceeds 50% of the manufacturer's estimated life expectancy for roof surfacing of like kind and quality;

**(e)** "Mobile Equipment".

**(4)** Glass at the cost of replacement with safety glazing material if required by law;

**(5)** Tenants' Improvements And Betterments at:

**(a)** Replacement cost if you make repairs promptly;

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the written lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the written lease;

If your written lease contains a written renewal option, the expiration of the written renewal option period will replace the expiration of the written lease in this procedure;

**(c)** Nothing if others pay for repairs or replacement;

**(6)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement, including the cost of data entry, re-programming, "computer" consultation services and the media on which the data or programs reside. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type;

**(7)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered;

**(c)** "Fine Arts" at the value indicated on the appraisal (from a qualified, disinterested appraiser) on file with us except as provided in **(i)**, **(ii)**, and **(iii)** below:

**(i)** Pair Or Set

The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set;

**(ii)** Loss To Parts

The value of a lost or damaged part of an item that consists of several parts when it is complete, is based on the value of only the lost or damaged part or the cost to repair or replace it;

**(iii)** "Fine Arts" for which there is no appraisal on file with us will be valued at the least of the following amounts, up to a maximum of $750 for any one item:

**(aa)** The actual cash value of that property at the time of loss;

**(bb)** The cost of reasonably restoring that property to its condition immediately before loss;

**(cc)** The cost of replacing that property with substantially identical property.

**(d)** "Fine Arts Owned By Others" will be valued at the least of the following, up to a maximum of $750 for any one item for which there is no appraisal on file with us:

**(i)** Consignment value of selling price minus commission; or

**(ii)** The cost of replacing that property with substantially identical property; or

**(iii)** The cost of reasonably restoring that property to its condition immediately before loss; or

**(iv)** The value indicated on the appraisal (from a qualified, disinterested appraiser) on file with us except as provided in **(aa)** and **(bb)** below:

**(aa)** Pair Or Set

The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set;

**(bb)** Loss To Parts

The value of a lost or damaged part of an item that consists of several parts when it is complete, is based on the value of only the lost or damaged part or the cost to repair or replace it;



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(8)** Applicable only to Accounts Receivable:

    **(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

        **(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

        **(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month;

    **(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

        **(i)** The amount of the accounts for which there is no loss or damage;

        **(ii)** The amount of the accounts that you are able to re-establish or collect;

        **(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

        **(iv)** All unearned interest and service charges.

**(9)** Applicable only to Transit:

    **(a)** The value of Covered Property will be based on the invoice amount plus accrued costs, pre-paid charges, and charges since shipment.

    **(b)** In the absence of an invoice, the value of Covered Property will be based on the "actual cash value" at the time of loss.

If the Covered Property has been sold and is in transit for delivery to the purchaser, the most we will pay is your net selling price after all allowances and discounts.

**e.** Our payment for loss of or damage to Your Business Personal Property as described in Paragraph A.1.e.(3), Personal Effects Of Customers, or "Fine Arts Owned By Others" will only be for the account of the owners of the property. We may adjust losses with the owners of such lost or damaged property. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest(s) in the Covered Property;

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense;

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss and all supplemental documentation we request to investigate the loss or damage, provided you have complied with all of the terms of this Coverage Form or any endorsement attached hereto, and:

    **(1)** We have reached agreement with you on the amount of loss; or

    **(2)** An appraisal award has been made.

**h.** In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner(s) of the adjoining building. However, if you elect to repair or replace your building and the owner(s) of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits Of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this Coverage Form.

**6.   Other Insurance**

**a.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.

But we will not pay more than the applicable Limit of Insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 61 of 164

Illinois Casualty Company 07/05/2022

**7. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits Of Insurance.

**8. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described "premises" or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights, including, but not limited to, execution of assignment, loan receipt, or subrogation receipt (at our election) to us at our request, and must do nothing before or after loss to impair them except you may waive your rights against another party in writing, including the usual bills of lading or shipping receipts limiting the liability of common carriers or contract carriers:

**a.** Prior to a loss to your Covered Property;

**b.** After a loss to your Covered Property only if, at time of loss, that party is a business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you.

This will not restrict your insurance.

Our rights do not apply against any person or organization insured under this or any other Policy we issue with respect to the same "occurrence", provided the "occurrence" was not intentionally caused by such insureds.

**10. Vacancy**

**a.** Description Of Terms

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this Coverage Form is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary business activities;

**(b)** When this Coverage Form is issued to the owner, contract buyer or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary business activities; and/or

**(ii)** Used by the building owner, contract buyer or general lessee to conduct customary business activities.

**(2)** Buildings under construction, "renovation", or "remodeling" are not considered vacant.

**b.** Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes Of Loss:

**(a)** Vandalism including any fire which is caused directly or indirectly or is in any manner a result of the vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft;

**(2)** With respect to Covered Causes Of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**G. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for direct physical loss of or damage to your Covered Property at the "premises" described in the Declarations caused by or resulting from any Covered Cause Of Loss to you and each of your mortgageholders shown in the Declarations in their order of precedence, as interests may appear.

**c.** Your mortgageholder has the right to receive loss payment even if your mortgageholder has started foreclosure or similar action.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form or any endorsement attached hereto, your mortgageholder will still have the right to receive loss payment if your mortgageholder:

**(1)** Pays any premium due under this Policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss and all supplemental documentation requested by us within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to your mortgageholder.

All of the terms of this Policy will then apply directly to your mortgageholder.

**e.** If we pay your mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form or conditions or endorsements attached hereto:

**(1)** Your mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** Your mortgageholder's right to recover the full amount of your mortgageholder's claim will not be impaired.

At our option, we may pay to your mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us; and you will pay your remaining mortgage debt to us.

**f.** If we cancel this Policy, we will give written notice to your mortgageholder at least:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this Policy, we will give written notice to your mortgageholder at least 10 days before the expiration date of this Policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having care, custody or control of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

**a.** We cover loss or damage commencing:

**(1)** During the Policy Period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**H. Property Definitions**

**1. Words With Special Meaning**

**a.** "Actual cash value" is defined as the lesser of:

**(1)** Replacement cost of an identical or comparable item of property minus physical depreciation for time in use as well as taking into account all other relevant factors affecting present value, including, but not limited to, estimated life expectancy, obsolescence, deterioration, excessive wear, lack of maintenance; or

**(2)** A fair or reasonable price that can be obtained for the property in the ordinary course of business, not under duress or exigency.

**b.** "Any one carrier" means

**(1)** Any one truck, trailer, semitrailer, or combination of these;

**(2)** Any one aircraft; or

**(3)** Any one railroad car;

operated by a carrier for hire including the U.S. Postal System.

**c.** "Authorized Representative" means:

**(1)** For an entity that is a sole proprietor, the sole proprietor and his or her "spouse";

**(2)** For an entity that is a partnership, the partners and their "spouses";

**(3)** For an entity that is a limited liability company, the "members" and "managers";

**(4)** For an entity that is a trust, the trust and its trustees.

**(5)** For an entity other than those listed in Paragraphs **(1)**, **(2)**, and **(3)** above, its officers, stockholders and directors;

**(6)** For all types of entities, their "employees".

**d.** "Computer" means:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(1)** Programmable electronic equipment that is used to store, retrieve and process data; and

**(2)** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

**(3)** "Computer" includes those used to operate production type machinery or equipment.

**e.** "Computer hardware" means the physical components of any computer system including CPUs, memory, storage devices, storage media, and input/output devices and other peripheral devices and components, including, but not limited to, cable, connectors, fiber optics, wire, power supply units, keyboards, display monitors, and audio speakers.

**f.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**g.** "Dependent Property" means a business owned by others which you depend on to:

**(1)** Deliver materials or services to you or others for your account. But services does not mean water, communication or power supply services; or

**(2)** Accept your products or services; or

**(3)** Attract customers to your business.

The dependent property must be located in the "coverage territory" of this Coverage Form.

A road, bridge, tunnel, waterway, airfield, pipeline or other similar area or structure is not a dependent property.

**h.** "Cyber extortion expenses" mean all costs you incur as a direct result of a "cyber extortion threat", other than "cyber extortion monies".

**i.** "Cyber extortion monies" mean any funds or property which you pay to a person(s) or entity(ies) reasonable believed to be responsible for a "cyber extortion threat" for the purpose of terminating such "cyber extortion threat".

**j.** "Cyber extortion threat" means a credible threat or series of related credible threats, included, but not limited to, a demand for "cyber extortion monies" directed at you to:

**(1)** Release, divulge, disseminate, destroy or use the confidential information of a third party taken from you as a result of "unauthorized access" to or "unauthorized use" of and "insured computer system";

**(2)** Introduce "malicious code" into an "insured computer system";

**(3)** Corrupt, damage or destroy an "insured computer system";

**(4)** Restrict or hinder access to an "insured computer system" including, but not limited to the threat of a "denial of service attack"; or

**(5)** Electronically communicate with your customers and falsely claim to be you or to be acting under your direction in order to falsely obtain personal confidential information of your customers (also known as pharming, phishing or other types of false communications).

**k.** "Denial of service attack" means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a computer system by sending an excessive volume of data to such computer system in order to prevent authorized access to such computer system.

**l.** "Digital Assets" mean "data" and "computer programs" that exist in an "insured computer system". "Digital assets do not include "computer hardware".

**m.** "Drain" means a channel or pipe carrying off surplus liquid. For the purposes of coverage under this policy, "drain" does not include gutters.

**n.** "Electronic media and records" means the following, if owned by you or licensed to you and regularly used in your business:

**(1)** Media, meaning disks, tapes, film, drums, cells or other media which are used with electronically controlled equipment;

**(2)** Data, meaning information or facts stored on media described in Paragraph a. above. Data includes "valuable papers and records" converted to data;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** "Computer" program, meaning a set of related electronic instructions which direct the operations and functions of a "computer" or a device connected to it, which enable the "computer" or device to receive, process, restore, retrieve or send data;

**(4)** Software, including systems and applications software.

**o.** "Employee" means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person:

**(a)** Who is a volunteer while performing acts coming within the scope of the usual duties of an employee; and

**(b)** Who is volunteering without compensation, salary, wage or commission;

**(3)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee" as defined in Paragraph (1) above, who is on leave; or

**(b)** To meet seasonal or short term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

**(4)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in Paragraph (3) above, excluding however, any such person while having care and custody of property outside the "premises";

**(5)** Any natural person who is:

**(a)** A trustee, executive officer, "employee", administrator or "manager", except an administrator or "manager" who is an independent contractor, of any employee benefit plan(s) insured under this Policy; and

**(b)** Your director or trustee while that person is handling "funds" or "other property" of any employee benefit plan(s) insured under this Policy; or

**(6)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

**(7)** But "employee" does not mean:

**(a)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(b)** Any "authorized representative" except while performing acts coming within the scope of the usual duties of an "employee".

**p.** "Extortion" means the surrender of property away from the "premises" as a result of a threat communicated to you to do bodily harm to you or your "authorized representative", who is, or allegedly is being held captive.

But "extortion" does not include lawful imprisonment.

**q.** "Fine arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, porcelains, collectibles, and similar property of rarity, historical value and artistic merit that is owned by you and:

**(1)** Has a replacement cost or market value in excess of $500; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) Is a one-of-a-kind object that cannot be replaced; and

(3) Is expected to increase in value over time.

**r.** "Fine arts owned by others" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, porcelains, collectibles, and similar property of rarity, historical value and artistic merit that is owned by someone other than you and:

**(1)** Has a replacement cost or market value in excess of $500; or

**(2)** Is a one-of-a-kind object that cannot be replaced; and

**(3)** Is expected to increase in value over time.

**s.** "Food contamination" means an incidence of food poisoning to one or more of your customers as a result of:

**(1)** Tainted food you purchased;

**(2)** Food which has been improperly stored, handled or prepared; or

**(3)** A communicable disease transmitted through one or more of your "employees".

**t.** "Fraudulent instruction" means:

**(1)** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**(2)** A written instruction (other than those described in Paragraph A.2.k.) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**(3)** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by your "authorized representative" but which was in fact fraudulently transmitted by someone else without your or your "authorized representative's" knowledge or consent.

**u.** "Fungi" means any type of organisms that lack chlorophyll, leaves, true stems or roots, reproduce by spores, and live by decomposing and absorbing the organic material in which they grow; including, but not limited to, mold, mushrooms, mildew, smuts, spores, rusts, yeasts, scents, or by products released by any of these organisms.

**v.** "Insured computer system" means a computer system operated by and either owned by or leased to you.

**w.** "Manager" means a person serving in an executive management capacity for a limited liability company.

**x.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**y.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**(1)** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**(2)** Vehicles maintained for use solely on or next to "premises" you own or rent;

**(3)** Vehicles that travel on crawler treads;

**(4)** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(a)** Power cranes, shovels, loaders, diggers or drills; or

**(b)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**z.** "Money" means:

**(1)** Currency, coins, food stamps, and bank notes in current use and having a face value; and

**(2)** Travelers checks, registered checks and money orders held for sale to the public.

**aa.** "Occurrence" includes multiple incidents of direct physical loss or damage which occur within a 72 hour period at any one "premises" as described in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 67 of 164

Illinois Casualty Company 07/05/2022

**bb.** "Operations" means your business activities occurring at the described "premises".

**cc.** "Period of restoration":

**(1)** Means the period of time that:

**(a)** Begins:

**(I)** Immediately after the time of direct physical loss or damage for Coverage; or

**(II)** Immediately after the time of direct physical loss or damage for Extra E

caused by or resulting from any Covered Cause Of Loss at the described "pre

**(b)** Ends on the earlier of:

**(I)** The date when the property at the described "premises" should be replaced with reasonable speed and similar quality; or

**(II)** The date when business is resumed at a new permanent location;

**(c)** Does not include any increased period required due to the enforcement of or c ordinance or law that:

**(I)** Regulates the construction, use or repair, or requires the tearing down

**(II)** Requires any insured or others to test for, monitor, clean up, rem detoxify or neutralize, or in any way respond to or assess the effects of wet or dry rot or bacteria.

**(d)** The expiration date of this Policy will not cut short the "period of restoration".

**dd.** "Perishable Stock" means property:

**(1)** Maintained under controlled temperature or humidity conditions for preservation; an

**(2)** Susceptible to loss or damage if the controlled temperature or humidity conditions c

**ee.** "Pollutants" means any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal that can be toxic or hazardous, cause irritation to animals or persons and /or caus property and the environment including smoke, vapor, soot, fumes, acids, alkalis, che Specific examples identified as pollutants include, but are not limited to, diesel, kerosene carbon monoxide and other exhaust gases, mineral spirits and other solvents, perchloroethylene (PERC), trichloroethylene (TCE), methylene choloroform and c chemicals, chlorofluorocargons, chlorinated, hydrocarbons, adhesives, pesticides, ir substances specifically listed, identified, or described by one or more of the fol Comprehensive Environmental Response, Compensation, and Liability Act (CER Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substa Registry ToxFAQs™, and/or U.S. Environmental Protection Agency EMCI Chemical Re Index.

**ff.** "Premises" means:

**(1)** If you occupy 100% of the location, your "premises" means the particular physical property as shown in the Declarations.

**(2)** If you occupy only part of the location, your "premises" means that portion of the shown on the Declarations that you rent, lease, or occupy and any area of that pl

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 68 of 164

Illinois Casualty Company 07/05/2022

**(1)** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

**(2)** Accepts materials or services from a "dependent property", which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline, or any other similar area or structure is not a "secondary dependent property".

Any property which delivers any of the following services is not a "secondary dependent property" with respect to such services:

**(1)** Water supply services;

**(2)** Wastewater removal services;

**(3)** Communication supply services; or

**(4)** Power supply services.

**jj.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money", or other property and includes:

**(1)** Tokens, tickets (including lottery tickets held for sale), revenue and postage stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**(2)** Evidence of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**kk.** "Sewer" means an artificial, usually underground, conduit for carrying off drainage water and waste matter.

**ll.** "Special Expenses" mean reasonable and necessary costs which you incur to:

**(1)** Prevent, preserve, minimize, or mitigate any further damage to "digital assets" including the reasonable and necessary fees and expenses of specialists, outside consultants, or forensic experts you retain;

**(2)** Preserve critical evidence of any criminal or malicious wrongdoing;

**(3)** Purchase replacement licenses for "computer programs" because the copy protection system and/or access control software was damaged or destroyed by a covered cause of loss or an act of cyber terrorism; or

**(4)** Notify customers of a total or partial interruption, degradation in service, or failure of an "insured computer system" resulting from a "covered cause of loss" or an act of cyber terrorism.

**mm.** "Specified Causes Of Loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

**(1)** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(a)** The cost of filling sinkholes; or

**(b)** Sinking or collapse of land into man-made underground cavities.

**(2)** Falling objects does not include loss of or damage to:

**(a)** Personal property in the open; or

**(b)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**(3)** Water damage means:

**(a)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(b)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or "sewer" pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary "sewer" system, if the breakage or cracking is caused by wear and tear.

But water damage does not included loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking.

As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **(3)(a)** or **(3)(b)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**nn.** "Spouse" means a husband or wife or a party to a civil union recognized under applicable state law.

**oo.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities":

**(1)** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**(2)** By means of written instructions (other than those described in Paragraph **A.2.k.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**pp.** "Unauthorized access" means the gaining of access to a "computer system by an unauthorized person or persons.

**qq.** "Unauthorized use" means the use of a computer system by unauthorized persons or authorized persons in an unauthorized manner.

**rr.** "Unmanned aircraft":

Means:

**(1)** Any powered aerial vehicle that:

**(a)** Does not carry a human operator on board;

**(b)** Uses aerodynamic force to provide vehicle lift;

**(c)** Can fly autonomously; or

**(d)** Can be piloted remotely.

**ss.** "Valuable papers and records" means:

**(1)** Inscribed, printed or written:

**(a)** Documents;

**(b)** Manuscripts;

**(c)** Records, including abstracts, books, deeds, drawings, films, maps or mortgages; and

**(d)** "Electronic media and records".

But "valuable papers and records" does not mean "money" or "securities".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**IN WITNESS WHEREOF**, the ILLINOIS CASUALTY COMPANY, Rock Island, Illinois has caused these presents to be signed by its officers.

ILLINOIS CASUALTY COMPANY

Secretary

President

ILLINOIS CASUALTY COMPANY

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

 Illinois Casualty Company 07/05/2022

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 71 of 164

Illinoi
Casua
Comn

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS PROPERTY COVERAGE FORM**

**SCHEDULE**

| Designated Property: Prem. No. | Bldg. No. | Description Of Covered Property | Designated Loss Payee: (Name & Address) | Designated Provision Application: (Designate Paragraph A, B, C or D) |
|---|---|---|---|---|
| 1 | 1 | Building Owner, Contract Deed Holder | Greg Payne<br>7607 Harold Ave<br>Minneapolis, MN 55427 | A |

Nothing in this endorsement increases the applicable Limit Of Insurance or changes Covered Property or Covered Causes Of Loss. We will not pay any Loss Payee more than their financial interest in your Covered Property, and we will not pay more than the applicable Limit Of Insurance on the Covered Property.

The following is added to Paragraph **F.5.** in the Businessowners Property Coverage Form as shown in the Schedule:

**A. LOSS PAYABLE CLAUSE**

For Covered Property designated in the Schedule of this endorsement in which a Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for covered loss or covered damage jointly to you and the Loss Payee, as interests may appear.

**B. LENDER'S LOSS PAYABLE CLAUSE**

1. The Loss Payee designated in the Schedule of this endorsement is a creditor (including a mortgageholder or trustee) whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgagees, deeds of trust, or security agreements.
2. For Covered Property designated in the Schedule of this endorsement in which a Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:
   a. Adjust losses with you; and
   b. Pay any claim for covered loss or covered damage to you and to each Loss Payee in their order of precedence, as interests may appear.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**c.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Policy at our request if you have failed to do so; and

**(2)** Submits a signed, sworn proof of loss and all documentation requested by us within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of the Businessowners Property Coverage Form will then apply directly to the Loss Payee.

**e.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this Policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this Policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this Policy.

**5.** We will notify the Loss Payee of changes to this Policy that result in a substantial reduction of coverage to the Covered Property in which the Loss Payee has an insurable interest.

**C. CONTRACT OF SALE CLAUSE**

**1.** The Loss Payee designated in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property designated in the Schedule of this endorsement.

**2.** For Covered Property designated in the Schedule of this endorsement in which the Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for covered loss or covered damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **F.6. Other Insurance:**

**c.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. BUILDING OWNER LOSS PAYABLE CLAUSE**

The Loss Payee designated in the Schedule of this endorsement is the owner of the Designated Property designated in the Schedule of this endorsement in which you are a tenant. For such Covered Property designated in the Schedule of this endorsement in which a Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for covered loss or covered damage jointly to you and the Loss Payee, as interests may appear.

**3.** We will adjust losses to tenants improvements and betterments with you, unless the written lease provides otherwise.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



Illinois Casualty Company 07/05/2022

POLICY NUMBER [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS PROPERTY COVERAGE FORM**

**SCHEDULE**

| Designated Property: Prem. No. | Bldg. No. | Description Of Covered Property | Designated Loss Payee: (Name & Address) | Designated Provision Application: (Designate Paragraph A, B, C or D) |
|---|---|---|---|---|
| 1 | 1 | Building Owner, Contract Deed Holder | Jim Gillespie<br>3763 Sterling Dr<br>Saint Cloud, MN 56301 | A |

Nothing in this endorsement increases the applicable Limit Of Insurance or changes Covered Property or Covered Causes Of Loss. We will not pay any Loss Payee more than their financial interest in your Covered Property, and we will not pay more than the applicable Limit Of Insurance on the Covered Property.

The following is added to Paragraph **F.5.** in the Businessowners Property Coverage Form as shown in the Schedule:

**A. LOSS PAYABLE CLAUSE**

For Covered Property designated in the Schedule of this endorsement in which a Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for covered loss or covered damage jointly to you and the Loss Payee, as interests may appear.

**B. LENDER'S LOSS PAYABLE CLAUSE**

**1.** The Loss Payee designated in the Schedule of this endorsement is a creditor (including a mortgageholder or trustee) whose interest in that Covered Property is established by such written instruments as:

- **a.** Warehouse receipts;
- **b.** A contract for deed;
- **c.** Bills of lading;
- **d.** Financing statements; or
- **e.** Mortgagees, deeds of trust, or security agreements.

**2.** For Covered Property designated in the Schedule of this endorsement in which a Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

- **a.** Adjust losses with you; and
- **b.** Pay any claim for covered loss or covered damage to you and to each Loss Payee in their order of precedence, as interests may appear.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 75 of 164

Illinois Casualty Company 07/05/2022

c. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

(1) Pays any premium due under this Policy at our request if you have failed to do so; and

(2) Submits a signed, sworn proof of loss and all documentation requested by us within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of the Businessowners Property Coverage Form will then apply directly to the Loss Payee.

e. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this Policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we do not renew this Policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this Policy.

5. We will notify the Loss Payee of changes to this Policy that result in a substantial reduction of coverage to the Covered Property in which the Loss Payee has an insurable interest.

## C. CONTRACT OF SALE CLAUSE

1. The Loss Payee designated in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property designated in the Schedule of this endorsement.

2. For Covered Property designated in the Schedule of this endorsement in which the Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

a. Adjust losses with you; and

b. Pay any claim for covered loss or covered damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to Paragraph **F.6. Other Insurance:**

c. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

## D. BUILDING OWNER LOSS PAYABLE CLAUSE

The Loss Payee designated in the Schedule of this endorsement is the owner of the Designated Property designated in the Schedule of this endorsement in which you are a tenant. For such Covered Property designated in the Schedule of this endorsement in which a Loss Payee designated in the Schedule of this endorsement has an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for covered loss or covered damage jointly to you and the Loss Payee, as interests may appear.

3. We will adjust losses to tenants improvements and betterments with you, unless the written lease provides otherwise.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 76 of 164

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 77 of 164

Illinois Casualty Company 07/05/2022

POLICY NUMBER:  EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – AS REQUIRED IN WRITTEN AGREEMENT WITH YOU OR BY ORDINANCE

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**A.** The following are added to Section **C. Who Is An Insured** in the Businessowners Liability Coverage Form:

**2.** Each of the following is also an insured:

**e.** Any person or organization you are required by a written agreement to name as an additional insured.

**(1)** Such person is an insured, but only with respect to liability caused in whole or in part by your acts or omissions, or the acts or omissions of those acting on your behalf in connection with the written agreement.

The written agreement must be:

**(a)** Currently in effect or become effective during the term of this policy; and

**(b)** Executed prior to the "bodily injury", "property damage", or "personal and advertising injury".

**f.** With respect to the insurance afforded to the insured identified herein, this insurance does not apply:

**(1)** To structural alterations, new construction, or demolition operations performed by or for such insured; or

**(2)** After the expiration or termination of the written agreement.

**3. State Or Governmental Agency Or Subdivision Or Political Subdivision**

Any state or political subdivision if:

**a.** The state or governmental agency or subdivision or political subdivision has issued a permit in connection with "premises" you own, rent, or control and to which this insurance applies; and

**b.** The state or governmental agency or subdivision or political subdivision requires in writing or by statute, ordinance or law to be included as an additional insured.

The state or governmental agency or subdivision or political subdivision is an insured only as respects:

**(1)** The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist-away openings, sidewalks, sidewalk vaults, street banners, or decoration and similar exposures;

**(2)** The construction, erection, or removal of elevators; or

**(3)** The ownership, maintenance, or use of any elevators covered by this insurance.

With respect to the insurance afforded to the insured identified herein, this insurance does not apply to any "occurrence" which takes place after the permit is terminated, revoked or has expired.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**B.** The following is added to Section **D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance:**

**9.** The Limits Of Insurance for the person or organization included as an insured under this endorsement are those specified in the written contract or written agreement with you, if applicable, or in this Coverage Form, whichever is less. These Limits Of Insurance are inclusive of and are not in addition to the Limits Of Insurance shown in the Declarations.

**C.** The coverage afforded under this endorsement is excess over:

**1.** Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless a written agreement specifically requires that this insurance be either primary or primary and non-contributing. Where required by written agreement, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and non-contributing with this insurance.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 79 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS PROPERTY COVERAGE FORM**

## SCHEDULE

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable * |
|---|---|---|
| 1 | 1 | P-3 |
| 1 | 1 | P-7 |

*** Describe any "P-9":**

**A.** The following Paragraph is added to Section **G. Property General Conditions** in the Businessowners Property Coverage Form:

**5. Protective Safeguards**

**a.** As a condition of this insurance, you are required to maintain the protective devices or services designated in the Schedule of this endorsement.

**b.** The protective safeguards to which this endorsement applies are identified and designated by the following symbols:

**(1) "P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**(a)** Any automatic fire protective or extinguishing system, including connected:

**(i)** Sprinklers and discharge nozzles;

**(ii)** Ducts, pipes, valves and fittings;

**(iii)** Tanks, their component parts and supports; and

**(iv)** Pumps and private fire protection mains.

**(b)** When supplied from an automatic fire protective system:

**(i)** Non-automatic fire protective systems; and

**(ii)** Hydrants, standpipes and outlets.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

(2) **"P-2" Automatic Fire Alarm,** protecting the entire building or, if you are a tenant, the entire portion of the building you occupy, that is:

(a) Connected to a central station; or

(b) Reporting to a public or private fire alarm station.

(3) **"P-3" Automatic Fire Suppression System** means:

(a) A pre-engineered wet or dry chemical fire extinguishing system, including connected:

(i) Tanks to contain the extinguishing agent;

(ii) Tanks to contain the gas that propels the extinguishing agent;

(iii) Manual and/or automatic control hardware, including detectors (fusible links) and fuel shutoff valves;

(iv) Hoses, piping, fittings, and tubing;

(v) Nozzles to disperse the agent over any cooking area in which grease laden vapors may be present; or

(b) A pre-engineered water-based fire extinguishing system, including connected:

(i) Sprinklers and discharge nozzles;

(ii) Ducts, pipes, valves and fittings;

(iii) Tanks, their component parts and supports; and

(iv) Pumps and private fire protection mains;

Serviced by a qualified independent contractor at an interval as described in the applicable National Fire Protection Association [NFPA] Standard.

(4) **"P-4" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

(5) **"P-5" Service Contract,** with a privately owned fire department providing fire protection service to the described "premises".

(6) **"P-6" Automatic Burglar Alarm,** protecting the entire building or, if you are a tenant, the entire portion of the building you occupy, that is:

(a) Connected to a central station alarm; or

(b) Reporting to a public or private fire alarm station.

(7) **"P-7" Hood And Ductwork System,** inspection (and cleaning, if deemed necessary) of hoods and ductwork by a qualified independent contractor at an interval as described in the applicable National Fire Protection Association [NFPA] Standard.

(8) **"P-9"** The protective system or service designated in the Schedule of this endorsement.

**B.** The following are added to Paragraph **C.3.b.** of the Businessowners Property Coverage Form:

**(18) Fire**

We will not pay for loss or damage caused by or resulting from fire if:

**(a)** Prior to the fire, you:

(i) Knew of any suspension or impairment in any protective safeguard providing fire protection or fire prevention listed in the Schedule of this endorsement and failed to notify us of that fact; or

(ii) Failed to maintain or service any protective safeguard providing fire protection or fire prevention listed in the Schedule of this endorsement; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 81 of 164

Illinois Casualty Company 07/05/2022

**(b)** The loss or damage caused by or resulting from fire is directly or indirectly correlated to the suspension, impairment or failure to maintain or service any protective safeguard providing fire protection or fire prevention listed in the Schedule of this endorsement.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**(19) Burglary**

We will not pay for loss or damage caused by or resulting from burglary if:

**(a)** Prior to the burglary, you:

**(i)** Knew of any suspension or impairment in any protective safeguard providing burglary protection listed in the Schedule of this endorsement and failed to notify us of that fact; or

**(ii)** Failed to maintain or service any protective safeguard providing burglary protection listed in the Schedule of this endorsement; and

**(b)** The loss or damage caused by or resulting from burglary is directly or indirectly correlated to the suspension, impairment or failure to maintain or service any protective safeguard providing burglary protection listed in the Schedule of this endorsement.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 82 of 164

Illinoi
Casua
Comp

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – BUILDING OWNER

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS PROPERTY COVERAGE FORM**

**SCHEDULE**

| Prem. No. | Bldg. No. | Building Owner Name | Building Owner Address |
|---|---|---|---|
| 1 | 1 | Horseshoe Club LLC | 502 W Saint Germain St, Saint Cloud, MN 56301 |

The building owner identified in this endorsement is a Named Insured, but only with respect to the coverage provided under this Coverage Form for direct physical loss or damage to the building(s) designated in the Schedule of this endorsement.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 83 of 164

Illinois Casualty Company 07/05/2022

Illinois
Casualty
Company

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RESTAURANTS AND TAVERNS PROPERTY

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS POLICY**

The coverage provided by this endorsement applies to the location(s) specified in the schedule below.

**SCHEDULE**

| Premises Number | Premises Address |
|---|---|
| 1 | 502 W Saint Germain St Saint Cloud, MN, 56301 |

The Businessowners Property Coverage Form is changed as follows:

The following items are amended as shown. These coverages are subject to the terms and conditions applicable to property coverage in the **Businessowners Property Coverage Form** except as provided below.

| Description | Section | The Most We Will Pay Is |
|---|---|---|
| The following Optional Coverages apply: | | |
| Outdoor Signs/Awnings/Tents is provided | **A.4.a** | **$ 5,000** |
| Money And Securities is provided: | | |
| Inside the premises: | **A.4.b.(3)(a)** | **$ 5,000** |
| Outside the premises: | **A.4.b.(3)(b)** | **$ 5,000** |
| Employee Dishonesty is provided: | **A.4.c.** | **$ 5,000** |
| Spoilage is provided: | **A.4.d.** | **$ 5,000** |
| Food Contamination is provided: | **A.4.g.** | **$25,000** |
| Additional Advertising Expense: | **A.4.g.** | **$ 5,000** |
| Utility Services Time Element is provided: | **A.4.e.** | **$10,000** |

**Any Limit Of Insurance for any of these Optional Coverages shown in the Declarations is inclusive of and not in addition to the Limit Of Insurance shown in this endorsement as "the most we will pay is".**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 84 of 164

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 85 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

BUSINESSOWNERS PROPERTY
BP EX 09 01 15

POLICY NUMBER: ████ EFFECTIV.E DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF "CERTIFIED ACTS OF TERRORISM"; COVERAGE FOR CERTAIN FIRE LOSSES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS PROPERTY COVERAGE FORM**

The following provisions are added to the Businessowners Property Coverage Form:

**A.** The following exclusion is added to Section **C.3. Exclusions:**

**Certified Act Of Terrorism Exclusion**

We will not pay for loss or damage caused directly or indirectly by "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire subject to all applicable policy provisions including the Limit Of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense Additional Coverages or endorsements that apply to those coverages.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** As respects this endorsement, the following definition is added to Section **H. Property Definitions**:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 86 of 164

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 87 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

# BUSINESSOWNERS LIABILITY TABLE OF CONTENTS

This table of contents is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the table of contents, or noted elsewhere in it. For instance, an Exclusion feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

**A. Coverage**
1. Business Liability ..... 1
2. Coverage Extension – Supplementary Payments ..... 2
3. Medical Expenses ..... 3
4. Merchandise Withdrawal Expenses ..... 3

**B. Exclusions**
1. Applicable To Business Liability Coverage ..... 4
2. Applicable To Medical Expenses ..... 12
3. Applicable To Merchandise Withdrawal Expenses ..... 12
4. Applicable To Business Liability, Medical Expenses Coverages And Merchandise Withdrawal Expenses – Nuclear Energy Liability Exclusion ..... 13

**C. Who Is An Insured**
1. If you are designated in the Declarations as: ..... 15
2. Each of the following is also an insured: ..... 15

**D. Liability, Medical Expenses, And Merchandise Withdrawal Expenses Limits Of Insurance**
1. Limits of Insurance ..... 16
2. General Aggregate Limit of Insurance (Other Than Products-Completed Operations) ..... 16
3. Products-Completed Operations Aggregate Limit Of Insurance ..... 16
4. Personal And Advertising Injury Limit Of Insurance ..... 16
5. Each Occurrence Limit Of Insurance ..... 16
6. Damage To Premises Rented To You Limit Of Insurance ..... 17
7. Medical Expenses Limit Of Insurance ..... 17
8. Merchandise Withdrawal Expenses Limit of Insurance ..... 17

**E. Liability, Medical Expenses And Merchandise Withdrawal Expenses General Conditions**
1. Bankruptcy ..... 17
2. Duties In The Event Of Occurrence, Offense, Claim, Suit, Defect Or Merchandise Withdrawal ..... 17
3. Legal Action Against Us ..... 19
4. Other Insurance ..... 19
5. Separation Of Insureds ..... 20
6. Transfer Of Rights Of Recovery Against Others To Us ..... 20
7. Two Or More Policies Issued by Us ..... 20

**F. Definitions**
1. Words With Special Meaning ..... 20

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 88 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

Policy Number: [redacted]

# BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this Coverage Form and/or endorsements attached hereto restrict coverage. Read the entire Coverage Form and all endorsements attached hereto carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form and/or endorsements attached hereto, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C. Who Is An Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F. Definitions.**

**A. Coverage**

**1. Business Liability**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance**; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements under Paragraphs **A.1.** or **A.4.** or medical expenses under Paragraph **A.3.**

**(3)** If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **A.2. Coverage Extension – Supplementary Payments**.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period indicated in the Declarations; and

Prior to the policy period, no insured listed under Paragraph **C.1. Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022



**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from "bodily injury".

**2. Coverage Extension – Supplementary Payments**

**a.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(1)** All expenses we incur;

**(2)** Up to $2500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which coverage for "bodily injury" applies. We do not have to furnish these bonds;

**(3)** The cost of bonds to release attachments, but only for bond amounts within our Limit Of Insurance. We do not have to furnish these bonds;

**(4)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings of up to $500 a day because of time off from work;

**(5)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured;

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit Of Insurance.

These payments will not reduce the Limit Of Insurance.

**b.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(1)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(2)** This insurance applies to such liability assumed by the insured;

**(3)** The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by the insured in the same "insured contract";

**(4)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 90 of 164

Illinois Casualty Company 07/05/2022

**(5)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(6)** The indemnitee:

Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement and/or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee and provide us with written authorization to:

**(i)** Obtain records and other information related to the "suit"; and

**(ii)** Conduct and control the defense of the indemnitee in such "suit".

**c.** So long as the conditions in Paragraph **A.2.b.** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us, and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Such payments will not be deemed to be damages for "bodily injury", "property damage", or "personal and advertising injury" and will not reduce the applicable Limit Of Insurance.

**(1)** Our obligation to defend an insured's indemnity and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit Of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of agreement described in Paragraph **A.2.b.** above are no longer met.

**3. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On "premises" you own or rent; or

**(2)** Because of your operations;

**(3)** Provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable Limit Of Insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray, and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing, and funeral services.

**4. Merchandise Withdrawal Expenses**

**a.** We will reimburse you for "merchandise withdrawal expenses" incurred because of "merchandise withdrawal" to which this insurance applies.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**b.** This insurance applies to a "merchandise withdrawal" only if the "merchandise withdrawal" is initiated in the "coverage territory" during the policy period because:

**(1)** You determine that the "merchandise withdrawal" is necessary; or

**(2)** An authorized government entity has ordered you to conduct a "merchandise withdrawal".

**c.** The initiation of a "merchandise withdrawal" will be deemed to have been made only at the earliest of the following times:

**(1)** When you first announced, in any manner, to the general public, your vendors or to your "employees" (other than those "employees" directly involved in making the determination) your decision to conduct or participate in a "merchandise withdrawal". This applies regardless of whether the determination to conduct a "merchandise withdrawal" is made by you or is requested by a third party; or

**(2)** When you first received, either orally or in writing, notification of an order from an authorized government entity to conduct a "merchandise withdrawal".

**d.** "Merchandise withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "merchandise withdrawal".

**e.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $2500. We will then pay the amount of loss or damage in excess of $2500 up to the applicable Limit Of Insurance for this coverage.

**f.** The amount we will pay for damages is limited as described in Section **D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance.**

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury", "property damage", or "personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in any contract or any agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury", "property damage", or "personal and advertising injury" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", or "personal and advertising injury", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same written "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** For "personal and advertising injury" if:

**(a)** The "personal and advertising injury" arises out of the offenses of false arrest, detention, or imprisonment.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion – **c.(1)**, **c.(2)**, and **c.(3)**, applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training, or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

If the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph **(1)**, **(2)**, or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving, or furnishing alcoholic beverages.

**d. Laws**

Any liability or legal obligation of any insured with respect to "bodily injury", "property damage" or "personal or advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including (but not limited to) those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, religion or religious belief, age, economic status, income, medical condition, pregnancy, parenthood or mental or physical disability;

**(2)** Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

**(3)** The Migrant and Seasonal Agricultural Worker Protection Act;

**(4)** Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influence and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

**(5)** The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974;

**(6)** The Health Insurance Portability and Accountability Act (H.I.P.A.A.);

**(7)** The Health Information Technology for Economic and Clinical Health Act (HITECH);

**(8)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair And Accurate Credit Transaction Act (FACTA);

**(9)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(10)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(11)** Any federal, state, or local statute, ordinance or regulation, other than TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information;

**(12)** Any federal, state, county, municipal or local consumer fraud protection law, regulation, ordinance, order, or directive barring fraud, unfair competition, and/or deceptive business practices; or

**(13)** Any amendment of or addition to these laws or by any similar statutes, ordinances, orders, directives or regulations.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of your business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building or equipment that is used to heat water.

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any "premises", site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any "premises", site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants";

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, "premises", site or location.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 94 of 164

Illinois Casualty Company 07/05/2022

**g. Asbestos, Electromagnetic Emissions, Lead Or Radon**

**(1)** "Bodily injury" or "property damage" arising out of:

**(a)** Asbestos including, but not limited to, any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

**(b)** Electromagnetic emissions or radiation including, but not limited to, any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

**(c)** Lead including, but not limited to, any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

**(d)** Radon or any other radioactive emissions, man-made or natural, including, but not limited to, any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions.

**h. Fungi Or Bacteria**

**(1)** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria at or from any "premises" site or location which is or was at any time owned or occupied by, or rented or loaned to any insured including on, within, adjacent to, or adjoining real property as well as personal property regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**i. Aircraft, Unmanned Aircraft, Auto Or Watercraft**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "unmanned aircraft", "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "unmanned aircraft", "auto" or watercraft that is owned or operated by or rented or leased to any insured.

This exclusion does not apply to:

**(a)** A watercraft while ashore on "premises" you own, rent or control; or;

**(b)** A watercraft you do not own that is:

**(i)** Less than 52 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, "premises" you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 95 of 164

Illinois Casualty Company 07/05/2022

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft, "unmanned aircraft", or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of;

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(ii)** The operation of any of the following machinery or equipment:

**(aa)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(bb)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**(f)** "Bodily injury" or "property damage" arising out of the use of a "non-owned auto" in your business, by any person other than you or your "delivery driver".

**(g)** "Bodily Injury" or "property damage" arising out of the use of a "hired auto" by you or your "employee", other than your "delivery driver", in your business.

**j. Mobile Equipment**

**(1)** "Bodily injury" or "property damage" arising out of:

**(a)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(b)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**k. War**

**(1)** "Bodily injury", "property damage" or "personal or advertising injury", however caused, arising, directly or indirectly, out of:

**(a)** War, including undeclared or civil war; or

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**l. Professional Services**

**(1)** "Bodily injury", "property damage", or "personal and advertising injury" that arises out of or is a result of the rendering or failure to render any professional service. This exclusion includes, but is not limited to, any:

**(a)** Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

**(b)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(c)** Supervisory, inspection, engineering, or architectural service, advice or instruction;

**(d)** Medical, surgical, dental, X-ray, or nursing services treatment, advice, or instruction;

**(e)** Any health or therapeutic service treatment, advice, or instruction;

**(f)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, tattooing, or personal grooming;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(g)** Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(h)** Ear or other body piercing service, treatment, advice or instruction; or

**(i)** Service, treatment, advice or instruction in the practice of pharmacy.

This exclusion applies even if the claim(s) allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury", "property damage" or "personal and advertising injury" involved the rendering or failure to render of any professional service.

**m. Electronic Data**

**(1)** Damages arising out of or resulting from:

**(a)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

However, this exclusion does not apply to liability for damages because of "bodily injury".

**n. Athletic, Sports, Or Games Participants**

**(1)** "Bodily injury" or "property damage":

**(a)** To any person while practicing for, instructing or participating in any physical exercises, sports or athletic contest, game or exhibition that you sponsor;

**(b)** To any person while practicing for, instructing or participating in any physical exercises, sports or athletic contest, game or exhibition, whether or not such contest or exhibition is organized or occurs spontaneously, that takes place at "premises" you own, rent, or temporarily occupy or use;

**(c)** To any person while using any coin or token operated game or device that involves punching, striking, swinging or kicking, that takes place at "premises" you own, rent, or temporarily occupy or use; or

**(d)** To any person while practicing for, instructing or participating in any contest, game or exhibition involving archery or the use or discharge of firearms, whether or not such contest or exhibition is organized or occurs spontaneously, that takes place at "premises" you own, rent, or temporarily occupy or use.

This exclusion does not apply to billiards, bowling or machines that simulate bowling, foosball, shuffleboard or indoor darts;

**o. Damage To Property**

**(1)** "Property damage" to:

**(a)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(b)** "Premises" you sell, give away or abandon, if the "property damage" arises out of any part of those "premises";

**(c)** Property loaned to you;

**(d)** Personal property in the care, custody or control of any insured;

**(e)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(f)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**p. Damage To Your Product**

**(1)** "Property damage" to "your product" arising out of it or any part of it.

**q. Damage To Your Work**

**(1)** "Property damage" to "your work" arising out of it or any part of it and included in the "products – completed operations hazard".

**r. Damage To Impaired Property Or Property Not Physically Injured**

**(1)** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(a)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(b)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**(2)** This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**s. Employment - Related Practices**

**(1)** "Bodily injury" to:

**(a)** A person arising out of any:

**(i)** Refusal to employ that person;

**(ii)** Termination of that person's employment;

**(iii)** Employment-related practices, policies, acts, or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or malicious prosecution directed at that person; or

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)(i)**, **(a)(ii)**, or **(a)(iii)** above is directed.

**(c)** This exclusion applies:

**(i)** Whether the injury-causing event described in Paragraphs **(a)(i)**, **(a)(ii)**, or **(a)(iii)** above occurs before employment, during employment or after employment of that person;

**(ii)** Whether the insured may be liable as an employer or in any other capacity; and

**(iii)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

**t. Recall Of Products, Work Or Impaired Property**

**(1)** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

**(a)** "Your product";

**(b)** "Your work"; or

**(c)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**u. Communicable Disease**

**(1)** "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 98 of 164

Illinois Casualty Company 07/05/2022

**(2)** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**(a)** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**(b)** Testing for a communicable disease;

**(c)** Failure to prevent the spread of the disease; or

**(d)** Failure to report the disease to authorities.

Exclusions **c.** through **u.** do not apply to damage by fire or explosion to "premises" while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit Of Insurance applies to this coverage as described in Paragraph **D.6. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance**.

**v. Conversion**

**(1)** Any liability or legal obligation of any insured with respect to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission involving the wrongful possession or disposition of another's property, including the wrongful taking, using, detaining, or disposing of such property.

**w. Personal And Advertising Injury**

**(1)** This insurance does not apply to "Personal and advertising injury":

**(a)** Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(b)** Arising out of oral or written publication of material, in any manner, if done by or at the direction of any insured with knowledge of its falsity.

**(c)** Arising out of oral or written publication of material in any manner whose first publication took place before the beginning of the policy period.

**(d)** Arising out of a criminal act committed by or at the direction of any insured.

**(e)** Arising out of a breach of contract.

**(f)** Arising out of the unauthorized use of another's name or product in your email address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(g)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(h)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(i)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(j)** Committed by an insured whose business is:

**(i)** Advertising, broadcasting, publishing or telecasting;

**(ii)** Designing or determining content of websites for others; or

**(iii)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **t.(1), t.(2) and t.(3)** of "personal and advertising injury" under Section **F. Definitions**.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

For the purpose of this exclusion, the placing of frames, borders or links, or advertising, for you or other anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(k)** Arising out of any electronic chat room, bulletin board, or blog the insured hosts, owns, or over which any insured exercises control.

**(2) Cyber Protection**

This insurance does not apply any of the following, as defined under the Cyber Protection Form BL EC 06, except to the extent that coverage may be provided under the Cyber Protection Form BL EC 06.

**(a)** Multimedia Liability

**(b)** Security and Privacy Liability

**(c)** Privacy Regulatory Defense and Penalties

**(d)** Privacy Breach Response Costs, Notification Expenses and Customer Support and Credit Monitoring Expenses

**(e)** PCI DSS Assessment

**(3) Unmanned Aircraft**

**(a)** "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any "unmanned aircraft" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

**(b)** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any "unmanned aircraft" that is owned or operated by or rented or leased to any insured.

**2. Applicable To Medical Expenses**

**a.** We will not pay expenses for "bodily injury":

**(1)** To any insured, except "volunteer workers" or "club members".

**(2)** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**(3)** To a person injured on that part of "premises" you own or rent that the person normally occupies.

**(4)** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**(5)** To any person while practicing for, instructing or participating in any physical exercises, sports or athletic contest, game or exhibition that you sponsor;

**(6)** To any person while practicing for, instructing or participating in any physical exercises, sports or athletic contest, game or exhibition, whether or not such contest or exhibition is organized or occurs spontaneously, that takes place at "premises" you own, rent, or temporarily occupy or use;

**(7)** To any person while using any coin or token operated game or device that involves punching, striking, swinging or kicking, that takes place at "premises" you own, rent, or temporarily occupy or use; or

**(8)** To any person while practicing for, instructing or participating in any contest, game or exhibition involving archery or the use or discharge of firearms, whether or not such contest or exhibition is organized or occurs spontaneously, that takes place at "premises" you own, rent, or temporarily occupy or use.

**(9)** Included within the "products-completed operations hazard".

**(10)** Excluded under Business Liability Coverage.

**3. Applicable To Merchandise Withdrawal Expenses**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

a. This insurance does not apply to "merchandise withdrawal expense" arising out of:

(1) Any "merchandise withdrawal" initiated due to:

(a) The failure of "your product" to accomplish its intended purpose, including any breach of warranty of any kind, whether oral, written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury".

(b) Copyright, patent, trade secret, trade dress or trademark infringement.

(c) Transformation of a chemical nature, deterioration, or decomposition of "your product". This exclusion does not apply if it is caused by:

(i) An error in manufacturing, design, or processing;

(ii) Transportation of "your product"; or

(iii) "Merchandise tampering".

(d) Expiration of the designated shelf life of "your product"; or

(e) A "defect" in "your product" known to exist by any insured listed under Paragraph **C.1. Who Is An Insured**, prior to the date this Coverage Form was first issued to you or prior to the time "your product" leaves your control or possession.

(2) Recall of any specific product for which "bodily injury" or "property damage" is excluded under Section **A. Coverage** or Section **B. Exclusions.**

(3) Recall when "your product" or a component contained within "your product" has been:

(a) Banned from the market by an authorized government entity prior to the policy period; or

(b) Distributed or sold by you subsequent to any governmental ban.

(4) The defense of a claim or "suit" against you for liability arising out of a "merchandise withdrawal".

(5) The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

**4. Applicable To Business Liability, Medical Expenses Coverages And Merchandise Withdrawal Expenses – Nuclear Energy Liability Exclusion**

a. This insurance does not apply:

(1) Under Paragraph **A.1.Business Liability** or Paragraph **A.3. Medical Expenses, or** Paragraph **A.4. Merchandise Withdrawal Expenses**, to "bodily injury" or "property damage":

(a) With respect to which an insured under this Coverage Form and/or endorsements attached hereto is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(i) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(ii) The insured is, or had this Coverage Form not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(c) Under Paragraph **A.3.**, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

(d) Under Paragraph **A.1. Business Liability** or **A.4. Merchandise Withdrawal Expenses**, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if the nuclear material:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 101 of 164

Illinois Casualty Company 07/05/2022

**(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(ii)** Has been discharged or dispersed therefrom;

**(iii)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(iv)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion applies only to "property damage" to such "nuclear facility" and any property thereat.

**b.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties.

**(3)** "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(i)** Separating the isotopes of uranium or plutonium;

**(ii)** Processing or utilizing "spent fuel"; or

**(iii)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the "premises" where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, "premises" or place prepared or used for the storage or disposal of "waste";

**(e)** Includes the site on which any of the foregoing is located, all operations conducted on such site and all "premises" used for such operations.

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material".

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass or fissionable material.

**(6)** "Property damage" includes all forms of radioactive contamination or property.

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 102 of 164

Illinois Casualty Company 07/05/2022

**C. Who Is An Insured**

**1. If you are designated in the Declarations as:**

An individual, a partnership or joint venture, a limited liability company, a trust, a club, or an organization other than a partnership, joint venture, limited liability company, trust or club, the following are insureds, but only with respect to the conduct of your business:

**a.** You and your spouse;

**b.** Your members;

**c.** Your partners and their spouse;

**d.** Your managers, but only with respect to their duties as your manager(s);

**e.** Your trustees, beneficiaries and/or the agents of either, but only with respect to their duties as your trustees, beneficiaries and/or the agents of either;

**f.** Your "executive officers" or directors, but only with respect to their duties as your officers;

**g.** Your auxiliaries and auxiliary members, but only with respect to their liability for your activities or activities they perform on your behalf, and/or;

**h.** Your stockholders, but only with respect to their liability as your stockholders.

**2. Each of the following is also an insured:**

**a.** Your "club members" or "volunteer workers" but only while performing duties related to the conduct of your business, or your "employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees", "volunteer workers" or "club members" is an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners, members, or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "club members" or "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of the co-"employee", co-"volunteer" or co-"club member" as a consequence of Paragraph **(a)** above;

**(c)** For which there is an obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)** or **(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by:

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by:

you, any of your "employees", "club members", "volunteer workers", any partner or member, or any person (other than your "employee", "club member" or "volunteer worker"), or any organization while acting as your real estate manager.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 103 of 164

Illinois Casualty Company 07/05/2022

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Form and/or endorsements attached hereto.

**d.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 30th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**(a)** Paragraph **A.1.** does not apply to "bodily injury", "property damage", or "personal and advertising injury" that occurred before you acquired or formed the organization; and

**(b)** No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability, Medical Expenses, And Merchandise Withdrawal Expenses Limits Of Insurance**

**1. Limits of Insurance**

**a.** The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** Claims made or "suits" brought; or

**(3)** Persons or organizations making claims or bringing "suits".

**2. General Aggregate Limit of Insurance (Other Than Products-Completed Operations)**

**a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under Paragraph **A.3.**; and

**(2)** Damages under Paragraph **A.1.**, except damages because of "bodily injury" and/or "property damage" included in the "products-completed operations hazard"; and

**b.** The General Aggregate Limit applies separately to each of your "premises" specifically described in the Declarations.

**3. Products-Completed Operations Aggregate Limit Of Insurance**

**(1)** The Products-Completed Operations Aggregate Limit is the most we will pay under Paragraph **A.1**. for damages because of "bodily injury" and/or "property damage" included in the "products-completed operations hazard".

**4. Personal And Advertising Injury Limit Of Insurance**

**(1)** Subject to Paragraph **D.2.** above, the Personal and Advertising Injury Limit is the most we will pay under Paragraph **A.1**. for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5. Each Occurrence Limit Of Insurance**

**a.** Subject to Paragraph **D.2.** or **D.3**. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**(1)** Damages under Paragraph **A.1.**; and

**(2)** Medical expenses under Paragraph **A.3.**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**6. Damage To Premises Rented To You Limit Of Insurance**

**a.** Subject to Paragraph **D.5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Paragraph **A.1**. for damages because of all "property damage" to "premises", while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence".

**7. Medical Expenses Limit Of Insurance**

**a.** Subject to Paragraph **D.5.** above, the Medical Expenses Limit is the most we will pay under Paragraph **A.3.** for all medical expenses because of "bodily injury" sustained by any one person.

**8. Merchandise Withdrawal Expenses Limit of Insurance**

**a.** The most we will reimburse you for the sum of all "merchandise withdrawal expenses" incurred for all "merchandise withdrawals" initiated during the policy period is $50,000.

**b.** The Limits Of Insurance of this Coverage Form and/or endorsements attached hereto apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**E. Liability, Medical Expenses And Merchandise Withdrawal Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Form and/or endorsements attached hereto.

In case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this Policy against us to the same extent that the insured would have, had the insured paid the final judgment.

**2. Duties In The Event Of Occurrence, Offense, Claim, Suit, Defect Or Merchandise Withdrawal**

We have no duty to pay, nor any duty to defend, unless you and any other insured have fully complied with the conditions outlined below.

**a.** Duties In The Event Of Occurrence, Offense, Claim Or Suit

**(1)** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(a)** How, when and where the "occurrence" or offense took place;

**(b)** The names and addresses of any injured persons and witnesses; and

**(c)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**(2)** If a claim is made or "suit" is brought against any insured, you must:

**(a)** Immediately record the specifics of the claim or "suit" and the date received; and

**(b)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**(c)** Promptly notify any other company providing insurance which may have a duty to pay, pay on behalf of, indemnify and/or defend you and tender the investigation of any claim and tender the defense of any "suit" to that company.

**(3)** You and any other involved insured must:

**(a)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(b)** Authorize us to obtain records and other information;

**(c)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 105 of 164

Illinois Casualty Company 07/05/2022

**(d)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**(e)** Agree to be examined under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim or "suit". At our option and expense, any examination under oath may be visually or audibly recorded as well as be recorded by stenographic record. In the event of an examination, an insured's answers must be signed.

**(f)** Tender the investigation of any claim and tender the defense of any "suit" to any other company providing insurance which may have a duty to pay, to pay on behalf of, to indemnify and/or defend any insured.

**(4)** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

**b.** Duties In The Event Of A Merchandise Withdrawal

**(1)** You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product" or any governmental investigation that may result in a "merchandise withdrawal". To the extent possible, notice should include:

**(a)** How, when and where the "defect" was discovered;

**(b)** The names and addresses of any injured persons and witnesses; and

**(c)** The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product";

**(2)** If a "merchandise withdrawal" is initiated, you must:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 106 of 164

Illinois Casualty Company 07/05/2022

(a) Immediately record the specifics of the "merchandise withdrawal" and the date it was initiated; and

(b) Notify us as soon as practicable. You must see to it that we receive written notice of the "merchandise withdrawal" as soon as practicable.

(c) Promptly notify any other company providing insurance which may have a duty to pay, pay on behalf of, indemnify and/or defend you and tender the investigation of any claim and tender the defense of any "suit" to that company.

(3) You must promptly take all reasonable steps to mitigate the expenses associated with a "merchandise withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "merchandise withdrawal expenses".

(4) You and any other involved insured must:

(a) Immediately send us copies of pertinent correspondence received in connection with the "merchandise withdrawal";

(b) Authorize us to obtain records and other information; and

(c) Cooperate with us in our investigation of the "merchandise withdrawal".

(d) Agree to be examined under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim or "suit". At our option and expense, any examination under oath may be visually or audibly recorded as well as be recorded by stenographic record. In the event of an examination, an insured's answers must be signed.

(e) Tender the investigation of any claim and tender the defense of any "suit" to any other company providing insurance which may have a duty to pay, to pay on behalf of, to indemnify and/or defend any insured.

Notice given by or on behalf of the insured to any of our authorized agents, with particulars sufficient to identify the insured, shall be considered to be notice to us. Notice can be by any means of communication.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Form and/or endorsements attached hereto:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Form and/or endorsements attached hereto unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Form and/or endorsements attached hereto or that are in excess of the applicable Limit Of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

**a.** Business Liability Coverage and Merchandise Withdrawal Expenses Coverage is excess over:

(1) Any other insurance that insures for direct physical loss or damage; or

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

When this insurance is excess, we will have no duty under Business Liability Coverage or Merchandise Withdrawal Expenses Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 107 of 164

Illinois Casualty Company 07/05/2022

**5. Separation Of Insureds**

**a.** Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this Coverage Form and/or endorsements attached hereto to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each insured against whom claim is made or "suit" is brought.

**6. Transfer Of Rights Of Recovery Against Others To Us**

**a.** If the insured has rights to recover all or part of any payment we have made under this Coverage Form and/or endorsements attached hereto, those rights are transferred to us. The insured must do nothing before or after loss to impair rights of recovery. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**b.** Our rights do not apply against any person or organization insured under this or any other Policy we issue with respect to the same "occurrence", provided the "occurrence" was not intentionally caused by such insureds.

**7. Two Or More Policies Issued by Us**

If this Policy and any other policy issued to you by us apply to the same "occurrence" the aggregate maximum Limit of Insurance under all policies shall not exceed the highest applicable Limit of Insurance under any one policy. This condition does not apply to any policy issued by us to apply as excess insurance over this Policy.

**F. Definitions**

**1. Words With Special Meaning**

**a.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding websites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an "advertisement".

**b.** "Auto" means:

**(1)** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**(2)** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**c.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**d.** "Club member" means a person who is a member of an organization composed of people who voluntarily meet on a regular basis for a mutual purpose other than educational, religious, charitable, or financial pursuits.

**e.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**(2)** International waters or airspaces, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

**(3)** All other parts of the world if the injury or damage arises out of:

**(a)** Good or products made or sold by you in the territory described in Paragraph **F.1.e.(1)** above;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 108 of 164

Illinois Casualty Company 07/05/2022

**(b)** The activities of a person whose home is in the territory described in Paragraph **F.1.e.(1)** above, but is away for 30 consecutive days or less on your business; or

**(c)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in "suit" on the merits in the territory described in Paragraph **F.1.e.(1)** above or in a settlement we agree to.

**f.** "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

**g.** "Delivery driver" means:

**(1)** An "employee" hired by you while operating a "hired auto" or a "non-owned auto" in the course of making deliveries of food, beverages, and/or food and/or beverage-related items in connection with your business; or

**(2)** An independent contractor engaged by you while operating a "hired auto" or a "non-owned auto" in the course of making deliveries of food, beverages, and/or food and/or beverage-related items in connection with your business.

**h.** "Electronic data" means information, media, facts or computer programs stored as, or on, created or used on, or transmitted to or from computer software(including systems and applications software)on hard or floppy disks, DVDs, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories or media which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of "electronic data" means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**i.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**j.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**k.** "Fungi" means any type of organisms that lack chlorophyll, leaves, true stems or roots, reproduce by spores, and live by decomposing and absorbing the organic material in which they grow; including, but not limited to, mold, mushrooms, mildew, smuts, spores, rusts, yeasts, scents, or by products released by any of these organisms.

**l.** "Hired auto" means only those "autos" you lease for less than six months, hire, rent, or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or "delivery drivers", your "executive officers", your partners, your members or members of their households. This also does not include any "auto" while being operated by your "delivery driver".

**m.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**n.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**(1)** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**(2)** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use either by repairing, replacing, adjusting or removing "your product" or "your work" or by your fulfillment of the terms of the contract or agreement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**o.** "Insured contract" means:

**(1)** A contract for a lease of "premises". However, that portion of the contract for a lease of "premises" that indemnifies any person or organization for damage by fire to "premises" while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**(2)** A written sidetrack agreement;

**(3)** A written easement or written license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**(4)** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**(5)** A written elevator maintenance agreement;

**(6)** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **F.1.l.(6)** does not include that part of any contract or agreement:

**(a)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(b)** That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

**(i)** Preparing, approving or failing to approve maps, drawings, opinions, reports, surveys, change orders, designs or specification; or

**(ii)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

**(iii)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **F.1.l.(6)(a)** above and supervisory, inspection or engineering services.

**p.** "Leased worker" means a person leased to you by a labor leasing firm under a written agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**q.** "Loading or unloading" means the handling of property:

**(1)** After it is moved from the place where it is accepted for movement into or onto an aircraft, "unmanned aircraft", watercraft, or "auto";

**(2)** While it is in or on an aircraft, "unmanned aircraft", watercraft or "auto"; or

**(3)** While it is being moved from an aircraft, "unmanned aircraft", watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to aircraft, "unmanned aircraft", watercraft or "auto".

**r.** "Merchandise tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury".

When "merchandise tampering" is known, suspected or threatened, a "merchandise withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**s.** "Merchandise withdrawal" means the recall or withdrawal:

**(1)** From the market; or

**(2)** From use by any other person or organization;

of "your products" or products which contain "your products", because of known or suspected "defects" in "your product", or known or suspected "merchandise tampering", which has caused or is reasonably expected to cause "bodily injury".

**t.** "Merchandise withdrawal expenses" means those reasonable and necessary extra expenses listed below, paid and directly related to a "merchandise withdrawal":

**(1)** Costs of notification;

**(2)** Costs of stationery, envelopes, production of announcements and postage or facsimiles;

**(3)** Costs of overtime paid to your regular non-salaried "employees" and costs incurred by your "employees" including costs of transportation and accommodations;

**(4)** Costs of computer time;

**(5)** Costs of hiring independent contractors and other "temporary workers";

**(6)** Costs of transportation, shipping or packaging;

**(7)** Costs of warehouse or storage space; or

**(8)** Costs of proper disposal of "your products" or products that contain "your products" that cannot be reused, not exceeding your purchase price or your cost to produce the products.

**u.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**(1)** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**(2)** Vehicles maintained for use solely on or next to "premises" you own or rent;

**(3)** Vehicles that travel on crawler treads;

**(4)** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(a)** Power cranes, shovels, loaders, diggers or drills; or

**(b)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**(5)** Vehicles not described in Paragraphs **(1)**, **(2)**, **(3)**, or **(4)** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(6)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(7)** Cherry pickers and similar devices used to raise or lower workers; and

**(8)** Vehicles not described in Paragraphs **(1)**, **(2)**, **(3)**, or **(4)** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached machinery or equipment are not "mobile equipment" but will be considered "autos":

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 111 of 164

Illinois Casualty Company 07/05/2022

**(a)** Equipment designed primarily for:

**(i)** Snow removal;

**(ii)** Road maintenance, but not construction or resurfacing; or

**(iii)** Street cleaning;

**(b)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(c)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**v.** "Non-owned auto" means only those autos you do not own, lease, hire, rent, or borrow that are used in connection with your business except:

**(1)** If you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner;

**(2)** If you are a joint venture or a limited liability company, a "non-owned auto" does not include any "auto" owned by any member;

**(3)** A "non-owned auto" does not include any auto while being operated by your "delivery driver".

**w.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**x.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or "premises" that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**(4)** Oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**(5)** The use of another's advertising idea in your "advertisement"; or

**(6)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**y.** "Pollutants" means any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils, carbon monoxide and other exhaust gases, mineral spirits and other solvents, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform and other dry cleaning chemicals, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides and all substances specifically listed, identified, or described by one or more of the following references: Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substances And Disease Registry ToxFAQs™, and/or U.S. Environmental Protection Agency EMCI Chemical References Complete Index.

**z.** "Premises" means the location specifically described in the Declarations and includes any other real property adjoining or adjacent to the specifically described location that is owned by you or leased to you under contract.

**aa.** "Products – completed operations hazard":

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(1)** For "your product" intended for consumption on "premises" you own or rent, includes all "bodily injury" and "property damage" that arises out of "your product" if the "bodily injury" or "property damage" occurs after you have relinquished possession of "your product".

**(2)** Except as provided in Paragraph **(1)** above, includes all "bodily injury" and "property damage" occurring away from "premises" you own or rent and arising out of "your product" or "your work" except:

**(a)** Products that are still in your physical possession; or

**(b)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(i)** When all of the work called for in your contract has been completed; or

**(ii)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(iii)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

**(c)** Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**(3)** Does not include "bodily injury" or "property damage" arising out of:

**(a)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(b)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**bb.** "Profit" means the positive gain from operations after subtracting for all expenses.

**cc.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**(2)** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**dd.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**ee.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**ff.** "Unmanned Aircraft":

Means:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(1)** Any powered aerial vehicle that:

**(a)** Does not carry a human operator on board;

**(b)** Uses aerodynamic force to provide vehicle lift;

**(c)** Can fly autonomously; or

**(d)** Can be piloted remotely.

**gg.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for work performed for you.

**hh.** "Your product":

Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Includes:

**(a)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(b)** The providing of or failure to provide warnings or instructions.

Does not include vending machines or other property rented to or located for the use of others but not sold.

**ii.** "Your work":

Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

Includes:

**(3)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(4)** The providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, the ILLINOIS CASUALTY COMPANY, Rock Island, Illinois has caused these presents to be signed by its officers.

ILLINOIS CASUALTY COMPANY

Secretary

ILLINOIS CASUALTY COMPANY

President

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 114 of 164
BUSINESSOWNERS LIABILITY
BL CF 01 03 06
Illinois Casualty Company 07/05/2022
BL CF 01 01 18 Page 27 of 27
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 115 of 164

Illinoi
Casua
Comp

POLICY NUMBER: ██████ EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION – DESIGNATED PREMISES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

## SCHEDULE

**Designated Person Or Organization:**
Jim Gillespie
3763 Sterling Dr
Saint Cloud, MN 56301

**Designated Premises:**
502 W Saint Germain St
Saint Cloud, MN 56301

**A.** The following is added to Section **C. Who Is An Insured** in the Businessowners Liability Coverage Form:

**4.** The person or organization designated in the Schedule of this endorsement is also an insured, but only with respect to liability caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf and arising out of the ownership, maintenance or use of that part of the designated premises owned by or leased to you.

**B.** The following exclusions are added to **B.1. Exclusions – Applicable To Business Liability**

This insurance does not apply to:

**a.** Any "occurrence" that takes place after you cease to be a tenant in the described premises designated in the Schedule of this endorsement.

**b.** Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule of this endorsement.

**C.** The following is added to Section **D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance**:

**9.** The Limits Of Insurance for the person or organization designated in the Schedule of this endorsement are those specified in the contract or agreement with you, if applicable, or in this Coverage Form, whichever is less. These Limits Of Insurance are inclusive of and are not in addition to the Limits Of Insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 116 of 164

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 117 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION – DESIGNATED PREMISES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**SCHEDULE**

**Designated Person Or Organization:**
Greg Payne
7607 Harold Ave
Minneapolis, MN 55427

**Designated Premises:**
502 W Saint Germain St
Saint Cloud, MN 56301

**A.** The following is added to Section **C. Who Is An Insured** in the Businessowners Liability Coverage Form:

**4.** The person or organization designated in the Schedule of this endorsement is also an insured, but only with respect to liability caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf and arising out of the ownership, maintenance or use of that part of the designated premises owned by or leased to you.

**B.** The following exclusions are added to **B.1. Exclusions – Applicable To Business Liability**

This insurance does not apply to:

**a.** Any "occurrence" that takes place after you cease to be a tenant in the described premises designated in the Schedule of this endorsement.

**b.** Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule of this endorsement.

**C.** The following is added to Section **D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance**:

**9.** The Limits Of Insurance for the person or organization designated in the Schedule of this endorsement are those specified in the contract or agreement with you, if applicable, or in this Coverage Form, whichever is less. These Limits Of Insurance are inclusive of and are not in addition to the Limits Of Insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



Illinois Casualty Company 07/05/2022

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 119 of 164

POLICY NUMBER: ████ EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MEDICAL EXPENSES - EXCLUSION

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**SCHEDULE**

**Designation Of Premises Or Operations:**
All Premises

With respect to any "premises" designated in the Schedule of this endorsement, as well as all operations usual or incidental thereto, the Businessowners Liability Coverage Form is modified as follows:

**A.** Paragraph **A.3. Medical Expenses** in Section **A. Coverages** does not apply and none of the references to Paragraph **A.3.** in the Businessowners Liability Coverage Form apply.

**B.** The following is added to Paragraph **A.2. Coverage Extension – Supplementary Payments** in the Businessowners Liability Coverage Form.

**(8)** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 120 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comp

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF "CERTIFIED ACTS OF TERRORISM"

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

The following provisions are added to the Businessowners Liability Coverage Form:

**A.** The following exclusion is added:

**Terrorism**

This insurance does not apply to "any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** As respects this endorsement, the following definitions are added to Section **F. Definitions**:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under the Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in the applicable Coverage Form.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

 CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 121 of 164

Illinois Casualty Company 07/05/2022

Illinois
Casualty
Company

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **04/19/2019**

**THIS FORM CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER PROTECTION

**(Claims-Made and Reported Coverage)**

**SCHEDULE OF LIMITS OF LIABILITY**

| Coverage | Limits | |
|---|---|---|
| Multimedia Liability Coverage | $50,000 | Each "claim" |
| Security and Privacy Liability Coverage | $50,000 | Each "claim" |
| Privacy Regulatory Defense and Penalties Coverage | $50,000 | Each "claim" |
| Privacy Breach Response Costs, Notification Expenses and Customer Support and Credit Monitoring Expenses Coverage | $50,000 | Each "claim" |
| Proactive Privacy Breach Response Costs | $50,000 | Each "claim" |
| Voluntary Notification Expenses | $50,000 | Each "claim" |
| Network Asset Protection Coverage | $50,000 | Each "claim" |
| Cyber Extortion Coverage | $50,000 | Each "claim" |
| Cyber Terrorism Coverage | $50,000 | Each "claim" |
| BrandGuard™ Coverage | $50,000 | Each "claim" |
| PCI DSS Assessment Coverage | $50,000 | Each "claim" |
| Aggregate Limit | $50,000 | |
| Retroactive Date: | 04/19/2016 | |

This form amends your policy to provide Cyber Protection insurance on a Claims-Made and Reported basis. Various provisions in this form restrict coverage. Read the entire form carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this form apply only to the coverage provided by this form. The coverage shown in the schedule of this form is additional insurance and is the only coverage under the policy for the coverages listed on the schedule.

Throughout this form, the words "you" and "your" refer to the "named insured". The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases in this form that appear in quotation marks have special meaning. Refer to Section **E.** of this form. To the extent any words or phrases used in this form are defined elsewhere in your Businessowners Liability Policy or Businessowners Property Policy, such definitions do not apply to give meaning to the words or phrases used in this form.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

The limits of insurance for the coverage provided under this form are specified in the Schedule of Limits of Liability (Schedule) shown above and are in addition to, and will not erode, the limits of insurance provided elsewhere under your Policy. "Defense costs" paid under this form will erode, and are included within, the limits of insurance for the coverage provided under this form.

**A. Cyber Protection Coverage**

In consideration of the premium paid and subject to all terms, conditions, definitions, exclusions and other provisions of this form, we agree as follows:

**1. Multimedia Liability Coverage**

Subject to the limits of insurance specified in the Schedule, we will pay:

**a.** "Damages" which an "insured" becomes legally obligated to pay; and

**b.** "Defense costs",

resulting from a "claim" for an actual or alleged "multimedia peril(s)," provided that:

**a.** Such "claim" is first made against the "insured" during the "coverage period";

**b.** The "insured" reports such "claim" in writing to us no later than sixty (60) days after the "claim" is first made against the "insured"; and

**c.** The "multimedia peril(s)" takes place or first commences on or after your initial effective date of Cyber Liability coverage.

**2. Security and Privacy Liability Coverage**

Subject to the limits of insurance specified in the Schedule, we will pay:

**a.** "Damages" which an "insured" becomes legally obligated to pay; and

**b.** "Defense costs",

resulting from a "claim" for an actual or alleged "security and privacy wrongful act," provided that:

**a.** Such "claim" is first made against the "insured" during the "coverage period";

**b.** The "insured" reports such "claim" in writing to us no later than sixty (60) days after the "claim" is first made against the "insured"; and

**c.** The "security and privacy wrongful act" takes place or first commences on or after your initial effective date of Cyber Liability coverage.

**3. Privacy Regulatory Defense and Penalties Coverage**

Subject to the limits of insurance specified in the Schedule, we will pay:

**a.** "Regulatory fines and penalties," if permitted by law, and/or any "regulatory compensatory award" which an insured" becomes legally obligated to pay; and

**b.** "Defense costs",

directly resulting from a "claim" for an actual or alleged "security breach" or "privacy breach", provided that:

**a.** Such "claim" is first made against the "insured" during the "coverage period";

**b.** The" insured" reports such "claim" in writing to us no later than sixty (60) days after the claim is first made against the "insured"; and

**c.** The "security breach" or "privacy breach" takes place or first commences on or after your initial effective date of Cyber Liability coverage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**4. Privacy Breach Response Costs, Notification Expenses, and Customer Support and Credit Monitoring Expenses Coverage**

Subject to the limits of insurance specified in the Schedule, we will pay reasonable "privacy breach response costs", "notification expenses", and/or "customer support and credit monitoring expenses" which you incur during the "coverage period" as a direct result of an "adverse media report", "security breach" or "privacy breach", provided that:

**a.** The "adverse media report", "security breach" or "privacy breach" takes place or first commences on or after your initial effective date of Cyber Liability coverage; and

**b.** You report the "adverse media report", "security breach" or "privacy breach" in writing to us during the "coverage period", but no later than 60 days from the date an "insured" first discovers the "adverse media report", "security breach" or "privacy breach".

**5. Network Asset Protection Coverage**

**a. Loss of Digital Assets**

Subject to the limits of insurance specified in the Schedule, we will reimburse you for "digital assets loss" and/or "special expenses" which you incur during the "coverage period" as a direct result of damage, alteration, corruption, distortion, theft, misuse, or destruction of "digital assets", provided that:

**(1)** Such damage, alteration, corruption, distortion, theft, misuse, or destruction of "digital assets" is directly caused by a "covered cause of loss";

**(2)** The "covered cause of loss" takes place or first commences on or after your initial effective date of Cyber Liability coverage;

**(3)** You report the "covered cause of loss" in writing to us during the "coverage period", but no later than 60 days from the date an "insured" first discovers the "covered cause of loss"; and

**(4)** You provide clear evidence that the "digital assets loss" and/or "special expenses" directly resulted from the "covered cause of loss".

We will pay "digital assets loss" and/or "special expenses" for a period of up to twelve (12) months following the discovery of the damage, alteration, corruption, distortion, theft, misuse, or destruction of "digital assets".

**b. Non-Physical Business Interruption and Extra Expense**

Subject to the limits of insurance specified in the Schedule, we will reimburse you for "income loss", "interruption expenses" and/or "special expenses" which you incur during the "period of restoration", but after the "waiting period", as a direct result of a total or partial interruption, degradation in service or failure of an "insured computer system", provided that:

**(1)** Such total or partial interruption, degradation in service or failure of the "insured computer system" is directly caused by a "covered cause of loss";

**(2)** The "covered cause of loss" takes place or first commences on or after your initial effective date of Cyber Liability coverage;

**(3)** You report the "covered cause of loss" in writing to us during the "coverage period", but no later than 60 days from the date an "insured" first discovers the "covered cause of loss"; and

**(4)** You provide clear evidence that the "income loss", "interruption expenses" and/or "special expenses" directly resulted from the "covered cause of loss".

**6. Cyber Extortion Coverage**

Subject to the limits of insurance specified in the Schedule, we will reimburse you for "cyber extortion expenses" and/or "cyber extortion monies" that you pay as a direct result of a "cyber extortion threat", including a demand for "cyber extortion monies", provided that:

**a.** Such "cyber extortion threat" is first made against an "insured" on or after your initial effective date of Cyber Liability coverage;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 124 of 164

Illinois Casualty Company 07/05/2022

**b.** You provide clear evidence that the "cyber extortion expenses" and/or "cyber extortion monies" directly resulted from the "cyber extortion threat"; and

**c.** You report the "cyber extortion threat" in writing to us during the "coverage period", but no later than 60 days from the date the "cyber extortion threat" is made against an "insured".

"Cyber extortion expenses" and/or "cyber extortion monies" shall not be paid without our prior consultation and written authorization. You must make every reasonable effort to notify the local law enforcement authorities and the Federal Bureau of Investigation or similar equivalent foreign agency before surrendering any "cyber extortion monies" in response to a "cyber extortion threat".

**7. Cyber Terrorism Coverage**

Subject to the limits of insurance specified in the Schedule, we will reimburse you for "income loss", "interruption expenses", and/or "special expenses" which you incur during the "period of restoration", but after the "waiting period", as a direct result of a total or partial interruption, degradation in service, or failure of an "insured computer system", provided that:

**a.** Such total or partial interruption, degradation in service, or failure of the "insured computer system" is directly caused by an "act of cyber terrorism";

**b.** The "act of cyber terrorism" takes place or first commences on or after your initial effective date of Cyber Liability coverage;

**c.** You report the "act of cyber terrorism" in writing to us during the "coverage period", but no later than 60 days from the date an "insured" first discovers the "act of cyber terrorism"; and

**d.** You provide clear evidence that the "income loss", "interruption expenses" and/or "special expenses" directly resulted from the "act of cyber terrorism".

**8. BrandGuard™ Coverage**

Subject to the limits of insurance specified in the Schedule, we will reimburse you for your provable and ascertainable "brand loss", which you sustain during the "period of indemnity", but after the "waiting period", as a direct result of an "adverse media report" or "notification", provided that:

**a.** The "adverse media report" or "notification" results from a "privacy breach" or "security breach" that takes place or first commences on or after your initial effective date of Cyber Liability coverage;

**b.** You report the "brand loss" in writing to us during the "coverage period", but no later than 60 days from the date you first discover the actual or potential "brand loss"; and

**c.** You provide clear evidence that the "brand loss" directly resulted from the "adverse media report" or "notification".

**9. PCI DSS Assessment Coverage**

Subject to the limits of insurance specified in the Schedule, we will pay:

**a.** A "PCI DSS assessment" which an "insured" becomes legally obligated to pay; and

**b.** "Defense costs",

Resulting from a "claim" for an actual or alleged "security breach" or "privacy breach", provided that:

**a.** Such "claim" is first made against the "insured" during the "coverage period";

**b.** The "insured" reports the "claim" in writing to us no later than sixty (60) days after the "claim" is first made against the "insured"; and

**c.** The entirety of the "security breach" or "privacy breach" takes places or first commences on or after your initial effective date of Cyber Liability coverage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**B. Defense, Investigation, And Settlement Of Cyber Protection Claims**

**1.** We will have the right and duty to defend:

**a.** Any "claim" for "damages" covered under Section **A.1.** or Section **A.2.** of this Endorsement; or

**b.** Any "claim" for "regulatory fines and penalties" and/or a "regulatory compensatory award" covered under Section **A.3.** of this Endorsement; or

**c.** Any "claim" for "PCI DSS assessment" covered under Section **A.9.** of this Endorsement,

even if the allegations of the "claim" are groundless, false or fraudulent. We may investigate or settle any "claim" at our sole discretion. The applicable limits of insurance will be reduced and may be completely exhausted by payment of "defense costs". We will not be obligated to pay or defend any "claim" after the applicable limit of our liability hereunder has been exhausted.

**2.** If we initially defend an "insured" or pay for an "insured's" defense, but later determine that the "claim(s)" is (are) not covered under this insurance, we will have the right to reimbursement for the "defense costs" we have incurred. The right to reimbursement for "defense costs" under this provision will only apply to "defense costs" we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for "defense costs."

**3.** No "insured" will incur any "defense costs" or other expenses, or settle any "claim", assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any "claim" without our prior written consent, which will not be unreasonably withheld. We will not be liable for any "defense costs" or other expenses, settlement or judgment to which we have not consented.

**C. Cyber Protection Exclusions**

The insurance provided under this Endorsement does not apply to:

**1.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving any "multimedia peril", "security and privacy wrongful act", "security breach", "privacy breach", "covered cause of loss", "cyber extortion threat", "act of cyber terrorism", "adverse media report" or "notification":

**a.** Which was the subject of written notice given to us or to any other insurer prior to your initial effective date of Cyber Liability coverage;

**b.** Which was the subject of any prior and/or pending written demand made against an "insured", or a civil, administrative or arbitration proceeding commenced against an "insured", prior to your initial effective date of Cyber Liability coverage, or that involved the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior demand or proceeding;

**c.** Which an "insured" had knowledge of prior to your initial effective date of Cyber Liability coverage.

**2.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release or escape of "pollutants", or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants", nuclear material or nuclear waste.

**3.** Any "claim" for liability assumed by an "insured" under any oral or written contract or agreement, except where such liability would apply apart from such contract or agreement and which is otherwise covered by this Endorsement. With respect to any "multimedia peril", "security breach" or "privacy breach", this exclusion does not apply to any "claim" alleging liability "assumed under contract".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**4.** Any "claim" for breach of any express, implied, actual or constructive contract, warranty, guarantee, or promise, except where such liability would apply apart from such contract, warranty, guarantee or promise and which is otherwise covered by this Endorsement. This exclusion does not apply to any "claim" alleging breach of your privacy policy or liability "assumed by contract".

**5.** Any "claim" which is covered under any Businessowners Liability or Businessowners Property Policy to which this endorsement attaches.

**6.** Any "claim" for violations of the False Claims Act or any similar federal or state law, rule, or regulation concerning billing errors or fraudulent billing practices or abuse.

**7.** Any "claim" for infringement of any patent or the misappropriation, theft, copying, display, or publication of any trade secret.

**8.** Any "claim" for unfair competition, price fixing, deceptive trade practices, restraint of trade, or violation of any anti-trust laws.

**9.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** Any employment or employment-related matters, including, but not limited to, employer-employee relations, policies, acts or omissions;

**b.** Any actual or alleged refusal to employ any person or any other actual or alleged misconduct with respect to employees; or

**c.** Any actual or alleged obligations of the "insured" under any workers' compensation, unemployment insurance, social security, disability benefits or other similar law.

This exclusion does not apply to an otherwise covered "claim" under Section **A.2.** of this Endorsement, which is brought by your past, present or future employee alleging a "security and privacy wrongful act".

**10.** Any "claim" for "bodily injury" or "property damage".

**11.** Any "claim" for harassment or discrimination because of, or relating to, race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation, marital status, or any other basis prohibited by federal, state or local law.

**12.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** Satellite failures;

**b.** Outages to gas, water, telephone, cable, telecommunications or other infrastructure, unless such infrastructure is under your direct operational control and such "claim" is otherwise covered under Section **A.5.** or Section **A.7** of this Endorsement.

**13.** Any "claim" for violation of any of United States of America's economic or trade sanctions, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**14.** Any "criminal proceeding".

**15.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** Any willful, deliberately dishonest, malicious, or fraudulent act or omission;

**b.** Any intentional violation of the law or of your privacy policy; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**c.** The gaining in fact of any profit, remuneration or financial advantage to which an "insured" was not legally entitled, if committed by any "insured", whether acting alone or in collusion with other persons. Notwithstanding the foregoing, the insurance afforded by this Endorsement will apply to "defense costs" incurred in defending any such "claim" until such time as there is a judgment or other final adjudication adverse to the "insured" establishing such willful, dishonest, fraudulent, or malicious conduct. We will have the right to recover "defense costs" incurred in defending such "claim" from those parties found to have committed such willful, dishonest, fraudulent, or malicious conduct.

This exclusion does not apply to:

**a.** Any "insured" that did not commit, participate in, or have knowledge of any willful, dishonest, fraudulent, or malicious conduct described in this exclusion; or

**b.** A "claim" resulting from sabotage by your employee.

**16.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** Any actual or alleged "multimedia peril", "security and privacy wrongful act", "security breach", "privacy breach", "covered cause of loss", "cyber extortion threat", "act of cyber terrorism", or "adverse media report" that took place or first commenced prior to your initial effective date of Cyber Liability coverage; or

**b.** Any actual or alleged "multimedia peril", "security and privacy wrongful act", "security breach", "privacy breach", "covered cause of loss", "cyber extortion threat", "act of cyber terrorism", or "adverse media report" that took place on or after your initial effective date of Cyber Liability coverage, which, together with an actual or alleged "multimedia peril", "security and privacy wrongful act", "security breach", "privacy breach", "covered cause of loss", "cyber extortion threat", "act of cyber terrorism", "adverse media report" or "notification" that took place prior to your initial effective date of Cyber Liability coverage, would constitute related "multimedia perils", "security and privacy wrongful acts", "security breaches", "privacy breaches", "covered causes of loss", "cyber extortion threats", "acts of cyber terrorism", or "adverse media reports.

For purposes of this exclusion, "multimedia perils", "security and privacy wrongful acts", "security breaches", "privacy breaches", "covered causes of loss", "cyber extortion threats", "acts of cyber terrorism", and "adverse media reports" will be deemed related if we determine that they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

**17.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving any business, joint venture or enterprise not named on the Declarations.

**18.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving any conduct, act, error or omission of any individual serving in any capacity other than as your officer, director, partner, stockholder, trustee, member, auxiliary or employee.

**19.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving an "insured's" insolvency or bankruptcy, the insolvency or bankruptcy of any other individual or entity, or the failure, inability or unwillingness to make payments because of the insolvency, liquidation, or bankruptcy of any individual or entity.

**20.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving the wear and tear, drop in performance, progressive deterioration, or aging of your electronic equipment or "computer hardware".

**21.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving the failure of overhead transmission and distribution lines.

**22.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving the gradual deterioration of subterranean insulation.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**23.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, force majeure or any other physical event. This exclusion does not apply to:

**a.** Any "claim" resulting from a "hostile fire", but only if such "claim" is based upon, attributable to, or arising out of heat, smoke or fumes; or

**b.** An otherwise covered "claim" under Section **A.5.** or Section **A.7** of this Endorsement.

**24.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** The gradual deterioration or wear and tear of an "insured computer system"; or

**b.** your failure, or the failure of those acting on your behalf, to maintain any computer, "computer system" or network, computer software, or any other equipment.

**25.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

**26.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving cost guarantees, cost representations, contract price or cost estimates being exceeded.

**27.** Any "claim" brought by or on behalf of:

**a.** Any "insured" against another "insured";

**b.** Any entity which is owned, in whole or in part, by an "insured", or any entity directly or indirectly controlled, operated or managed by an "insured";

**c.** Any entity which is a parent, affiliate or subsidiary of any entity in which an "insured" is a partner or joint venturer; or

**d.** Any individual or entity who is a partner or joint venturer of any entity in which an "insured" is also a partner or joint venturer.

This exclusion does not apply to an otherwise covered "claim" under Section **A.2.** of this form, which is brought by your past, present or future employee alleging a "security and privacy wrongful act", but only if such employee or any of your past or present officers, directors or trustees did not commit, participate in, or contribute to such "security and privacy wrong act" or any "security breach" or "privacy breach".

**28.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving unauthorized trading. For purposes of this exclusion, "unauthorized trading" means trading, which at the time of the trade is:

**a.** In excess of permitted financial limits; or

**b.** Outside of permitted product lines.

**29.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** The actual or alleged purchase or sale of securities, or an offer, or solicitation of an offer, to purchase or sell securities;

**b.** The actual or alleged loss of value of any securities; or

**c.** Any actual or alleged violation of any securities law such as the provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002 or any regulation promulgated under the foregoing statutes, or any federal, state, local, or foreign laws similar to the foregoing statutes, including 'Blue Sky' laws, whether such law is statutory, regulatory or common law.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**30.** Any "claim" for violation of the Organized Crime Control Act of 1970 (commonly known as 'Racketeer Influenced And Corrupt Organizations Act' or 'RICO'), as amended, or any regulation promulgated under the foregoing statutes, or any similar federal, state, local or foreign laws, whether such law is statutory, regulatory or common law.

**31.** Any "claim" which is brought by the Federal Trade Commission, the Federal Communications Commission or any other federal, state or local governmental entity, in such entity's regulatory or official capacity. This exclusion does not apply to an otherwise covered "claim" under Section **A.3.** of this form.

**32.** Any "claim" alleging:

**a.** The violation of any pension, healthcare, welfare, profit sharing or mutual or investment plans, funds or trusts; or

**b.** The violation of any provision of the Employee Retirement Income Security Act of 1974 and its amendments and/or the Pension Protection Act of 2006 and its amendments, or any regulation, ruling or order issued pursuant thereto.

**33.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving:

**a.** Strikes or similar labor actions, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

**b.** The confiscation, nationalization, requisition or destruction of, or damage to, property by or under the order of any government or public or local authority; or

**c.** Any action taken in controlling, preventing, suppressing or in any way relating to **33(a)** or **33(b)** above.

This exclusion does not apply to an "act of cyber terrorism".

**34.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving your commercial decision to cease providing a particular product or service, but only if you are contractually obligated to continue providing such products or services.

**35.** Any "claim" directly resulting from:

**a.** Gambling or pornography;

**b.** Prizes, awards or coupons; or

**c.** The sale or provision of prohibited, restricted or regulated items such as alcoholic beverages, tobacco or drugs.

**36.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving the use of programs that are not "operational programs" or "delivered programs".

**37.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving any "insured's" intentional use of illegal or unlicensed programs that are in violation of the provisions or laws referring to software protection.

**38.** Any "claim" based upon, arising out of, resulting from, in consequence of, or in any way involving the confiscation, commandeering, requisition, destruction of, or damage to "computer hardware" by order of a government de jure or de facto or by any public authority for whatever reason.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**39.** With respect to Section **A.5.a.** of this form:

**a.** Any amount incurred in restoring, updating or replacing "digital assets" to a level beyond that which existed prior to the "covered cause of loss";

**b.** Physical damage to the "computer hardware" or "data" center, other than accidental physical damage or destruction of "electronic media" so that stored "digital assets" are no longer machine-readable;

**c.** Contractual penalties or consequential damages;

**d.** Any liability to third parties for whatever reason, including legal costs and expenses of any type;

**e.** Fines or penalties imposed by law;

**f.** The economic or market value of "digital assets";

**g.** Costs or expenses incurred to identify, patch or remediate software program errors or "computer system" vulnerabilities;

**h.** Costs to upgrade, redesign, reconfigure or maintain an "insured computer system" to a level of functionality beyond that which existed prior to the "covered cause of loss"; or

**i.** Any losses paid under Section **A.5.b.** of this form.

**40.** With respect to Section **A.5.b.** of this form:

**a.** Any loss arising out of a physical cause or natural peril, including, but not limited to, fire, wind, water, flood, subsidence or earthquake, which results in physical damage to "computer hardware" and/or any "data" center, except for that physical damage caused by heat, smoke or fumes from a "hostile fire";

**b.** Any loss arising out of updating or replacing "digital assets" to a level beyond that which existed prior to the "covered cause of loss";

**c.** Contractual penalties or consequential damages;

**d.** Any liability to third parties for whatever reason, including legal costs and expenses of any type;

**e.** Fines or penalties imposed by law;

**f.** Costs or expenses incurred to identify, patch or remediate software program errors or "computer system" vulnerabilities;

**g.** Loss of goodwill and reputational harm;

**h.** Costs to upgrade, redesign, reconfigure or maintain an "insured computer system" to a level of functionality beyond that which existed prior to the "covered cause of loss"; or

**i.** Any losses paid under Section **A.5.a.** of this form.

**42.** With respect Section **A.8.** of this form:

**a.** Any amounts incurred by you in an effort to re-establish your "reputation", including "public relations expenses";

**b.** Any amounts incurred in any "claim" that is insured by any other insurance, except excess insurance;

**c.** Any amounts incurred in connection with an "adverse media report" that also affects or refers in similar terms to a general security issue, an industry or your specific competitors without any specific allegations regarding a "privacy breach" or "security breach" by an "insured", a "BPO service provider", an "outsourced IT service provider", or by others acting on your behalf and for whom you are legally responsible;

**d.** Any civil or regulatory liability to third parties for whatever reason, including legal costs and expenses of any type;

**e.** Contractual penalties or consequential damages;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**f.** "Privacy breach response costs", "notification expenses" or "customer support and credit monitoring expenses" paid under Section **A.4.** of this form; or

**g.** Fines or penalties imposed by law or regulation.

**43.** Any amounts deemed uninsurable under applicable law.

The exclusions contained herein exclude all loss, "damages" and "defense costs", regardless of any other cause or event that contributes concurrently, or in any sequence, to loss, "damages" and "defense costs". These exclusions apply whether or not the event resulting in the loss, "damages" and "defense costs" results in widespread damage or affects a substantial area.

**D. Cyber Protection Limits Of Insurance**

**1.** The limits of insurance stated in the Schedule as applicable to each "claim" is the most we will pay for each "claim" under each Coverage Agreement of this form, including "defense costs" where applicable, regardless of the number of "insureds" involved or affected, the number of individuals or entities making a "claim", or the number of "claims" made.

**2.** Subject to the provisions respecting each "claim" limit of insurance, the aggregate limit of insurance stated in the Schedule is the most we will pay for all "claims" made during the "coverage period" under all Coverage Agreements of this form combined. Such aggregate limit includes "defense costs".

**3.** If the aggregate limit of insurance is exhausted, then our obligations under this form will be deemed completely fulfilled and extinguished.

**4.** All "claims" made under any one Coverage Agreement which arise out of the same, related, or continuing acts, facts or circumstances, will be considered a single "claim" without regard to the number of "insureds", "claims", or persons or entities making a "claim", and only one each "claim" limit will apply. Such "claim" will be deemed to have been first made on the date the earlier of the related "claims" was first made and will be deemed to have been first reported to us on the date the earlier of the related "claims" was first reported to us in writing. Appeals and any post-trial proceedings or consolidated proceedings approved by us will be considered to be part of the original "claim".

**5.** In the event that a "claim" is made and applies to more than one Coverage Agreement of this form, only one each "claim" limit will apply. We have the sole discretion to allocate amounts paid, if any, against the appropriate limit of insurance.

**E. Cyber Protection Definitions**

When used in this form:

**1.** "Act of cyber terrorism" means the premeditated use of disruptive activities, or the threat thereof, against computers, computer systems, networks and/or public internet by any person or group(s) of persons, whether acting alone or on behalf of, or in connection with, any organization(s) or government(s) with the intention to intimidate or cause destruction or harm and/or further social, ideological, religious, political or similar objectives. "Act of cyber terrorism" includes, but is not limited to, the use of information technology to organize and execute large-scale attacks against computer systems, networks and/or public internet, resulting in disabling and/or deleting critical infrastructure, data or information.

**2.** "Adverse media report" means any unpredictable report or communication of an actual or potential "security breach" or "privacy breach", which:

**a.** Has been publicized through any media channel including, but not limited to, television, "print media", radio or electronic networks, the "internet", and/or electronic mail; and

**b.** Threatens material damage to your reputation or your brands.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**3.** "Acquiring bank" means a bank or financial institution that accepts credit and/or debit card payments (including credit cards, debit cards, stored value cards and pre-paid cards) for products or services on behalf of a merchant, including processing and crediting those payments to a merchant's account.

**4.** "Assumed under contract" means liability for "damages" resulting from a "multimedia peril", "security breach" or "privacy breach" where such liability has been assumed by you in the form of a written hold harmless or indemnity agreement, provided that such agreement was executed prior to date the "multimedia peril", "security breach", or "privacy breach" occurred.

**5.** "BPO service provider" means any third party independent contractor that provides business process outsourcing services for your benefit under a written contract with you, including, but not limited to, call center services, fulfillment services, and logistical support.

**6.** "Bodily injury" means physical injury, sickness, disease, pain or death, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress sustained by a person at any time.

**7.** "Brand loss" means your revenue as could have been reasonably projected immediately prior to "notification" or, in the event of an "adverse media report", immediately prior to the publication of an "adverse media report", but which has been lost after the "waiting period" but during the "period of indemnity" as a direct result of such "notification" or "adverse media report", less the variable costs (including the cost of raw materials and all other costs) that would have been incurred during the same period, but were saved as a result. "Brand loss" will be determined in accordance with Section **G.3.**

**8.** "Card association" means Visa International, Mastercard, Discover, JCB American Express and any similar credit or debit card association that is a participating organization of the Payment Card Industry Security Standards Council.

**9.** "Claim" means:

**a.** With respect to Section **A.1.** and Section **A.2.** of this form:

**(1)** Any written demand for monetary or non-monetary relief made against an "insured";
**(2)** Any civil proceeding or arbitration proceeding initiated against an "insured", commenced by the service of a complaint or similar pleading or notification; or
**(3)** Any written request to toll or waive a statute of limitations relating to a potential "claim" against an "insured", including any appeal therefrom;

A "claim" under Section **A.1.** and Section **A.2.** of this form will be deemed to be first made when an "insured" first receives notice of any of **(a)(1)** through **(a)(3)** above.

**b.** With respect to Section **A.3.** of this form, a "government investigation" commenced against an "insured" by letter notification, complaint, or order of investigation. A "claim" under Section **A.3.** of this form will be deemed to be first made when it is first received by an "insured".

**c.** With respect to Section **A.4.** of this form, your written report to us of an "adverse media report", "security breach", or "privacy breach". A "claim" under Section **A.4.** of this form will be deemed to be first made when such written report is received by us.

**d.** With respect to Section **A.5.** of this form, your written report to us of a "covered cause of loss". A "claim" under Section **A.5.** of this form will be deemed to be first made when such written report is received by us.

**e.** With respect to Section **A.6.** of this form, your written report to us of a "cyber extortion threat". A "claim under Section **A.6.** of this form will be deemed to be first made when such written report is received by us.

**f.** With respect to Section **A.7.** of this form, your written report to us of an "act of cyber terrorism". A "claim" under Section **A.7.** will be deemed to be first made when such written report is received by us.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

 Illinois Casualty Company 07/05/2022

**g.** With respect to Section **A.8.** of this form, your written report to us of "brand loss" directly caused by an "adverse media report" or "notification". A "claim" under Section **A.8.** of this form will be deemed to be first made when such written report is received by us.

**h.** With respect to Section **A.9.** of this form, any written demand made against an "insured" by an "acquiring bank" or "card association" for a "PCI DSS assessment" due to the "insured's" non-compliance with "PCI Data Security Standards". A "claim" under Section **A.9.** of this form will be deemed to be first made when such written demand is received by an "insured".

**10.** "Computer hardware" means the physical components of any computer system including CPUs, memory, storage devices, storage media, and input/output devices and other peripheral devices and components, including, but not limited to, cable, connectors, fiber optics, wire, power supply units, keyboards, display monitors, and audio speakers.

**11.** "Computer program(s)" means an organized set of instructions that, when executed, causes a computer to behave in a predetermined manner. "Computer program(s)" includes, but is not limited to, communications, networking, operating system, and related "computer programs" used to create, maintain, process, retrieve, store, and/or transmit electronic "data".

**12.** "Computer system(s)" means interconnected electronic, wireless, web, or similar systems (including all "computer hardware" and software) used to process and store "data" or information in an analogue, digital, electronic, or wireless format including, but not limited to, "computer programs", electronic "data", operating systems, "firmware", servers, media libraries, associated input and output devices, mobile devices, networking equipment, websites, extranets, off line storage facilities (to the extent that they hold electronic "data"), and electronic backup equipment.

**13.** "Computer virus" means a program that possesses the ability to create replicas of itself (commonly known as 'auto-reproduction' program) within other programs or operating system areas or which is capable of spreading copies of itself wholly or partly to other "computer systems".

**14.** "Coverage period" means the period of coverage commencing on the effective date, as specified on page 1 of this form, and ending upon the expiration or termination date, whichever applies, of the Policy to which this form attaches.

**15.** "Covered cause of loss" means, and is limited to, the following:

**a.** Accidental Damage or Destruction

**(1)** Accidental physical damage or destruction of "electronic media" so that stored "digital assets are no longer machine-readable;

**(2)** Accidental damage or destruction of "computer hardware" so that stored "data" is no longer machine-readable;

**(3)** Failure in power supply or under/over voltage resulting from a complete or partial interruption of electrical power either on or off the described "premises" due to conditions beyond your control.

**(4)** "Programming error" of "delivered programs"; or

**(5)** Electrostatic build-up and static electricity.

**b.** Administrative or Operational Mistakes

An accidental, unintentional, or negligent act, error or omission by your employee, a "BPO service provider", or "outsourced IT service provider" in:

**(1)** The entry or modification of your electronic "data", which causes damage to such "data"; or

**(2)** The creation, handling, development, modification, or maintenance of "digital assets"; or

**(3)** The ongoing operation or maintenance of an "insured computer system" excluding the design, architecture, or configuration of an "insured computer system".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**c.** Computer Crime and Computer Attacks

An act, mistake or negligent error or omission in the operation of an "insured computer system" or in the handling of "digital assets" by your employee, a "BPO service provider", or "outsourced IT service provider", which fails to prevent or hinder any of the following attacks on an "insured computer system":

**(1)** A "denial of service attack";
**(2)** "Malicious code";
**(3)** "Unauthorized access"; or
**(4)** "Unauthorized use".

"Covered cause of loss" does not include, and specifically excludes, any of the following:

**(1)** Failure in power supply and/or interruption of electrical power caused by a disconnection from the power source by any means;
**(2)** Failure in power supply and/or interruption of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current;
**(3)** Failure in power supply and/or interruption of electrical power caused by the inability of an electrical utility company or other power source to provide sufficient power due to lack of fuel or governmental order; or
**(4)** Failure in power supply and/or interruption of electrical power caused by the inability of a power source at the described "premises" to provide sufficient power due to lack of generating capacity to meet demand.

**16.** "Criminal proceeding" means any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment and/or criminal fine.

**17.** "Customer support and credit monitoring expenses" mean those reasonable and necessary expenses which you incur, with our prior written consent, in the event of a "privacy breach", for the provision of customer support activity, including the provision of credit file monitoring services and identity theft education and assistance for up to a period of twelve (12) months from the date of enrollment in such credit file monitoring services, in the event of a "privacy breach".

**18.** "Cyber extortion expenses" mean all reasonable and necessary costs and expenses which you incur, with our prior written consent, as a direct result of a "cyber extortion threat", other than "cyber extortion monies".

**19.** "Cyber extortion monies" mean any funds or property which you pay, with our prior written consent, to a person(s) or entity(ies) reasonably believed to be responsible for a "cyber extortion threat" insured under Section **A.7.** of this form, for the purpose of terminating such "cyber extortion threat".

**20.** "Cyber extortion threat" means a credible threat or series of related credible threats, including, but not limited to, a demand for "cyber extortion monies", directed at you to:

**a.** Release, divulge, disseminate, destroy or use the confidential information of a third party taken from you as a result of "unauthorized access" to, or "unauthorized use" of, an "insured computer system";

**b.** Introduce "malicious code" into an "insured computer system";

**c.** Corrupt, damage or destroy an "insured computer system";

**d.** Restrict or hinder access to an "insured computer system", including, but not limited to the threat of a "denial of service attack"; or

**e.** Electronically communicate with your customers and falsely claim to be you or to be acting under your direction in order to falsely obtain personal confidential information of your customers (also known as 'pharming,' 'phishing,' or other types of false communications).

**21.** "Damages" mean the amount of money which an "insured" is legally obligated to pay as a result of a covered "claim" under Section **A.1.** or Section **A.2.** of this Endorsement, including judgments and any prejudgment or post-judgment interest awarded against the "insured" on that part of any judgment paid or to be paid by us, legal fees and costs awarded against an "insured" pursuant to such judgments, and settlements negotiated with our consent.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

"Damages" do not include:

**a.** Taxes;

**b.** Any amount for which an "insured" is absolved from legal responsibility to make payment to a third party;

**c.** Amounts owed under contract;

**d.** Your future profits or royalties or any return, withdrawal, restitution or reduction of your professional fees, profits or other charges;

**e.** Punitive, liquidated or exemplary damages or the multiplied portion of multiplied damages;

**f.** Fines, sanctions or penalties;

**g.** Any matters that are deemed uninsurable under applicable law;

**h.** The costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;

**i.** Disgorgement of any remuneration or financial advantage to which you were not legally entitled; or

**j.** Settlements negotiated without our consent.

**22.** "Data" means any and all information stored, recorded, appearing or present in or on an "insured computer system", including, but not limited to, information stored, recorded, appearing or present in or on your electronic and computer databases, the "internet", intranet, extranet and related websites, facsimiles, and electronic mail.

**23.** "Defense costs" mean reasonable and necessary legal fees, costs and expenses incurred with our consent in the investigation, defense and appeal of any covered "claim" under Section **A.1.**, Section **A.2.**, Section **A.3.**, or Section **A.9** of this form.  "Defense costs" do not include any of our expenses, or any wages, salaries, fees, overhead or other charges incurred by, or paid to, any "insured" for any time spent in cooperating in the defense and investigation of any "claim" or potential "claim" under this form. For purposes of coverage provided under this form, Section **A.2.** Coverage Extension-Supplementary Payments of the Business Liability Coverage form does not apply.

**24.** "Delivered programs" mean programs, applications, and software where the development stage has been finalized, having passed all test-runs, and been proven successful in a live environment.

**25.** "Denial of service attack" means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a "computer system" by sending an excessive volume of electronic "data" to such "computer system" in order to prevent authorized access to such "computer system".

**26.** "Digital assets" mean "data" and "computer programs" that exist in an "insured computer system".  "Digital assets" do not include "computer hardware".

**27.** "Digital assets loss" means reasonable and necessary expenses and costs which you incur to replace, recreate, or restore "digital assets" to the same state and with the same contents immediately before it was damaged, destroyed, altered, misused, or stolen, including expenses for materials and machine time. "Digital assets loss" also includes amounts representing employee work time to replace, recreate, or restore "digital assets", which shall be determined on a predefined billable hours or per hour basis as based upon your schedule of employee billable hours.

**28.** "Electronic media" mean floppy disks, CD ROM's, hard drives, magnetic tapes, magnetic discs, or any other media on which electronic data is recorded or stored.

**29.** "Firmware" means the fixed programs that internally control basic low-level operations in a device.

**30.** "Government investigation" means a formal investigation instituted against an "insured" by any federal, state or local government agency or authority, the subject matter of which is a "security breach" or "privacy breach".

**31.** "Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 136 of 164

Illinois Casualty Company 07/05/2022

**32.** "Income loss" means financial loss you sustain, as determined in accordance with the provisions of Section **A.5.b.** or Section **A.7** of this form.

**33.** "Insured" means:

**a.** The "named insured";

**b.** Current executive officers, partners, directors, stockholders, trustees, members, auxiliaries or employees of the "named insured", but only while such individuals are acting within the scope of their duties on behalf of the "named insured"; and

**c.** your "spouse", your partners' "spouses", and your members' "spouses", but only with respect to the conduct of your business.

**34.** "Insured computer system" means:

**a.** A "computer system" operated by and either owned by, or leased to, you;

**b.** With respect to Section **A.2.** of this form only, a "computer system" operated by a "BPO service provider" or "outsourced IT service provider" and used for the sole purpose of providing hosted computer application services to you or for processing, maintaining, hosting, or storing your electronic "data", pursuant to a written contract with you for such services.

**35.** "Internet" means the worldwide public network of computers which enables the transmission of electronic "data" between different users, including a private communications network existing within a shared or public network platform.

**36.** "Interruption expenses" mean those expenses, excluding "special expenses", which you incur in accordance with the provisions of Section **A.5.b.** or Section **A.7.** of this form, to:

**a.** Avoid or minimize the suspension of your business as a result of a total or partial interruption, degradation in service, or failure of an "insured computer system" caused directly by a "covered cause of loss" or an "act of cyber terrorism", which you would not have incurred had no "covered cause of loss" or "act of cyber terrorism" occurred, including, but not limited to, the use of rented/leased external equipment, substitution of other work or production procedures, use of third party services, or additional staff expenditures or labor costs; and

**b.** Minimize or avoid a "covered cause of loss" or "act of cyber terrorism" and continue your business.

The amount of "interruption expenses" recoverable under **35(a)** above shall in no case exceed the amount by which the covered "income loss" is reduced by such incurred expenses.

**37.** "Malicious code" means software intentionally designed to insert itself and damage a "computer system" without the owner's informed consent by a variety of forms including, but not limited to, virus, worm, Trojan horses, spyware, dishonest adware, and crimeware.

**38.** "Multimedia peril" means the release or display of any "electronic media" on your "internet" site or "print media" for which you are solely responsible, which directly results in any of the following:

**a.** Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, or trade libel;

**b.** Invasion, infringement or interference with an individual's right of privacy including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;

**c.** Plagiarism, piracy, or misappropriation of ideas under an implied contract;

**d.** Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

**e.** Domain name infringement or improper deep-linking or framing.

**39.** "Named insured" means the person or organization listed as such on the Declarations of the Policy to which this form attaches.

**40.** "Notification" means written notice to individuals in the event of a "security breach" or a "privacy breach".

**41.** "Notification expenses" mean:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**a**. The following reasonable and necessary expenses which you incur, with our prior written consent, to comply with governmental privacy legislation mandating notice to affected individuals in the event of a "security breach" or "privacy breach":

**(1)** Legal expenses;

**(2)** Computer forensic and investigation fees;

**(3)** "Public relations expenses";

**(4)** Postage expenses; and

**(5)** Related advertising expenses.

**b.** "Voluntary notification expenses" you incur with our prior written consent subject to the "voluntary notification expenses sublimit."

**42.** "Operational programs" mean programs and software which are ready for operational use, having been fully developed, tested, and accepted by you.

**43.** "Outsourced IT service provider" means a third party independent contractor that provides information technology services for your benefit under a written contract with you. "Outsourced IT service provider" services include, but are not limited to, hosting, security management, co-location, and "data" storage.

**44.** "PCI Data Security Standards" (known as "PCI DSS") means the published data security standards in effect now, or as hereafter amended, which all merchants and processors must follow when storing, processing and transmitting cardholder data.

**45.** "PCI DSS assessment" means a monetary fine or penalty assessed against an "insured" by an "acquiring bank" or "card association" as a result of a "security breach" or "privacy breach".

**46.** "Period of indemnity" means the period commencing with the earlier of the date of "notification" or the first publication of an "adverse media report" (whichever applies), and ending on the earlier of: (1) the date that gross revenues are restored to the level they had been prior to "notification" or the first "adverse media report" (whichever applies); or (2) One hundred and eighty (180) consecutive days after the notice of "claim" under Section **A.8.** of this form is received by us.

**47.** "Period of restoration" means the period of time that commences on the date when the interruption, degradation, or failure of an "insured computer system" began and ends on the earlier of:

**a.** The date when the "insured computer system" is restored or could have been repaired or restored to the same condition, functionality, and level of service that existed prior to the "covered caused of loss" or the "act of cyber terrorism" with reasonable diligence, plus up to thirty (30) additional consecutive days after the restoration of the "insured computer system" to allow for restoration of your business; or

**b.** One hundred and twenty (120) consecutive days after the notice of "covered cause of loss" or "act cyber of terrorism" is received by us.

The expiration date of this form will not affect the "period of restoration".

**48.** "Pollutants" mean any solid, liquid, gaseous, bacterial, fungal, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as "pollutants" include, but are not limited to, diesel, kerosene, and other fuel oils, carbon monoxide and other exhaust gases, mineral spirits and other solvents, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform and other dry cleaning chemicals, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides and all substances specifically listed, identified, or described by one or more of the following references: Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substances And Disease Registry ToxFAQs™, and/or U.S. Environmental Protection Agency EMCI Chemical References Complete Index.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 138 of 164

Illinois Casualty Company 07/05/2022

**49.** "Premises" means:

**a.** If you occupy 100% of the location, "premises" means the particular physical location of the real property as shown in the Declarations.

**b.** If you occupy only part of the location, "premises" means that portion of the physical location as shown on the Declarations that you rent, lease, or occupy and any area of that physical location that services or is used to gain access to it.

**50.** "Print media" mean newspapers, newsletters, magazines, books, and literary works in any form, brochures or other types of publications, and advertising materials, including packaging, photographs, and digital images.

**51.** "Privacy breach" means any of the below, whether actual or alleged, but only if committed or allegedly committed by you or by others acting on your behalf for whom you are legally responsible, including "BPO service providers" and "outsourced IT service providers":

**a.** A common law breach of confidentiality, infringement, or violation of any right to privacy, including, but not limited to, a breach of your privacy policy, false light, intrusion upon a person's seclusion, commercial misappropriation of name, person, or likeness, or public disclosure of a person's private information; or

**b.** Any breach of privacy regulations, as they currently exist and as amended, associated with the confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

**(1)** Health Insurance Portability and Accountability Act of 1996 (Public Law 104- 191), known as HIPAA, and related state medical privacy laws;
**(2)** Gramm-Leach-Bliley Act of 1999 (G-L-B), also known as the Financial Services Modernization Act of 1999;
**(3)** State and federal statutes and regulations regarding the security and privacy of consumer information;
**(4)** Governmental privacy protection regulations or laws associated with the control and use of personal information;
**(5)** Privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;
**(6)** The Health Information Technology for Economic and Clinical Health Act ("HITECH"), Title XIII of the American Recovery and Reinvestment Act ("ARRA") of 2009.

A series of continuing "privacy breaches" or related or repeated "privacy breaches" will be considered a single "privacy breach" and will be deemed to have occurred when the first of such "privacy breaches" occurred.

**52.** "Privacy breach response costs" means:

**a.** Those reasonable and necessary fees and expenses which you incur, with our prior written consent, for the employment of a public relations consultant, prior to, or following, the publication of an "adverse media report", if you reasonably consider such action is necessary in order to avert or mitigate any material damage to your reputation or brands, which results or reasonably will result from the "adverse media report"; and

**b.** "Proactive privacy breach response costs" incurred with our prior written consent, subject to the "proactive privacy breach response costs sublimit".

**53.** "Proactive privacy breach response costs" means those reasonable and necessary "public relations expenses" that you incur in response to an actual or potential "security breach" or "privacy breach", but prior to the publication of an "adverse media report", in an effort to avert or mitigate the potential impact of an "adverse media report". "Proactive privacy breach response costs" must be incurred with our prior written consent and are subject to the "proactive privacy breach response costs sublimit."

**54.** "Proactive privacy breach response costs sublimit" means the maximum amount that we will pay for "proactive privacy breach response costs". The "proactive privacy breach response costs sublimit" is included within, and will erode, the limits of insurance for Section **A.4.**

**55.** "Programming error" means an error which occurs during the development or encoding of a computer program, software, or application, which would, when in operation, result in a malfunction or incorrect operation of a "computer system".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 139 of 164

Illinois Casualty Company 07/05/2022

**56.** "Property damage" means injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured. "Data" is not considered tangible property.

**57.** "Public relations expenses" mean reasonable and necessary expenses incurred by you to re-establish your "reputation" which was damaged as a direct result of an "adverse media report".

**58.** "Regulatory compensatory award" means a sum of money which an "insured" is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a "government investigation". "Regulatory compensatory award" does not include a criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

**59.** "Regulatory fines and penalties" mean any civil fines and penalties imposed against an "insured" as a result of a "government investigation".

**60.** "Reputation" means the estimation of trust that patients, customers or clients have in doing business with you or in purchasing your products or services.

**61.** "Security and privacy wrongful act" means any of the following acts, whether actual or alleged, but only if committed or allegedly committed by an "insured":

**a.** Failure to prevent or hinder a "security breach" that in turn results in:

**(1)** The alteration, copying, corruption, destruction, deletion, or damage to electronic "data" stored on an "insured computer system";

**(2)** Theft, loss or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in your care, custody or control;

**(3)** Theft, loss, or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a "BPO service provider" or "outsourced IT service provider" that is holding, processing, or transferring such information on your behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while your written contract with such "BPO service provider" or "outsourced IT service provider" is in effect; or

**(4)** "Unauthorized use" of, or "unauthorized access" to, a "computer system" other than an "insured computer system".

**b.** Failure to timely disclose a "security breach" affecting personally identifiable, nonpublic information or the failure to dispose of personally identifiable, nonpublic information within the required time period, in violation of privacy regulations in effect now or in the future;

**c.** Failure to prevent the transmission of "malicious code" or "computer virus" from an "insured computer system" to the "computer system" of a third party;

**d.** A "privacy breach";

**e.** Failure to prevent or hinder participation by an "insured computer system" in a "denial of service attack" directed against "internet" sites or the "computer system" of any third party; or

**f.** Loss of your employees' information.

**62.** "Security breach" means:

**a.** "Unauthorized access" to, or "unauthorized use" of, an "insured computer system", including "unauthorized access" or "unauthorized use" resulting from the theft of a password from an "insured computer system" or from any "insured";

**b.** A "denial of service attack" against an "insured computer system"; or

**c.** Infection of an "insured computer system" by "malicious code" or the transmission of "malicious code" from an "insured computer system",

whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing "security breaches", related or repeated "security breaches", or multiple "security breaches" resulting from a continuing failure of computer security will be considered a single "security breach" and will be deemed to have occurred when the first of such "security breaches" occurred.

**63.** "Special expenses" mean reasonable and necessary costs and expenses which you incur to:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

a. Prevent, preserve, minimize, or mitigate any further damage to "digital assets", including the reasonable and necessary fees and expenses of specialists, outside consultants, or forensic experts you retain;

b. Preserve critical evidence of any criminal or malicious wrongdoing;

c. Purchase replacement licenses for "computer programs" because the copy protection system and/or access control software was damaged or destroyed by a "covered cause of loss" or an "act of cyber terrorism"; or

d. Notify customers of a total or partial interruption, degradation in service, or failure of an "insured computer system" resulting from a "covered cause of loss" or an "act of cyber terrorism".

**64.** "Spouse(s)" means a husband or wife or a party to a civil union recognized under applicable state law.

**65.** "Unauthorized access" means the gaining of access to a "computer system" by an unauthorized person or persons.

**66.** "Unauthorized use" means the use of a "computer system" by unauthorized persons or authorized persons in an unauthorized manner.

**67.** "Voluntary notification" means "notification" to any individual where there is no specific requirement by law in the applicable jurisdiction mandating such "notification".

**68.** "Voluntary notification expenses sublimit" means the maximum amount we will pay for "notification expenses" incurred as a result of "voluntary notification". The "voluntary notification expenses sublimit" is included within, and will erode, the limits of insurance for Section **A.4.**

**69.** "Waiting period" means:

a. With respect to Section **A.5.b.** and Section **A.7.** of this form, the 8 hour period which must elapse before "income loss", "interruption expenses" and/or "special expenses" may be payable. The "waiting period" applies to each "period of restoration".

b. With respect to Section **A.8.**, the two week period which must elapse after "notification", or in the event of an "adverse media report", after publication of the first "adverse media report", before "brand loss" may be payable. The "waiting period" applies to each "period of indemnity".

## F. Notice Provisions

### 1. Notice of a Claim

a. As a condition precedent to coverage under Section **A.1.**, Section **A.2.**, Section **A.3.** or Section **A.9**. of this form, the "insured" must give us written notice of any "claim" made against the "insured" no later than sixty (60) days after the "claim" is first made against the "insured".

b. As a condition precedent to coverage under Section **A.4.**, Section **A.5.**, Section **A.6.**, **Section A.7.** or Section **A.8.** of this form, you must give us written notice of your "claim" during the "form period", but no later than 60 days from the date any "insured" first discovers the event or incident giving rise to such "claim".

c. You must provide us with copies of all documentation comprising the "claim" as well as any authorization, cooperation, or assistance as we may require.

d. We will not be obligated to pay any amounts incurred prior to notification of a "claim" to us or amounts incurred without our prior written consent.

### 2. Notice of a Potential Claim

If, during the "coverage period", any "insured" first becomes aware of any facts or circumstances which could give rise to a "claim" covered under this form, and if the "insured" provides us with written notice during the "coverage period" of:

a. The details regarding such facts or circumstances;

b. The nature of the loss incurred;

c. The identity of the potential claimant(s) involved;

d. The manner in which the "insured" first became aware of the facts or circumstances; and

e. The consequences which have resulted or may result,

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

then any "claim" subsequently made arising out of such reported facts or circumstances will be deemed to be a "claim" first made on the date notice complying with the foregoing requirements was first received by us.

**G. Loss Determination**

**1. Loss of Digital Assets**

For any and all coverage provided under Section **A.5.a.** of this form, "digital assets loss" will be determined as follows:

**a.** If the impacted "digital asset" was purchased from a third party, we will pay only the lesser of the original purchase price of the "digital asset" or the reasonable and necessary "digital assets loss".

**b.** If it is determined that the "digital assets" cannot be replaced, restored or recreated, then we will only reimburse the actual and necessary "digital assets loss" incurred up to such determination.

**2. Non-Physical Business Interruption and Extra Expense and Cyber Terrorism**

For any and all coverage provided under Section **A.5.b.** or Section **A.7.** of this form, "income loss" will be determined as the reduction of your income during the "period of restoration", which is:

**a.** Your net income (net profit or loss before income taxes) that would have been reasonably projected, but which has been lost directly as a result of a total or partial interruption, degradation in service or failure of an "insured computer system" caused directly by a "covered cause of loss" or an "act of cyber terrorism", whichever applies. The revenue projection will take into account the prior experience of your business preceding the date of the "covered cause of loss" or the "act of cyber terrorism" and the probable experience had no "covered cause of loss" or "act of cyber terrorism" occurred. Revenues include the amount of money paid or payable to you for goods, products or services sold, delivered or rendered in the normal course of your business. Revenue projection will be reduced by the extent to which you use substitute methods, facilities or personnel to maintain your revenue stream. We will take into consideration your documentation of the trends in your business and variations in or other circumstances affecting your business before or after the "covered cause of loss" or the "act of cyber terrorism", which would have affected your business had no "covered cause of loss" or "act of cyber terrorism" occurred; and

**b.** Any fixed operating expenses (including ordinary payroll) incurred, but only to the extent that such operating expenses must continue during the "period of restoration".

**3. BrandGuard™**

The revenue projection required to calculate "brand loss "will take into account the prior experience of your business preceding the date of the "adverse media report" or "notification", whichever applies, and the probable experience had no "adverse media report" been published or "notification" occurred. Revenues include the amount of money paid or payable to you for goods, products or services sold, delivered or rendered in the normal course of your business. Revenue projection will be reduced by the extent to which you use substitute methods, facilities, or personnel to maintain its revenue stream. We will take into consideration your documentation of the trends in your business and variations in, or other circumstances affecting, your business before or after the "adverse media report" or "notification", which would have affected your business had no "adverse media report" been published or notification" occurred. Any fixed operating expenses (including ordinary payroll) incurred will be considered in calculating "brand loss", but only to the extent that such operating expenses must continue during the "period of indemnity".

**H. Limited Reporting Period**

**1.** In the event of non-renewal or termination of this Policy for any reason other than non-payment of premium, we will provide a limited reporting period of sixty (60) days in which "claims" otherwise covered by this form may be reported. Such limited reporting period will automatically commence immediately upon termination or expiration of this Policy and will apply to:

**a.** A "claim" under Section **A.1.**, Section **A.2.**, Section **A.3.** or Section **A.9.** of this form which:

**(1)** Arises out of an actual or alleged "multimedia peril", "security and privacy wrongful act", "security breach" or "privacy breach", whichever applies, that takes place or first commences on or after your initial effective date of Cyber Liability coverage, but prior to the expiration or termination of the Policy; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Illinois Casualty Company 07/05/2022

**(2)** Is first made against an "insured" during the "coverage period", but prior to the Policy termination or expiration date; and

**(3)** Is reported in writing to us during the limited reporting period.

**b.** A "claim" under Section **A.4.**, Section **A.5.**, Section **A.6.**, Section **A.7**., or Section **A.8.** of this form which:

**(1)** Arises out of an "adverse media report", "security breach", "privacy breach", "covered cause of loss", "cyber extortion threat" or "act of cyber terrorism", whichever applies, that takes place or first commences on or after your initial effective date of Cyber Liability coverage, but prior to the expiration or termination of the Policy; and

**(2)** Is reported in writing to us during the limited reporting period.

**2.** All terms and conditions of this form, including the limits of insurance, will continue to apply during the limited reporting period.

**3.** The existence of the limited reporting period will not increase or reinstate the limits of insurance set forth in the Schedule.

**I. Other Insurance**

If there is other insurance covering the same loss, "damages" or "defense costs" as is covered by this form, we will pay only for the amount of covered loss, "damages" or "defense costs" in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable limit of insurance.

**J. Arbitration**

Notwithstanding any other provision of this form or the Policy, any irreconcilable dispute between us and an "insured" is to be resolved by arbitration in accordance with the then current rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the "insured", one arbitrator selected by us, and a third independent arbitrator selected by the first two arbitrators. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between us and the "insured" concerning the application or interpretation of this form. However, the arbitrator shall have no power to change or add to the provisions of this form. The "insured" and us will share equally in the cost of arbitration.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 143 of 164

Illinois Casualty Company 07/05/2022

POLICY NUMBER: ██████ EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW – LIMITED COVERAGE

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS PROPERTY COVERAGE FORM**

The coverage provided by this endorsement applies to the location(s) specified in the schedule below.

**SCHEDULE**

| Premises Number | Building Number | Cost to Reconstruct Limit of Insurance | Demolition Cost Limit of Insurance | Combined Coverages – Cost to Reconstruct and Demolition Cost Limit of Insurance |
|---|---|---|---|---|
| 1 | 1 | $25,000 | $25,000 | $0 |

The Limit Of Insurance shown in the Schedule of this endorsement is the only Limit Of Insurance applicable to the Ordinance Or Law coverage(s) listed in the Schedule of this endorsement.

* Do **not** enter a Combined Limit Of Insurance if individual Limits Of Insurance are selected for Cost to Reconstruct and Demolition Cost, or if one of these Coverages is not applicable.

**A.** The coverage provided by this endorsement is subject to the terms and conditions applicable to property coverage in the **Businessowners Property Coverage Form BP CF 01** except as provided below.

**B.** The coverage provided by this endorsement applies only to buildings that are Covered Property where the Limit Of Insurance is 80% or more of the full replacement cost at the time of damage as determined by us.

**C.** Each Coverage – Cost To Reconstruct In Compliance With An Ordinance Or Law (shown as Cost to Reconstruct in the above Schedule) – Demolition Cost Coverage (shown as Demolition Cost in the above Schedule) – is provided under this endorsement only if that Coverage is chosen by entry of a Limit of Insurance in the above Schedule of this endorsement and then only with respect to the building(s) identified for the Coverage(s) in the Schedule of this endorsement.

**D.** This endorsement is not subject to the terms of the Ordinance Or Law Exclusion, Paragraph **C.3.a.(1)** of the **Businessowners Property Coverage Form BP CF 01** to the extent that such Exclusion would conflict with the provisions of this endorsement.

**E.** The ordinance or law referred to in this endorsement is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements to the described "premises", and is in force at the time of loss.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** In addition to the Limitations and Exclusions applicable to the **Businessowners Property Coverage Form BP CF 01**, we will not pay any costs due to ordinance or law that:

**1.** You were required to comply with before the loss, even when the building was undamaged; and

**a.** You failed to comply with.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**H.** In addition to the Limitations and Exclusions applicable to the **Businessowners Property Coverage Form BP CF 01**, we will not pay for:

**1.** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, "remodeling" or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot or virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease; or

**2.** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot, dry rot or virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

**I. Application of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **I.1.** and **I.2.** below are satisfied and are then subject to the qualifications set forth in **I.3.**

**1.** The ordinance or law

**a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premise; and

**b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2.** The building:

**a.** Sustains direct physical damage that is covered under this Policy and as a result of such damage you are required to comply with the ordinance or law; or

**b.** Sustains both direct physical damage that is covered under this Policy and direct physical damage that is not covered under this Policy, and as a result of the building damage in its entirety you are required to comply with the ordinance or law.

But if the building sustains direct physical damage that is not covered under this Policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

**3.** In the situation described in Paragraph **I.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of the Cost To Reconstruct In Compliance With An Ordinance or Law Coverage or the Demolition Cost Coverage of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage. See example in Paragraph **I.4.** below.

**4.** Example of Proportional Loss Payment for Ordinance or Law Coverages (as set forth in Paragraph **I.2.b.** of this endorsement:

Assume:

- Wind is a Covered Cause Of Loss. Flood is an excluded Cause Of Loss.
- The building has a value of $200,000.
- Total direct physical damage to building is $100,000.
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value.
- Portion of direct physical damage that is covered (caused by wind): $30,000.
- Portion of direct physical damage that is not covered (caused by flood): $70,000.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

- Loss under Cost to Reconstruct In Compliance With An Ordinance or Law Coverage of this endorsement: $60,000.

  Step **1**: Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

  $30,000 divided by $100,000 = .30

  Step **2**: Apply that proportion to the Cost to Reconstruct In Compliance With An Ordinance or Law loss.

  $60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Cost to Reconstruct In Compliance With An Ordinance or Law loss is $18,000, subject to the applicable Limit Of Insurance and any other applicable provisions.

The same procedure applies to losses under the Demolition Cost In Compliance With An Ordinance Or Law coverage of this endorsement.

**J. Coverage**

**1. Cost To Reconstruct In Compliance With An Ordinance Or Law**

With respect to the building that has sustained covered direct physical damage, we will pay for the increased cost to:

**a.** Repair or reconstruct damaged portions of that building; and/or

**b.** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of or compliance with the minimum requirements of the ordinance or law.

However:

**a.** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**b.** We will not pay for the increased cost of construction if the building is not repaired, reconstructed, or remodeled.

Paragraph **F.5.d.** of the Businessowners Property Coverage Form does not apply to the Cost To Reconstruct In Compliance With An Ordinance Or Law.

**2. Demolition Cost In Compliance With An Ordinance Or Law**

**a.** Demolition Cost In Compliance With An Ordinance Or Law coverage provided by this endorsement applies only to buildings.

**b.** With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of enforcement of or compliance with an ordinance or law that requires demolition of such undamaged property.

**c.** This coverage applies to an ordinance or law that regulates the demolition of buildings or establishes zoning or land use requirements at the described "premises", and is in force at the time of the loss.

Paragraph **F.5.d.** of the Businessowners Property Coverage Form does not apply to Demolition Cost Coverage

**K. Loss Payment**

**1.** All following loss payment provisions, Paragraphs **K.2.** through **K.4.**, are subject to the apportionment procedure set forth in Paragraph **I.3.** of this endorsement.

**2.** Unless Paragraph **K.4.** of this endorsement applies, loss payment under Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

**a.** The amount you actually spend to demolish and clear the site of the undamaged parts of the described building; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**b.** The applicable Limit Of Insurance shown for Demolition Cost in the Schedule of this endorsement.

**3.** Unless Paragraph **K.4.** of this endorsement applies, loss payment under Cost To Reconstruct In Compliance With An Ordinance Or Law Coverage will be determined as follows:

**a.** We will not pay under Cost To Reconstruct In Compliance With An Ordinance Or Law Coverage:

**(1)** Until the property is actually repaired or replaced, at the same or another "premises"; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years but are not obligated to do so.

**b.** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay under Cost To Reconstruct In Compliance With An Ordinance Or Law Coverage is the lesser of:

**(1)** The increased cost of construction at the same "premises"; or

**(2)** The applicable Limit Of Insurance shown for Cost To Reconstruct in the Schedule of this endorsement.

**c.** If the ordinance or law requires relocation to another "premises", the most we will pay under Cost To Reconstruct In Compliance With An Ordinance Or Law Coverage is the lesser of:

**(1)** The increased cost of construction at the new "premises"; or

**(2)** The applicable Limit Of Insurance shown for Cost To Reconstruct in the Schedule of this endorsement.

**4.** If a Combined Coverages – Cost to Reconstruct and Demolition Cost Limit of Insurance shown in the Schedule of this endorsement, Paragraphs **I.1.c.** and **I.1.d.** of this endorsement do not apply with respect to the building(s) that is/are subject to the Combined Coverages – Cost to Reconstruct and Demolition Cost Limit of Insurance, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost Coverage and Cost To Reconstruct In Compliance With An Ordinance Or Law Coverage, is the Combined Coverages – Cost to Reconstruct and Demolition Cost Limit of Insurance in the Schedule of this endorsement. Subject to this Combined Coverages – Cost to Reconstruct and Demolition Cost Limit of Insurance, the following loss payment provisions apply:

**a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the undamaged parts of the described building.

**b.** With respect to the Cost To Reconstruct In Compliance With An Ordinance Or Law:

**b.** We will not pay for the increased cost of construction:

i. Until the property is actually repaired or replaced, at the same or another "premises"; and

ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years but we are not obligated to do so.

**c.** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the increased cost of construction is the increased cost of construction at the same "premises".

**d.** If the ordinance or law requires relocation to another "premises", the most we will pay for the increased cost of construction is the increased cost of construction at the new "premises".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 148 of 164

Illinois Casualty Company 07/05/2022

Illinoi
Casua
Comn

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE AND REPORTED COVERAGE. DEFENSE EXPENSE IS PAYABLE WITHIN, AND NOT IN ADDITION TO, THE LIMITS OF INSURANCE AND IS SUBJECT TO THE DEDUCTIBLE. PAYMENT OF DEFENSE EXPENSE WILL REDUCE THE LIMIT OF INSURANCE AND THE DEDUCTIBLE.**

**WE HAVE ISSUED THIS COVERAGE BASED UPON YOUR APPLICATION FOR INSURANCE. THE APPLICATION IS INCORPORATED BY REFERENCE AND IS ON FILE WITH THE COMPANY OR ITS AGENT AND BECOMES A PART OF THIS COVERAGE. THAT APPLICATION IS A REPRESENTATION OF THE CORRECTNESS OF THE INFORMATION BASED UPON WHICH WE HAVE ISSUED THIS COVERAGE.**

**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**SCHEDULE**

| These coverages are subject to the terms and conditions applicable to the Businessowners Liability Coverage Form and endorsements modifying that Coverage Form except as provided below. | |
|---|---|
| Employment-related Practices Liability Annual Aggregate Limit Of Insurance | $100,000 |
| Deductible | $2,500 |
| Retroactive Date: 04/19/2018 | |
| ☐ Extended Reporting Period: | |
| ☐ Split Limits Prior Acts Coverage | |
| Prior Acts Aggregate Limit: | Prior Acts Date: |
| ☐ Coverage For Third Party Practices | |

For the purposes of the coverage provided by this endorsement, the Businessowners Liability Coverage Form is amended as follows:

**A.** For the purposes of the coverage provided by this endorsement Paragraph **A. Coverage 2. Coverage Extension-Supplementary Payments** of the Businessowners Liability Coverage Form is deleted.

**B.** The following is added to Section **A. Coverage:**

**5. Employment-related Practices**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**a.** We will pay those sums in excess of the Deductible the insured becomes legally obligated to pay as "damages" arising out of any "employment practices" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in paragraph **b.** below.

**b.** This insurance applies to "damages" arising out of "employment practices" only if:

**(1)** The "damages" result from "claims" made by:

**(a)** "Employees";

**(b)** "Leased workers";

**(c)** "Temporary workers";

**(d)** Former "employees"; or

**(e)** Applicants for employment by you.

**(2)** The "employment practices" takes place in the "coverage territory";

**(3)** The "employment practices" did not commence before the Retroactive Date, if any, designated in the Schedule, or after the end of the Policy Period; and

**(4)** A "claim" against any insured for "damages" because of the "employment practices" is:

**(a)** First made in accordance with Paragraphs **(5), (6),** and **(7)** below, during the Policy Period or an Extended Reporting Period provided under Paragraph **J. Extended Reporting Period-Option** of this endorsement; and

**(b)** Reported to us either:

**(i)** During the policy period or within thirty (30) days thereafter; or

**(ii)** With respect to any "claim" first made during any Extended Reporting Period we provide under Paragraph **J. Extended Reporting Period-Option** of this endorsement, during such Extended Reporting Period.

**(5)** A "claim" will be deemed to have been made at the earlier of the following times:

**(a)** When notice of such "claim" is received and recorded by you or by us, whichever comes first; or

**(b)** When we make a settlement in accordance with paragraph **c.2.(b)** below.

**(6)** All "claims" by one or more claimants for "damages" based on or arising out of:

**(a)** One "employment practice"; or

**(b)** An "interrelated" series of "employment practices",

by one or more insured shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

**(7)** A "claim" received by the insured during the Policy Period designated in the Declarations and reported to us within 30 days after the end of the Policy Period will be considered to have been reported within the Policy Period. However, this 30 day period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would have been covered but for exhaustion of the amount of insurance applicable to such "claims". If during the Policy Period shown in the Declarations you become aware of "employment practices" that may reasonably be expected to give rise to a "claim" against any insured, you must provide notice to us in accordance with the provisions of Paragraph **G.2. Duties In The Event Of "Employment Practices" or "Claims"** of this endorsement. If such notice is provided, then any "claim" subsequently made against any insured arising out of the "employment practices" shall be deemed under this endorsement to be a "claim" made during the Policy Period in which the "employment practices" was first reported to us.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(8)** All "claims" for damages because of "employment practices" committed against the same person, including damages claimed by any person for care, loss of services or death resulting at any time from the "employment practices", will be deemed to have been made at the time the first of such "claims" is made, regardless of the number of "claims" subsequently made.

**c. Defense of Claims, Administrative Hearings, and Settlement Authority**

**(1)** Subject to the limits on insurance, deductible, conditions, exclusions, definitions, and other terms of this endorsement. We have the right and duty to defend "claims" against the insured seeking "damages" to which this insurance applies and to pay for related "defense expense".

However, we have no duty to:

**(a)** Defend "claims" against the insured seeking "damages"; or

**(b)** Pay for related "defense expense",

when this insurance does not apply.

**(2)** We may, at our sole discretion:

**(a)** Investigate any "employment practice" that may result in "damages"; and

**(b)** Settle a "claim" which may result; provided:

**(i)** We have your written consent to settle; and

**(ii)** The settlement is within the applicable limit of insurance available.

**(3)** Our liability will be limited as described below if:

**(a)** Any insured refuses to consent to any settlement we recommend; and

**(b)** Such recommended settlement is acceptable to the claimant.

After such refusal, our liability under this endorsement for such "claim" shall not exceed the amount we would have paid for "damages" and "defense expense" if the insured had consented to our settlement recommendation. The insured shall thereafter be responsible for the negotiation and defense of that "claim" at their own cost and without our involvement.

**(4)** Our right and duty to defend such "claims" ends when we have used up the limit of insurance available as provided under **E. Limits of Insurance** of this endorsement. This applies both to "claims" pending at that time and any that may be made.

**(5)** If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is/are not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

**(6)** When we control the defense of a "claim", we will pay associated "defense expense" and choose a counsel of our choice from the panel of attorneys we have selected to deal with "employment practices" "claims".

**(7)** If by written mutual agreement or court order you assume control of the defense before the applicable limit of insurance is used up, you will be allowed to select defense counsel and we will reimburse the insured for reasonable "defense expenses".

**(8)** We retain the right, at our discretion, to:

**(a)** Settle, approve or disapprove the settlement of any "claim"; and

**(b)** Appeal any judgment, award, or rule at our expense.

**(9)** You, and any other involved insured, must:

**(a)** Continue to comply with Section **G.2. Duties In The Event Of "Employment Practices" or "Claims"** of this endorsement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 151 of 164

Illinois Casualty Company 07/05/2022

**(b)** Cooperate with any counsel we may select to monitor or associate in the defense of the "employment practices" or "claim".

If we defend any insured under a reservation of rights, both such insured's counsel and our counsel will be required to maintain records pertinent to "defense expenses". These records will be used to determine the allocation of any "defense expenses" for which you or any insured may be solely responsible, including defense of an allegation not covered by this insurance. .

**(10)** Upon notice to us, and with our prior approval, the first Named Insured is authorized to act on behalf of all insureds with respect to the payment of "damages" in settlement of any Administrative Hearing or other non-judicial proceeding before the Federal Equal Employment Opportunity Commission, or any similar Federal, state, or local body or commission. This authorization is limited to the sum of:

**(a)** "Damages" covered by this endorsement; and

**(b)** "Defense expenses" as defined in this endorsement,

in a total not to exceed two times the amount of the deductible stated in the Schedule of this endorsement.

**C. Exclusions** – For purposes of the coverage provided by this endorsement, the following is added to **B. Exclusions :**

**5. Applicable to Employment-related Practices Coverage**

This insurance does not apply to "claims" based on, arising out of, or in any way involving:

**a. Criminal, Fraudulent Or Malicious Acts**

An insured's liability arising out of criminal, fraudulent, or malicious acts or omissions by any insured.

This exclusion does not affect our duty to defend, in accordance with Paragraph **B.5.a.** of this endorsement, an insured prior to determining, through the appropriate legal processes, that that insured is responsible for a criminal, fraudulent, or malicious act or omission.

**b. Contractual Liability**

**(1)** Loss of any benefit conferred or loss of any obligation imposed under an express contract of employment.

**(2)** Any "employment practices" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

However, this exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

**c. Violation Of Laws Applicable To Employers**

Liability arising under any of the following laws:

**(1)** Any workers compensation, disability benefits, or unemployment compensation law, or any similar law.

However, this exclusion shall not apply to any "claim" based upon, arising from, or in consequence of, any actual or alleged retaliatory treatment of the claimant by any insured on account of the claimant's exercise of rights pursuant to any such law.

**(2)** Employees' Retirement Income Security Act of 1974, Public Law 93-406 (ERISA) as now or hereafter amended, or any similar state or other governmental law. This includes:

**(a)** Fiduciary liability;

**(b)** Liability arising out of the administration of any employee benefit plan; and

**(c)** Any other liability under such laws.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** The Fair Labor Standards Act, or any state or common law wage or hour law including, but not limited to, laws governing minimum wages, hours worked, overtime compensation and including any recordkeeping and reporting related thereto.

This exclusion includes actions or claims brought by or on behalf of individuals or agencies seeking wages, fines, penalties, taxes, disgorgement, or other affirmative relief or compensation.

This exclusion does not include claims based on the Equal Pay Act or retaliation related to Equal Pay Act claims.

**(4)** The National Labor Relations Act.

**(5)** The Worker Adjustment and Retraining Notification Act (Public Law 100-379).

**(6)** The Consolidated Omnibus Budget Reconciliation Act of 1985.

**(7)** The Occupational Safety and Health Act.

This exclusion **c.(1)-(7)** also applies to:

**(i)** Any rules or regulations promulgated under any of the foregoing and amendments thereto;
**(ii)** Any similar provisions of any federal, state, or local law;

**(iii)** That part of any "damages" awarded for the cost or replacement of any insurance benefits due or alleged to be due to any current or former "employee"; and

**(iv)** Any "claim" based upon, arising from, or in consequence of any actual or alleged retaliatory treatment of the claimant by any insured on account of the claimant's exercise of rights pursuant to any such law described in this item **c.** This provision **c. (iv)** does not apply to the specific retaliation exceptions shown in items **c.(1)** and/or **c.(3)** above.

**d. Strikes And Lockouts**

Lockout, strike, picket line, related worker replacements, or other similar actions resulting from labor disputes or labor negotiations.

This exclusion also applies to any "claim" based upon, arising from, or in consequence of any actual or alleged retaliatory treatment of the claimant by any insured on account of the claimant's exercise of rights pursuant to labor disputes or labor negotiations.

**e. Prior Or Pending Litigation and Prior Notice**

**(1)** "Employment practices" which was/were the subject of any demand, suit or other proceeding which was initiated against any insured; or

**(2)** Facts and circumstances which would cause a reasonable person to believe a "claim" would be made and which were known to any insured prior to the effective date of the earlier of:

**(a)** The first coverage of this type that we issued to you of which this coverage was an uninterrupted renewal of this type of coverage; or

**(b)** This coverage.

This includes, but is not limited to, any "employment practices" alleged or contained in any "claim" which has been reported, or for which, in any circumstance, notice has been given, under any other prior insurance policy providing essentially the same type of coverage.

**f. Oral or Written Publication of Material**

Oral or written publication of material, if such material:

**(1)** Was published by or at the direction of any insured with knowledge of the material's falsity; or

**(2)** Was first published before the Retroactive Date, if any, shown in the Schedule of this endorsement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 153 of 164

Illinois Casualty Company 07/05/2022

**g. Willful Failure to Comply**

The willful failure by any insured, or with any insured's consent, to comply with any law or any governmental or administrative order or regulation related to "employment practices".

Willful, as used in this exclusion **g.**, means acting with intentional or reckless disregard for such employment related laws, orders, or regulations.

The enforcement of this exclusion against any insured shall not be imputed to any other insured.

**h. Bodily Injury**

**"Bodily injury"**

For the purposes of this exclusion **1.h.**, Paragraph **F.1.c.** of the Businessowners Liability Coverage Form is deleted in its entirety and replaced by the following:

"Bodily injury" means physical injury to the body, sickness, or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time. "Bodily injury" does not include mental anguish that results from "employment practices".

**i. Solvency/Ownership**

Notwithstanding, **E. Liability, Medical Expenses, Merchandise Withdrawal Expenses and Employment-related Practices Coverage General Conditions 1. Bankruptcy**, "Employment practices" which occur when or after:

**(1)** You file for, or are placed in any bankruptcy, receivership, liquidation, or reorganization proceeding; or

**(2)** Any other business entity acquires an ownership interest in you which is greater than fifty (50) percent.

**j. Americans with Disabilities Act**

Costs of complying with physical modifications to your premises, or any changes to your usual business operations, as mandated by the Americans with Disabilities Act of 1990, including any amendment(s) thereto, or any similar federal, state, or local law.

This exclusion also applies to any "claim" based upon, arising from, or in consequence of any actual or alleged retaliatory treatment of the claimant by any insured on account of the claimant's exercise of rights pursuant to any such law described in this item **j.**

**k. Personal Information**

Access to, or disclosure of confidential or personal information, including financial, health, employment, or any other type of nonpublic information.

However, this exclusion shall not apply to allegations of "employment practices" as described in the definition of "employment practices" contained **O. Definitions 4. (i)-(vii)** of this endorsement.

**D.** For the purposes of coverage provided by this endorsement, **C. Who is an Insured** is deleted and replaced with the following:

**1. If you are designated in the Declarations as:**

An individual, a partnership or joint venture, a limited liability company, a club or an organization other than a partnership, joint venture, limited liability company, or club, the following are insureds, but only with respect to the conduct of your business.

**(a)** You and your spouse;

**(b)** Your current or former members;

**(c)** Your current partners and their spouses;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(d)** Your current or former managers, but only with respect to their duties as your managers(s);

**(e)** Your current or former "executive officers" or directors, but only with respect to their duties as your officers; and

**(f)** Your current and former auxiliaries and auxiliary members, but only with respect to their liability for your activities or activities they perform on your behalf.

**2. Each of the following is also an insured:**

**(a)** Your "club members" and "volunteer workers", but only in the course of his or her conduct of your business, or your current or former "employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

**(b)** Any heirs, executors, administrators, assignees or legal representatives of any individual insured in paragraphs **1.** and **2.(a).** above, in the event of the death, bankruptcy or incapacity of such insured, shall be insureds, but only to the extent this insurance would have been available to such insured but for their death, bankruptcy or incapacity.

**(c)** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(i)** You must provide us notice of such acquisition or formation within 30 days of the effective date of your acquisition or formation;

**(ii)** Coverage under this provision is afforded only until the 30th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(iii)** Coverage does not apply to any "employment practices" that occurred before you acquired or formed the organization; and

**(iv)** You must pay us any additional premium due as a condition precedent to the enforceability of this additional extension of coverage.

This paragraph does not apply to any organization after it is shown in the Declarations.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**E. Limits of Insurance** – For purposes of the coverage provided by this endorsement, **Section D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance** is deleted in its entirety and replaced by the following:

**D. Employment –related Practices Liability Limits of Insurance**

**1. Limits of Insurance**

**a.** The Limit of Insurance stated as Annual Aggregate Limit designated in the Schedule of this endorsement is the most we will pay regardless of the number of:

**(i)** Insureds;

**(ii)** "Claims" made or "suits" brought; or

**(iii)** Persons, organizations, or government agencies making "claims" or bringing "suits".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 155 of 164

Illinois Casualty Company 07/05/2022

**2. Employment-related Practices Liability Annual Aggregate Limit of Insurance**

**a.** The Limit Of Insurance stated as the Employment-related Practices Liability Annual Aggregate Limit designated in the Schedule of this endorsement is the most we will pay for the sum of:

**(i)** All "damages" for all "claims" arising out of any actual or alleged "employment practices" covered by this insurance; and

**(ii)** "Defense expenses" for all "claims" seeking "damages" payable under paragraphs **2.a.(i)** above,

because of all "employment practices" to which this insurance applies.

The Employment-related Practices Liability Annual Aggregate Limit Of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period designated in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

Each payment we make for such "damages or "defense expenses" reduces the Employment-relates Practices Annual Aggregate Limit by the amount of the payment. This reduced limit will then be the amount of insurance available for further "damages" and "defense expenses" under this coverage.

**3.** In addition to payments for "damages" and "defense expenses" in paragraphs **1.** And **2.** Above, we will also pay all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of paragraphs **1.** and **2.**, but only if you and any other insured have fully complied with the conditions in section **G.2. Duties in the Event Of "Employment Practices" or "Claims"** of this endorsement.

**4. Deductible**

**a.** A deductible applies to all "damages" for injury arising from "employment practices", and any "defense expense", however caused.

**b.** Our obligation to pay "damages" and "defense expense" on behalf of any insured applies only to the sum of the amount of "damages" and "defense expense" for any one "claim" which are in excess of the deductible amount stated in the Schedule of this endorsement.

**c.** Your obligation is to pay the deductible applicable to each "claim" made against this insurance. That deductible applies to the sum of all "damages" because of injury arising from "employment practices" paid for any one "claim" and applicable "defense expense" associated therewith. If there should be no "damages" paid for a "claim", you are still obligated to pay the applicable deductible for any "defense expense" incurred by us in connection with that "claim".

**d.** The terms of this insurance apply irrespective of the application of the deductible, including those with respect to:

**(i)** Our right and duty to defend any "claims" seeking those "damages"; and

**(ii)** You or any involved insured's duties in the event of a "claim".

**e.** We may pay any part or all of the deductible to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for the deductible amount we paid for "damages" or "defense expense".

**f.** The application of the deductible does not reduce the applicable limits of insurance.

**F.** The title of **E. Liability, Medical Expenses And Merchandise Withdrawal Expenses General Conditions** is deleted and replaced with the following:

**E. Liability, Medical Expenses, Merchandise Withdrawal Expenses and Employment-related Practices Coverage General Conditions**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

G. For the purposes of the coverage provided by this endorsement, section **E.2. Duties in the Event Of Occurrence, Offense, Claim, Suit, Defect Or Merchandise Withdrawal** is deleted in its entirety and replaced by the following:

**2. Duties In The Event Of "Employment Practices" or "Claims"**

We have no duty to pay, nor any duty to defend, unless you and any other insured have fully complied with the conditions outlined below.

**a.** If you become aware of "employment practices" that may reasonably be expected to give rise to a "claim" and for which a "claim" has not yet been received, you must notify us, in writing, as soon as practicable. Such notice must provide:

**(1)** How, when, and where such "employment practices" took place, including all relevant dates;

**(2)** The names and addresses of the persons involved in the "employment practices", including names of any potential claimants and witnesses;

**(3)** Particulars as to the reasons why you became aware of and reasonably expect a "claim" which may result from such "employment practices";

**(4)** The nature of any alleged injury or potential "damages" arising from such "employment practices"; and

**(5)** The circumstances by which you first became aware of the "employment practices".

**b.** If a "claim" is received by any insured:

**(1)** You must immediately record the specifics of the "claim" and the date received; and

**(2)** You and any other involved insured must see to it that we receive written notice of the "claim", as soon as practicable, but in any event we must receive notice either:

**(i)** During the policy period or within thirty (30) days thereafter; or

**(ii)** With respect to any "claim" first made during the Extended Reporting Period as described in **Section J. Extended Reporting Period**.

As a condition precedent for coverage under this endorsement, notice of a "claim" must include the detailed information required in paragraphs **G.2.a.(1)-(5)**.

**(3)** You and any other involved insured must:

**(i)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(ii)** Authorize us to obtain records and other information;

**(iii)** Cooperate with us in the investigation, settlement, or defense of the "claim"; and

**(iv)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "employment practices" to which this insurance may also apply.

**c.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent, other than those specific payments authorized under paragraph **A.5.(c)(10)**.

H. For the purposes of coverage provided by this Endorsement **E.4. Other Insurance** is deleted in its entirety and replaced with the following:

**4. Other Insurance**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 157 of 164

Illinois Casualty Company 07/05/2022

If other valid and collectible insurance is available to the insured for "damages" or "defense expense" we cover under this EPL Coverage, our obligations are limited as follows:

**a.** As this insurance is primary insurance, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **b.** below.

**b.** If all of the other insurance permits contribution by equal shares, we will follow this method also.

Under this method, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.

Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**I.** The following is added to **E. Liability, Medical Expenses, Merchandise Withdrawal Expenses and Employment-related Practices Coverage General Conditions.**

**1. Representations**

By accepting this endorsement, you agree that:

**a.** The statements on the application, supplemental information and in the Declarations are true, accurate and complete;

**b.** Those statements are based upon representations you made to us in your application for this insurance. That application is attached to and incorporated into this coverage and forms the basis of our obligations under this insurance; and

**c.** Since we have issued this endorsement in reliance upon your representations, this insurance is voidable if any material fact or circumstance relating to the subject of this insurance is omitted or misrepresented in your application.

**2. Transfer Of Duties When Limit Of Insurance Is Used Up**

**a.** If we conclude that, based on "claims" which have been reported to us and to which this insurance may apply, the Employment-related Practices Liability Annual Aggregate Limit of Insurance is likely to be used up in the payment of judgments or settlements for damages or the payment of "defense expenses", we will notify the first Named Insured, in writing, to that effect.

**b.** When the Employment-related Practices Liability Annual Aggregate Limit of Insurance has actually been used up in the payment of judgments or settlements for damages or the payment of "defense expenses", we will:

**(i)** Notify the First Named Insured in writing, as soon as practicable, that such a limit has actually been used up and that our duty to defend the insured against "suits" seeking damages subject to that limit has also ended;

**(ii)** Initiate, and cooperate in, the transfer of control, to any appropriate insured, of all "suits" for which the duty to defend has ended for the reason described in preceding Paragraph **I.2.b.(i).** and which are reported to us before that duty to defend ended; and

**(iii)** Take such steps, as we deem appropriate, to avoid a default in, or continue the defense of such "suits" until such transfer is completed, provided the appropriate insured is cooperating and completing such transfer.

**c.** If the circumstances described in Paragraph **I.2.b.(i)** have occurred, the first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must:

**(i)** Cooperate in the transfer of control of "suits"; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

(ii) Arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**d.** We will take no action with respect to defense for any "claim" if such "claim" is reported to us after the Employment-related Practices Liability Annual Aggregate Limit of Insurance has been used up. It becomes the responsibility of the first Named Insured, and any other insured involved in such a "claim", to arrange defense for such "claim".

**e.** The first Named Insured will reimburse us as soon as practicable for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **I.2.b.**

**3.** The exhaustion of the Employment-related Practices Liability Annual Aggregate Limit of Insurance and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this condition.

**J. Extended Reporting Period**

For purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**1.** For purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**a.** You will have the right to purchase an Extended Reporting Period from us if:

**(1)** This endorsement is cancelled or not renewed for any reason; or

**(2)** We renew or replace this endorsement with insurance that:

**(a)** Has a Retroactive Date later than the date designated in the Schedule of this endorsement; or

**(b)** Does not apply to "employment practices" on a claims-made basis.

**b.** An Extended Reporting Period, as specified in Paragraph **J.1.** above, lasts three years and is available only for an additional premium.

**c.** The Extended Reporting Period starts with the end of the Policy Period. It does not extend the Policy Period or change the scope of the coverage provided. It applies only to "claims" to which the following applies:

**(1)** The "claim" is first made during the Extended Reporting Period;

**(2)** The "employment practices" occur before the end of the Policy Period; and

**(3)** The "employment practices" do not commence before the Retroactive Date.

**d.** You must give us a written request for the Extended Reporting Period within 30 days after the end of the Policy Period, or the effective date of cancellation, whichever comes first.

**e.** The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and any premium or deductible you owe us for coverage provided under this endorsement. Once in effect, the Extended Reporting Period may not be cancelled.

**f.** We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**(1)** The exposures insured;

**(2)** Previous types and amounts of insurance;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** Limit Of Insurance available under this endorsement for future payment of damages; and

**(4)** Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

**g.** When the Extended Reporting Period is in effect, we will provide a Supplemental Limit Of Insurance for any "claim" first made during the Extended Reporting Period.

The Supplemental Limit Of Insurance will be equal to the dollar amount designated in the Schedule of this endorsement under the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

Paragraph **E. Limits of Insurance 2.** of this endorsement will be amended accordingly.

**2.** If the Extended Reporting Period is chosen by checking the appropriate box in the Schedule of this endorsement, the provisions of this Paragraph **1.** supersede any other provisions of this endorsement to the contrary.

**a.** An Extended Reporting Period is provided, as described in **Section J. Extended Reporting Period**.

**b.** A Supplemental Limit of Insurance applies, as set forth in Paragraph **J.2.c.** below, to "claims" first made during the Extended Reporting Period. The limit is equal to the Employment-related Practices Liability Annual Aggregate Limit Of Insurance entered in the Schedule of this endorsement.

**c.** Paragraph **E. Limits of Insurance 2.** of this endorsement is replaced by the following:

**(i)** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance designated in the Schedule of this endorsement is the most we will pay for the sum of:

**(aa)** All damages; and

**(bb)** All "defense expense"

because of "employment practices" to which this insurance applies.

However, the Employment-related Practices Liability Annual Aggregate Limit Of Insurance does not apply to "claims" to which the Supplemental Limit Of Insurance applies.

**(ii)** The Supplemental Limit Of Insurance is the most we will pay for the sum of:

**(aa)** All damages; and

**(bb)** All "defense expenses"

because of "employment practices" for "claims" first made during the Extended Reporting Period.

**d.** **E. Limits of Insurance**, as amended by Paragraphs **J.2.c.**, , is otherwise unchanged and applies in its entirety.

**e.** The Extended Reporting Period will not take effect unless the additional premium for it, as set forth in Paragraph **J. Extended Reporting Period**, is paid when due. If that premium is paid when due, the Extended Reporting Period may not be cancelled.

**f.** The Coverage afforded for "claims" first received during the Extended Reporting Period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period begins.

**L. Split Limits Prior Acts Coverage**

For purposes of the coverage provided by this endorsement, the following Split Limits Prior Acts Coverage provisions are added if the Split Limits Prior Acts Coverage is chosen by checking the appropriate box in the Schedule of this endorsement:

**A.** Paragraph **5.b.(3).** of Section **B. Coverage** of this endorsement is amended to read as follows:

**(3)** Such "employment practices" commenced:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 160 of 164

Illinois Casualty Company 07/05/2022

(a) During the "prior acts period", if any; or

(b) After the Retroactive Date, if any shown in the Schedule; and before the end of the policy period.

**B.** Paragraph **3.** of **E. Limits of Insurance** of this endorsement is amended to read as follows:

**3.** In addition to the payments for "damages" and "defense expense" in paragraphs **1.** and **2.** above and in paragraph **4.** below, we will also pay all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgement under the provisions of paragraphs **1.** and **2.** above and paragraph **4.** below, but only if you and any other insured have fully complied with the conditions in section **G.2. Duties in the Event of "Employment Practices" or "Claim"** of this endorsement.

**C.** The following paragraphs are added to **E. Limits of Insurance** of this endorsement:

**4.** Subject to Paragraph **2.** above, the limit of insurance stated as Prior Acts Aggregate Limit in the Schedule of this endorsement is the most we will pay for the sum of:

**(i)** "Damages for all "claims" arising out of any actual or alleged "employment practices" covered by this insurance; and

**(ii)** "Defense expense" for all "claims" seeking "damages" payable under paragraph **(a)** above;

arising out of "employment practices" committed during the "prior acts period", if any.

Each payment we make for such "damages" or "defense expenses" reduces the Prior Acts Aggregate Limit by the amount of the payment.

This reduced limit will then be the amount of insurance available for further "damages" and "defense expenses" under this endorsement for "employment practices" committed during the "prior acts period".

**5.** When an "interrelated" series of "employment practices" by one or more insureds includes "employment practices" committed during the "prior acts period", then that entire "interrelated" series of "employment practices" shall be subject to one Prior Acts Each "Claim" Limit of Insurance as described in paragraph **4.** above.

**D.** Paragraph **3.** Of Section **J. Extended Reporting Period** of this endorsement is amended to read as follows:

**E.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" as the result of "employment practices" committed:

**a.** During the "prior acts period", if any; or

**(1)** After the Retroactive Date, if any, shown in the Declarations' and

**(2)** Before the end of the policy period; and

Once in effect, Extended Reporting Periods may not be cancelled.

**E.** The following definition is added to Section **O. Definitions** of this endorsement:

**9.** "Prior acts period" means the period of time between the Prior Acts Date shown in the Schedule of this endorsement and the Retroactive Date shown in the Schedule of this endorsement.

**M. Coverage For Third Party Practices**

For purposes of the coverage provided by this endorsement, the following Coverage For Third Party Practices provisions are added if the Coverage For Third Party Practices is chosen by checking the appropriate box in the Schedule of this endorsement:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. Paragraph **5.b.(1)** of **Section B. Coverage** is amended to include that this insurance applies to "damages" arising out of "employment practices" if the "damages" result from claims made by any client or customer of yours.

2. The following exclusions are added to **Section C. Exclusions**:

   **l.** Lending or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities in connection with a "claim" made against an insured by a client or customer of yours.

   **m.** The rental, sale, or usage of any kind of housing in connection with a "claim" made against the insured by a client or customer of yours.

   **n.** Website creation, ownership, or maintenance in connection with a "claim" made against an insured by a client or customer of yours.

3. **Section O. Definitions 1. "Claim"** is amended to include a written or oral notice presented by any client or customer of yours.

4. **Section I. Definitions 4. "Employment Practices"** is amended to include any of the actual or alleged acts listed in paragraph **(i)** through **(viii)** by you that are directed against any client or customers of yours for which damages are sought under any employment related federal, state, or local civil suit or common law.

**N.** For purposes of coverage provided by this endorsement the following definitions are deleted in the entirety and replaced:

1. **Definitions 1. Words with Special Meaning i.** "employee" is deleted in its entirety and replaced with the following:

   **i.** "Employee" means:

   **(1)** A person employed by you for wages or salary;

   **(2)** A person who is a current or former member of your board of directors;

   **(3)** A "temporary worker"; or

   **(4)** A "volunteer worker".

   However, "employee" does not include any:

   **(i)** Independent contractor;

   **(ii)** Any employees of any independent contractor while acting within the scope of their employment; or

   **(iii)** Any "leased worker.

**O. Definitions** - For purposes of the coverage provided by this endorsement, the following is added to Section **F. Definitions 1. Words With Special Meaning** of the Businessowners Liability Coverage Form:

1. "Claim" means written or oral notice presented by:

   **(1)** Any "employee", "leased worker", temporary worker", "former "employee", or applicant for employment by you; or

   **(2)** The EEOC or any other federal, state, or local administrative or regulatory agency on behalf of a person described in paragraph **(1).a**. above,

   alleging that the insured is responsible for "damages" as a result of injury arising out of any "employment practices".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

"Claim" includes any civil proceeding in which either "damages" are alleged or fact finding will take place, when either is the result of any "employment practice" to which this insurance applies. This includes:

**(i)** An arbitration proceeding in which such "damages" are claimed and to which the insured submits with our consent;

**(ii)** Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or

**(iii)** Any administrative proceedings as established under federal, state, or local laws applicable to "employment practices" covered under this insurance.

**2.** "Damages" means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgment or awards, or as settlements to which we have agreed in writing. "Damages" include:

**(1)** "Pre-judgement interest" awarded against the insurer on that part of the judgement we pay;

**(2)** Any portion of a judgment or award, to the extent allowed by law, that represents a multiple of the compensatory amounts, punitive or exemplary damages; and

**(3)** Statutory attorney fees.

"Damages" do not include:

**(i)** Civil, criminal, administrative, or other fines or penalties;

**(ii)** Equitable relief, injunctive relief, declarative relief, or any other relief or recovery other than money; or

**(iii)** Judgments or awards because of acts deemed uninsurable by law.

**3.** "Defense expenses" means payments allocated to a specific "claim" we investigate, settle, or defend, for its investigation, settlement, or defense, including:

**(1)** Fees and salaries of attorneys and paralegals we retain.

**(2)** Fees of attorneys the insured retains when, by our mutual agreement or court order (or when required by administrative hearing or proceeding), the insured is given the right to retain defense counsel to defend against a "claim".

**(3)** All other litigation or administrative hearing expenses, including fees or expenses of expert witnesses hired either by us or by the defense attorney retained by an insured.

**(4)** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim", including actual loss of earnings up to $250 a day because of time off from work.

**(5)** Costs taxed against the insured in a "suit".

"Defense expenses" does not include:

**(i)** Salaries and expenses of our employees or the insured's "employees" other than:

**a.** That portion of our employed attorneys' fees, salaries and expenses allocated to a specific "claim" for the defense of the insured; or

**b.** The expenses described in **(4).** above.

**(ii)** Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of **Section E. Limits of Insurance.**

**4.** "Employment Practices" means any of the following actual or alleged acts by you that are directed against any of your:

**(1)** "Employees";

**(2)** "Leased workers";

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Illinois Casualty Company 07/05/2022

**(3)** Former "employees"; or

**(4)** Applicants for employment,

for which damages are sought under any employment related federal, state, or local civil statute, or common law:

**(i)** Wrongful refusal to employ a qualified applicant for employment;

**(ii)** Wrongful failure to promote;

**(iii)** Wrongful deprivation of career opportunity;

**(iv)** Wrongful demotion, evaluation, reassignment, or discipline;

**(v)** Wrongful termination of employment, including constructive discharge;

**(vi)** Employee related misinterpretation;

**(vii)** Harassment, coercion, discrimination, or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation, or sexual preference, or any other protected class, or characteristic established by any federal, state, or local statute; or

**(viii)** Oral or written publication of material that:

**a.** Slanders;

**b.** Defames or libels; or

**c.** Violates or invades a right of privacy.

**5.** "Interrelated" means having as a common connection any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions, or causes.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Pre-judgment interest" means interest added to a settlement, verdict, award, or judgment based on the amount of time prior to the settlement, verdict, award, or judgment, whether or not made part of the settlement, verdict, award, or judgment.

**8.** "Temporary worker" means a person who is furnished to you to substitute a permanent "employee" on leave or to meet reasonable short-term workload conditions.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CASE 0:22-cv-01685-KMM-LIB Doc. 5-1 Filed 06/30/22 Page 164 of 164

Illinois Casualty Company 07/05/2022

POLICY NUMBER: [redacted] EFFECTIVE DATE FOR THIS ENDORSEMENT: **April 19, 2019**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CO-OWNER OF INSURED PREMISES

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**SCHEDULE**

**Designated Person Or Organization:**
Horseshoe Club LLC
10448 345th St
Saint Joseph, MN 56374

**Designated Premises:**
502 W Saint Germain St
Saint Cloud, MN 56301

**A.** The following is added to Section **C.2. Who Is An Insured** in the Businessowners Liability Coverage Form:

**e.** The person or organization designated in the Schedule of this endorsement is also an insured, but only with respect to liability as co-owner of the "premises" designated in the Schedule of this endorsement.

**B.** The following is added to Section **D. Liability, Medical Expenses And Merchandise Withdrawal Expenses Limits Of Insurance**:

**9.** The Limits Of Insurance for the person or organization designated in the Schedule of this endorsement are those specified in the contract or agreement with you, if applicable, or in this Coverage Form, whichever is less. These Limits Of Insurance are inclusive of and are not in addition to the Limits Of Insurance shown in the Declarations.

OTHER TERMS

All other terms of your policy remain the same.

Countersigned by:

ILLINOIS CASUALTY COMPANY
225 20th Street, PO Box 5018
Rock Island, IL 61204-5018

By:

***IMPORTANT – ATTACH THIS ENDORSEMENT TO YOUR POLICY***

Includes copyrighted material of Insurance Services Office, Inc. with its permission.