### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Timeless Bar, Inc., *doing business as* The Press Bar and Parlor; Horseshoe Club, LLC; and Jessie Welsh; | Case No. 22cv1685 (KMM/LIB) |
| Plaintiffs, | |
| v. | **ORDER** |
| Illinois Casualty Company, | |
| Defendant. | |

Defendant Illinois Casualty Company ("ICC") moves for judgment on the pleadings dismissing the claims filed by Plaintiff Jessie Welsh. [ECF No. 11]. For the reasons that follow, ICC's motion is granted in part.

## I.    BACKGROUND[1]

Jessie Welsh and her ex-husband, Andrew Welsh, bought a bar in 2016. They formed a corporation to run the enterprise, Timeless Bar, Inc. ("Timeless Bar"), and were the sole shareholders of the corporation. The corporation operated The Press Bar and Parlor as a tavern and nightclub. The couple also formed a limited liability company, Horseshoe Club, LLC, of which they were the only members. Horseshoe Club purchased the building in St. Cloud, Minnesota, where the bar was located.

---

[1] Because ICC challenges Ms. Welsh's claims based on the face of the Amended Complaint and the materials incorporated or necessarily embraced by it, the Court draws its discussion of the facts from the pleadings and those documents. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) ("In judging the propriety of the dismissal of a section 1983 claim . . . [w]e must take the well-pleaded allegations of the complaint as true.").

Timeless Bar obtained a Businessowners Policy of insurance from ICC for the period of April 19, 2019 through April 19, 2020 ("the Policy"). [ECF No. 5-1 at 4]. Timeless Bar is the named insured under the Policy. [ECF No. 5-1 at 4]. Horseshoe Club is also a named insured with respect to coverage provided under an Additional Insured – Building Owner endorsement for physical loss or damage to the building. [ECF No. 5-1 at 83, 165]. Neither Jessie nor Andrew was named individually as a co-insured under the Policy.

On November 18, 2019, Jessie and Andrew divorced, and they divided their interests in Timeless Bar and Horseshoe Club through dissolution proceedings in 2020.[2] The building where the bar operated was destroyed by fire on February 17, 2020. That same day, Ms. Welsh sent ICC a claim for insurance proceeds under the Policy. ICC and law enforcement agencies investigated the fire and determined that Andrew had set it intentionally. He was eventually arrested and has since pleaded guilty to arson, in violation of 18 U.S.C. § 844(i). *United States v. Welsh*, No. 20cr270 (ECT/LIB), Doc. No. 86 (D. Minn. May 5, 2022). Mr. Welsh has since been sentenced to a term of imprisonment along with a requirement that he pay restitution. Based on the determination that Andrew set the fire, ICC denied coverage to Timeless Bar and Horseshoe Club under the Policy.

Invoking the Court's diversity jurisdiction, Timeless Bar, Horseshoe Club, and Ms. Welsh, individually, filed this action. The Amended Complaint seeks reformation of

---

[2] The parties disagree about what occurred during the dissolution proceedings and about its legal effect. The Court need not address those issues to resolve the pending motion to dismiss.

2

the Policy to conform its terms to Minn. Stat. § 65A.01 (Count I); damages for ICC's alleged breach of the Policy (Count II); equitable relief on behalf of Ms. Welsh as an "innocent co-insured" (Count III); a declaratory judgment providing that ICC owes coverage to the Plaintiffs and other relief (Count IV); and an order for appraisal to resolve any dispute over the extent and amount of Plaintiffs' loss or damages resulting from the fire (Count V). ICC answered Plaintiffs' Amended Complaint and filed its motion for judgment on the pleadings with respect to the claims brought by Ms. Welsh.

## II.    DISCUSSION

ICC argues that Ms. Welsh's claims must be dismissed for two reasons. First, ICC contends that based on the face of the pleadings, Ms. Welsh lacks standing to seek a declaration of coverage or for benefits under the Policy, and therefore the Court has no jurisdiction. Second, ICC contends that Ms. Welsh's claims are barred by the statute of limitations. Although ICC briefed these issues in reverse order, standing should be addressed first. *J.G. v. Hills Youth & Fam. Servs.*, No. 21-CV-74 (PJS/LIB), 2021 WL 1968245, at *4 (D. Minn. Apr. 15, 2021) ("As a jurisdictional prerequisite, standing must be established before the merits of a claim may be reached."), *R&R adopted sub nom. J.G. v. Hills Youth & Fam. Servs.*, No. CV 21-74 (PJS/LIB), 2021 WL 1967740 (D. Minn. May 17, 2021).

### A.  Legal Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The distinction between a Rule 12(c) motion and a

12(b)(6) motion is "purely formal." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Moreover, when a motion under Rule 12(b)(1) challenging the court's subject matter jurisdiction is based on the face of the pleadings alone, a court applies the same Rule 12(b)(6) standard. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quotation omitted). The facts alleged in the complaint must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the court takes all factual allegations in the complaint as true and construes all reasonable inferences therefrom in favor of the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, the court does not take as true wholly conclusory allegations, *id.* at 188 n.2, or the legal arguments offered by the plaintiff, *Westcott*, 901 F.2d 1486 (8th Cir. 1990).

## B. Standing

ICC argues that Ms. Welsh lacks standing to bring any claims in this matter because she is not a named insured. The Eighth Circuit Court of Appeals has held that if the applicable state's law prohibits a direct action by a harmed third party against a defendant's insurer before the third-party obtains a judgment that the insured defendant is liable, then the third-party lacks standing to sue the insurer directly for benefits or a declaratory

4

judgment. *W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 836 (8th Cir. 2015); *SECURA Ins. v. Childers*, No. 19-CV-797 (NEB/TNL), 2019 WL 5865486, at *2 (D. Minn. Nov. 7, 2019). As this is a diversity action, Minnesota's is the appliable state law. Minnesota law prohibits pre-judgment direct actions against an insurer by an injured party who is not a party to the contract. *Camacho v. Todd & Leiser Homes*, 706 N.W.2d 49, 56 (Minn. 2005); *Childers*, 2019 WL 5865486, at *2 ("Under Minnesota law, an injured party may not preemptively seek a declaration that an insurer must cover a defendant prior to a judgment finding the defendant liable for the injury." (citing *Camacho*, 709 N.W.2d at 56)).

This rule is usually applied in the situation where an injured third-party is unaffiliated with the insured defendant. Perhaps the most typical example is when an insured causes a car accident with the third-party, and before the third-party has obtained a judgment against the insured in a tort suit, the injured party sues the insurer directly seeking either a declaration of coverage or a recovery of damages. *See Childers*, 2019 WL 5865486, at *2. The posture of this case is a bit different. Ms. Welsh is certainly affiliated with the named insured parties on the Policy—she is a part owner of both the corporation that ran the bar and the LLC that purchased the building. But like the injured third-party in a car accident, she is not a party to the insurance contract at issue.

"Under Minnesota law, strangers to a contract acquire no rights under the contract." *Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 486 (Minn. Ct. App. 1987) (citing *Anderson v. First Northtown Nat'l Bank*, 361 N.W.2d 116, 118 (Minn. Ct. App. 1985)). And insurance contracts are analyzed under "general principles of contract law." *Midwest*

*Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). As a stranger to the insurance contract between ICC and its named insureds, Ms. Welsh has no standing to sue ICC for a declaration of coverage or for a breach of the contract. Because she lacks standing, her claims must be dismissed without prejudice for lack of jurisdiction.[3]

Unfortunately for Ms. Welsh, her arguments to the contrary are unavailing. Ms. Welsh argues that Minnesota law recognizes her right to assert a claim against ICC under the "innocent business colleague a/k/a the innocent co-insured doctrine." [Pls.' Opp'n at 12]. She claims that under this doctrine, because she did not burn down the bar, she has an equitable cause of action to recover insurance proceeds in proportion to her ownership interest in the business. Ms. Welsh relies on *Watson v. Servs. Auto Ass'n*, 566 N.W.2d 683, 692 (Minn. 1997), and *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.*, 401 N.W.2d 381, 386 (Minn. 1987), but neither case supports her position. The plaintiffs in both of these cases—the innocent partners in *Hogs Unlimited* and the innocent spouse in *Watson*—were named co-insureds under the relevant policies. *Watson*, 566 N.W.2d at 683; *Hogs Unlimited*, 401 N.W.2d at 382–83.[4] Ms. Welsh points to no case where a Minnesota

---

[3] ICC's suggestion that a dismissal for lack of subject matter jurisdiction should be with prejudice is not supported. *Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011) (affirming dismissal for lack of subject matter jurisdiction but modifying the dismissal to be without prejudice).

[4] Ms. Welsh references the *Hogs Unlimited* court's discussion of *Continental Ins. Co. v. Gustav's Stable Club, Inc.*, 317 N.W.2d 734 (Neb. 1982). [Pls.' Opp'n at 12–13]. But nothing in *Hogs Unlimited's* discussion of that case can be read to create a rule that any innocent partner, whether a named insured or not, may recover directly from the insurer. Indeed, the *Hogs Unlimited* court held that "innocent *insured* partners may recover their proportionate interest under the insurance policy for [the] intentional destruction of their partnership property interest by another partner." 401 N.W.2d at 386 (emphasis added).

court has allowed an individual who was not a named insured on the policy at issue to recover benefits or obtain a declaration as to coverage in a direct action on her own behalf against the insurer.

At the hearing, the Court inquired whether counsel for Ms. Welsh had identified any case, from any jurisdiction, in which a court had recognized the right of a party who was not a named insured to recover insurance benefits directly from the insurer or obtain a declaration that the insurer owed coverage. Plaintiffs' counsel directed the Court's attention to *Travelers Companies v. Wolfe*, 838 S.W.2d 708 (Tx. Ct. App. 1992). There, Ralph Wolfe and his wife, Maryon Wolfe, started a business together as co-owners. *Id.* at 709. Ralph obtained insurance for the company from a Travelers subsidiary, with the named insured under the policy listed as Ralph, alone, as an individual with a "d/b/a" designation for the corporation. *Id.* The couple divorced, Ralph obtained all the corporate stock, he burned down the business, and the insurer denied coverage. *Id.* at 709–10. Maryon was nevertheless permitted to recover half of the insurance proceeds, and the Texas Court of Appeals affirmed. *Id.* at 709. The *Wolfe* court found that Texas law did not preclude her recovery of one half of the proceeds as an innocent spouse, *id.* at 710–12, and specifically rejected the insurer's argument on appeal that Maryon could not recover because she was not a named insured, *id.* at 712–13. Importantly, the court found that "an endorsement [to the policy] provides that if the named insured is an individual, the persons insured are the named insured and his spouse with respect to the conduct of a business at which he is the sole proprietor." *Id.* at 713. The court reasoned that this endorsement and other attachments to the policy undermined the insurer's assertion that Maryon's interest was not covered by

the policy. *Id. Wolfe*, of course, is not binding Minnesota law.[5] And given the endorsement that treated Maryon as an insured by virtue of being Ralph's spouse, *Wolfe* is distinguishable on its facts: no such endorsement is present in the record in this case.

Ms. Welsh also argues that "as a matter of equity and pursuant to Minn. Stat. § 65A.01, innocent business colleagues have standing to 'appear and assert a separate right to some proportionate recovery' . . . to prevent an unfair and harsh result[.]" [Pls.' Opp'n at 13]. At the hearing, Plaintiffs' counsel characterized the claim being brought on behalf of Ms. Welsh as an equitable claim for proceeds paid by the insurance company to the entity. However, Plaintiffs have not pointed to any Minnesota authority that would allow her to assert such an equitable claim. Although she cites *Hogs Unlimited* in support of such a claim, the *Hogs Unlimited* court never used the term "equity" nor stated that it was creating an "equitable" cause of action. Rather, the court interpreted the term "the insured" in the Minnesota standard fire insurance policy statute, Minn. Stat. § 65A.01, subd. 3, so that the insurance contract was not void as to innocent insureds. 401 N.W.2d at 384–85. The court next rejected the insurer's argument that allowing innocent insured partners to recover would be contrary to public policy, holding that "unless forbidden by the insurance contract, . . . innocent insured partners may recover their proportionate interest under the

---

[5] The *Wolfe* court also found that "even though Maryon did not own the personal property of the corporation which was destroyed by the fire, her then ownership of one-half of the corporate stock vested her with an insurable interest in the property insured by the policy." 838 S.W.2d at 713 (citing *Pacific Fire Ins. Co. v. John E. Morris Co.*, 12 S.W.2d 971 (Tex. Comm'n App. 1929)). Plaintiffs have not cited any authority to suggest that this principle is consistent with Minnesota law.

insurance policy for intentional destruction of their partnership property interest by another partner[.]" *Id.* at 386. Ms. Welsh does not explain, and it is not apparent, how either *Hogs Unlimited* or § 65A.01 create an equitable cause of action for her to recover insurance benefits under an insurance contract to which she is not a signatory or named insured. Moreover, the policy determination of whether coverage should be extended to innocent uninsured parties rests with the state legislature, not the federal court.

Ms. Welsh's assertion that she has standing to assert her claims against ICC on the basis of a constructive trust fares no better. Again, her reliance on the *Hogs Unlimited* decision is misplaced. That case's discussion of a trial court's responsibility to distribute proceeds to ensure that the guilty partner does not recover insurance proceeds depended on the conclusion that the innocent *co-insured* partners were entitled to recovery in the first place. 401 N.W.2d at 386–87. Here, the Court reaches the opposite conclusion about whether Ms. Welsh can recover under the policy.

Nor does the Minnesota Court of Appeals' decision in *Thiebault v. Thiebault*, 421 N.W.2d 747 (Minn. Ct. App. 1988), require this Court to find that Ms. Welsh has standing to bring a claim against ICC. Richard and Beverly Thiebault were divorced, and their dissolution decree required Richard to list their child, Jill, as the beneficiary of $10,000 in life insurance proceeds provided by Richard's employer. *Id.* Richard failed to follow through on this responsibility, remarried, and then passed away. *Id.* His second wife, Nancy, sought to prevent Beverly and Jill from obtaining $10,000 out of the $28,000 in available life-insurance benefits because Richard had named her sole beneficiary under the policy. *Id.* The *Thiebault* court found that imposition of a constructive trust was appropriate

under the circumstances and affirmed the trial court's decision awarding the proceeds to Beverly and Jill. *Id.* at 748. The present case does not involve similar circumstances, nor does *Thiebault* explain how a business owner has standing to seek a recovery of insurance proceeds or a declaratory judgment under a policy to which she is not a party.

Accordingly, the Court concludes that Ms. Welsh's claims must be dismissed without prejudice for lack of jurisdiction. However, it is worth noting that ICC has conceded that Ms. Welsh may have a "right to intervene in the action with respect to distribution of any proceeds should coverage be found to exist" and ICC's counsel did indicate any opposition to Ms. Welsh seeking to do so at an appropriate point in the proceedings. [Def.'s Reply at 6]. Nothing in this decision should be construed as preventing Ms. Welsh from seeking the right to intervene to claim an interest in any insurance proceeds that may be deemed payable under the Policy.

### C. Statute of Limitations

Because the Court concludes that Jessie Welsh is not a named insured and her claims should be dismissed without prejudice for lack of subject matter jurisdiction, the Court does not reach the statute-of-limitations issue raised by ICC.

## III.   ORDER

Based on the foregoing discussion, the **IT IS HEREBY ORDERED that** ICC's Motion for Judgment on the Pleadings to Dismiss Jessie Welsh and Her Claims Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [ECF No. 11], is **GRANTED IN PART** and

Jessie Welsh's claims are dismissed without prejudice for lack of subject matter jurisdiction.

Date: November 9, 2022

                                               *s/Katherine Menendez*
                                               Katherine Menendez
                                               United States District Judge